**EXHIBIT 3**

**Case No. 1:26-cv-02185-BAH**



# The Congressional Review Act: Determining Which "Rules" Must Be Submitted to Congress

Updated October 22, 2024

**Congressional Research Service**

https://crsreports.congress.gov

R45248

**CRS REPORT**
Prepared for Members and
Committees of Congress

**Congressional Research Service**
Informing the legislative debate since 1914

**SUMMARY**

R45248

October 22, 2024

**Valerie C. Brannon**
Legislative Attorney

**Maeve P. Carey**
Specialist in Government
Organization and
Management

# The Congressional Review Act: Determining Which "Rules" Must Be Submitted to Congress

The Congressional Review Act (CRA) is a tool Congress can use to review federal agency actions that fall under the statutory category of "rules." The CRA requires that agencies report their rules to Congress and provides special fast-track procedures under which Congress can consider legislation to overturn those rules. A joint resolution of disapproval will become effective once both houses of Congress pass a joint resolution and it is signed by the President, or if Congress overrides the President's veto.

The CRA generally adopts a broad definition of the word "rule" from the Administrative Procedure Act (APA), defining a "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency."

The CRA, however, provides three exceptions to this broad definition:

- any rule of particular applicability, including a rule that approves or prescribes for the future rates, wages, prices, services, or allowances therefor, corporate or financial structures, reorganizations, mergers, or acquisitions thereof, or accounting practices or disclosures bearing on any of the foregoing;

- any rule relating to agency management or personnel; or

- any rule of agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties.

The class of rules the CRA covers is broader than the category of rules that are subject to the APA's notice-and-comment requirements because the CRA does not exclude interpretive rules or policy statements. As such, some agency actions, such as guidance documents, that are not subject to notice-and-comment rulemaking procedures may still be considered rules under the CRA and thus could be overturned using the CRA's procedures.

Even if an agency action falls under the CRA's definition of "rule," however, the fast-track procedures for considering legislation to overturn the rule only become available when the agency submits the rule to Congress. In many cases in which agencies take actions that meet the CRA's definition of "rule" but have not gone through notice-and-comment rulemaking procedures, agencies fail to submit those rules. Thus, questions have arisen as to how Members can avail themselves of the CRA's special fast-track procedures if the agency has not submitted the action to Congress.

To protect its prerogative to review agency rules under the CRA, Congress and the Government Accountability Office (GAO) have developed an ad hoc process in which Members can request that GAO provide a formal legal opinion on whether a particular agency action qualifies as a rule under the CRA. If GAO concludes that the action in question falls within the CRA's definition of "rule," Congress has treated the publication of the GAO opinion in the Congressional Record as constructive submission of the rule. In other words, an affirmative opinion from GAO can allow Congress to use the CRA procedures to consider legislation overturning an agency action despite the agency not submitting that action to Congress. Members of Congress have introduced a number of CRA joint resolutions of disapproval based on these GAO opinions, and in 2018, Congress enacted its first joint resolution disapproving of an action through this process.

# Contents

Overview of the CRA ................................................................................................................ 2

Types of Agency Actions Covered by the CRA ........................................................................ 3

    Determining Whether an Agency Action Is an APA Rule or Other Agency Action ................. 7

        Identifying "Rules" Under the APA ................................................................................. 7

        Differentiating "Rules" from "Orders" Under the APA .................................................. 9

    Identifying CRA Exceptions .......................................................................................... 12

        Rules of Particular Applicability ................................................................................... 13

        Rules Relating to Agency Management or Personnel ..................................................... 14

        Rules of Agency Organization, Procedure, or Practice ................................................... 16

CRA Requirement for Submission of Rules ............................................................................. 19

    Agency Compliance with Submission Requirement .................................................... 21

        Submission of Notice-and-Comment Rules Versus Other Types of Documents ............. 22

    GAO's Role in Determining Whether an Agency Action Is Covered by the CRA ................. 23

        Origin and Basis of GAO's Role ................................................................................. 23

        Congressional Response to GAO Opinions Since 1996 .................................................. 25

    Consequences of GAO Opinions ................................................................................ 26

# Figures

Figure 1. Determining Whether an Agency Action Is a "Rule" Under the CRA:  Two-Part
Inquiry ................................................................................................................................ 5

# Tables

Table B-1. GAO Opinions on Whether Certain Agency "Rules" Are Covered by the
Congressional Review Act ................................................................................................ 30

# Appendixes

Appendix A. P.L. 104-19 Submission Form for Rules Under the CRA ....................................... 28

Appendix B. Summary of GAO Opinions ................................................................................ 30

# Contacts

Author Information .................................................................................................................. 35

The Congressional Review Act (CRA) is a tool Congress can use to review federal agency actions that fall under the statutory category of "rules."[1] Enacted in 1996 as part of the Small Business Regulatory Enforcement Fairness Act, the CRA requires agencies to report the issuance of "rules" to Congress and provides Congress with special fast-track procedures under which to consider legislation to overturn those rules.[2] A joint resolution of disapproval overturning a rule will become effective once both houses of Congress pass a joint resolution and it is signed by the President, or if Congress overrides the President's veto.[3]

For an agency's action to be eligible for review under the CRA, it must qualify as a "rule" as defined by the statute.[4] The class of rules covered by the CRA is broader than the category of rules that are subject to the Administrative Procedure Act's (APA's) notice-and-comment requirements.[5] As such, some agency actions, such as guidance documents, that are not subject to notice-and-comment rulemaking procedures may still be considered rules under the CRA and thus can be overturned using the CRA's procedures.

Under the text of the CRA, the fast-track procedures for considering legislation to overturn rules become available only when agencies submit their rules to Congress.[6] In many cases in which agencies take actions that meet the legal definition of a "rule" but have not gone through notice-and-comment rulemaking procedures, however, agencies fail to submit those rules.[7] Thus, questions have sometimes arisen as to how Members can use the CRA's procedures to overturn agency actions when an agency does not submit the action to Congress.

To protect its ability to use the CRA to disapprove covered rules that have not been submitted, Congress has developed a practice where Members can request a legal opinion from the Government Accountability Office (GAO) addressing whether the specific action in question is covered by the CRA's definition of "rule" and should have been submitted. A GAO opinion stating that a specific agency action should have been submitted under the CRA can then stand in for the agency having submitted the rule. Recent practice has been for Members to publish the GAO opinion in the *Congressional Record*, and the date that the opinion is published in the *Congressional Record* serves as the starting date for the CRA's timelines.[8]

---

[1] Contract with America Advancement Act of 1996, Pub. L. No. 104-121, tit. II, § 251, 110 Stat. 868 (Congressional Review Act (CRA)). 5 U.S.C. §§ 801–808.

[2] Contract with America Advancement Act of 1996, Pub. L. No. 104-121, tit. II, 110 Stat. 857 (Small Business Regulatory Enforcement Fairness Act). For a more detailed overview of the CRA, see CRS Report R43992, *The Congressional Review Act (CRA): Frequently Asked Questions*, by Maeve P. Carey and Christopher M. Davis (2021).

[3] In other words, a CRA resolution disapproving a particular rule must fulfill constitutional requirements for the passage of legislation: either the President must sign the legislation, or Congress must override the President's veto of the resolution. *See* U.S. CONST. art. I, § 7, cl. 3. *See also* INS v. Chadha, 462 U.S. 919, 956–58 (1983) (holding that statutory legislative veto procedure violated constitutional requirements of bicameralism and presentment).

[4] 5 U.S.C. § 804(3).

[5] Administrative Procedure Act, Pub. L. No. 79-404, 60 Stat. 237 (1946). *Compare* 5 U.S.C. § 553, *with* 5 U.S.C. § 804(3). As discussed below, while the CRA is slightly narrower in the sense that it excludes rules of particular applicability, which are subject to notice-and-comment requirements, it also includes multiple other categories of rules that are excluded from 5 U.S.C. § 553.

[6] *See* 5 U.S.C. § 801(a)(1)(A) (requiring agencies to submit their rules to Congress and the Government Accountability Office (GAO)).

[7] *See infra* "Agency Compliance with Submission Requirement."

[8] *See, e.g.*, 169 CONG. REC. S903 (daily ed. Mar. 22, 2023) (statement of Sen. Bill Cassidy).

To date, 20 CRA joint resolutions of disapproval have become law,[9] one of which overturned a guidance document pursuant to an opinion issued by GAO.[10] This report first describes what types of agency actions can be overturned using the CRA by closely examining the statutory definition of "rule." The report then briefly discusses the CRA's requirement for the submission of rules and examines the history and practice of GAO's involvement in determining what rules should be submitted.

## Overview of the CRA

Under the CRA, before a rule can take effect, an agency must submit to both houses of Congress and GAO a report containing a copy of the rule and information on the rule, including a summary of the rule, a designation of whether the rule is "major," and the proposed effective date of the rule.[11] For most rules determined to be "major," the agency must allow for an additional period to elapse before the rule can take effect—primarily to give Congress additional time to consider taking action on rules with the greatest economic impact—and GAO must submit a report on each major rule to the House and Senate committees of jurisdiction within 15 days of submission or publication.[12] The report is to contain GAO's assessment of the agency's compliance with various procedural steps in the rulemaking process.

After a rule is received and published, Congress has the opportunity to use fast-track procedures to overturn the rule.[13] A Member must introduce a resolution of disapproval, and Congress must take action on it, within certain time periods specified in the CRA to take advantage of the fast-track procedures (which primarily exist in the Senate).[14] These procedures include the following:

- a Senate committee can be discharged from the further consideration of a CRA joint resolution disapproving the rule by a petition signed by at least thirty Senators;
- any Senator may make a nondebatable motion to proceed to consider the disapproval resolution, and the motion to proceed requires a simple majority for adoption; and

---

[9] The 20 disapproved rules are listed in the appendix of CRS Report R43992, *The Congressional Review Act (CRA): Frequently Asked Questions*, by Maeve P. Carey and Christopher M. Davis (2021).

[10] See S.J. Res. 57, 115th Cong. (2018) (enacted) which became the Indirect Auto Lending and Compliance with the Equal Credit Opportunity Act, Pub. L. No. 115-172, 132 Stat. 1290 (2018). The Indirect Auto Lending and Compliance with the Equal Credit Opportunity Act overturned the BUREAU OF CONSUMER FINANCIAL PROTECTION, INDIRECT AUTO LENDING AND COMPLIANCE WITH THE EQUAL CREDIT OPPORTUNITY ACT, CFPB BULLETIN 2013-02 (March 21, 2013), https://files.consumerfinance.gov/f/201303_cfpb_march_-Auto-Finance-Bulletin.pdf.

[11] 5 U.S.C. § 801(a)(1)(A).

The CRA defines a "major rule" as

> any rule that the Administrator of the Office of Information and Regulatory Affairs [OIRA] of the Office of Management and Budget [OMB] finds has resulted in or is likely to result in—(A) an annual effect on the economy of $100,000,000 or more; (B) a major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions; or (C) significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based enterprises to compete with foreign-based enterprises in domestic and export markets. The term does not include any rule promulgated under the Telecommunications Act of 1996 and the amendments made by that Act. 5 U.S.C. § 804(2).

[12] 5 U.S.C. § 801(a)(3), (a)(2)(A).

[13] 5 U.S.C. §§ 801(a)(1)(A), 802.

[14] For a step-by-step discussion of these time periods and deadlines, see CRS Report R43992, *The Congressional Review Act (CRA): Frequently Asked Questions*, by Maeve P. Carey and Christopher M. Davis (2021).

- if the motion to proceed is successful, the CRA disapproval resolution is subject to up to 10 hours of debate, and then voted upon. No amendments are permitted and the disapproval resolution requires a simple majority to pass.[15]

If both houses pass the joint resolution, it is sent to the President for signature or veto. If the President vetoes the resolution, Congress can vote to override the veto under normal veto override procedures.[16]

If a joint resolution of disapproval is introduced and acted upon within the CRA-specified deadlines[17] and signed by the President (or if Congress overrides the President's veto), the CRA states that the "rule shall not take effect (or continue)."[18] In other words, if part or all of the rule had already taken effect, the rule would be deemed not to have had any effect at any time—the resolution has retroactive effect.[19] If a rule is disapproved, the likely result is a return to the status quo that was in place prior to the issuance of the rule.

In addition, when a joint resolution of disapproval is enacted, the CRA provides that a rule may not be issued in "substantially the same form" as the disapproved rule unless it is specifically authorized by a subsequent law. The CRA does not define what would constitute a rule that is "substantially the same" as a nullified rule.[20]

# Types of Agency Actions Covered by the CRA

The CRA governs "rules" promulgated by a "federal agency," using the definition of "agency" provided in the APA.[21] That APA definition broadly defines an agency as "each authority of the Government of the United States" but expressly excludes Congress and the courts, among other entities.[22] Accordingly, the CRA generally covers rules issued by most executive branch entities.[23] Courts have held that the APA definition excludes actions of the President.[24] GAO has determined that because the CRA uses the APA definition of "agency," it also does not apply to presidential

---

[15] 5 U.S.C. § 802(c), (d)(1), (d)(2).

[16] See CRS Report RS22654, *Veto Override Procedure in the House and Senate*, by Elizabeth Rybicki (2019), for details about these procedures.

[17] See CRS Report R43992, *The Congressional Review Act (CRA): Frequently Asked Questions*, by Maeve P. Carey and Christopher M. Davis (2021), for a discussion of the timelines under which a resolution of disapproval must be introduced and acted upon.

[18] 5 U.S.C. § 801(b).

[19] 5 U.S.C. § 801(f) provides that "any rule that takes effect and later is made of no force or effect by enactment of a joint resolution under section 802 shall be treated as though such rule had never taken effect."

[20] For a discussion of how this "substantially the same" prohibition has been interpreted, see CRS Report R43992, *The Congressional Review Act (CRA): Frequently Asked Questions*, by Maeve P. Carey and Christopher M. Davis (2021).

[21] *See* 5 U.S.C. §§ 801(a)(1)(A), 804(1).

[22] 5 U.S.C. § 551(1). Thus, GAO has concluded that the CRA does not apply to actions of the U.S. Sentencing Commission, an independent commission in the judicial branch. U.S. Sent'g Comm'n, B-335515, 2024 WL 1928504, at *4 (Comp. Gen. May 1, 2024).

[23] For further discussion of the definition of "agency," see CRS In Focus IF12386, *Defining Final Agency Action for APA and CRA Review*, by Valerie C. Brannon (2023).

[24] *See* Franklin v. Massachusetts, 505 U.S. 788, 800–01 (1992) (holding that the President's actions may not be reviewed under the APA and declining to hold that the President is an "agency" within the APA's definition). In the context of litigation under the Freedom of Information Act, Pub. L. No. 89-487, 80 Stat. 205 (1967) (codified at 5 U.S.C. § 552), which also uses the definition of "agency" from 5 U.S.C. § 551(1), courts have clarified that the term "agency" excludes any staff in the Executive Office of the President who do not exercise substantial authority independent of the President, or whose sole function is to advise the President. *E.g.* Armstrong v. Exec. Office of the President, 90 F.3d 553, 558 (D.C. Cir. 1996).

actions.[25] GAO has also concluded that certain agency actions implementing "presidential policy-making"[26] or exercising presidential power[27] are also not subject to the CRA. Because the CRA applies only to actions taken by federal agencies, GAO has opined that the CRA does not encompass actions taken by private entities such as Fannie Mae and Freddie Mac[28] or a trade agreement entered into by the U.S. government.[29]

An interpretive issue arising more frequently in GAO's opinions is what types of federal agency actions are considered "rules" under the CRA.[30] As a preliminary matter, GAO has indicated the CRA applies only to final agency actions: "proposed rules" and "interim step[s]" that "break[] no new ground and leave[] the world as [they] found it" or require "additional steps" to be finalized "are not rules for CRA purposes."[31]

The CRA adopts a broad definition of the word "rule" from the APA but then creates three exceptions to that definition.[32] The APA definition of "rule" encompasses a wide range of agency actions, including certain agency statements that are not subject to the notice-and-comment rulemaking requirements outlined elsewhere in the APA:

> "[R]ule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing[.][33]

The CRA narrows this definition by providing that the term "rule" does not include:

> (A) any rule of particular applicability, including a rule that approves or prescribes for the future rates, wages, prices, services, or allowances therefor, corporate or financial structures, reorganizations, mergers, or acquisitions thereof, or accounting practices or disclosures bearing on any of the foregoing;

---

[25] U.S. Gov't Accountability Off., B-278224, Opinion as to Whether the American Heritage River Initiative is a "Rule" Under the Small Business Regulatory Enforcement Fairness Act 3 (1997) (concluding that an executive order "need not have been submitted to Congress" because the President is not an "agency" under the CRA).

[26] Cong. Requestors, B-329206, 2018 WL 2016945, at *3 (Comp. Gen. May 1, 2018) (concluding that agency actions implementing a presidential memorandum, which was issued under a statute broadly granting discretion to the President, were not subject to the CRA).

[27] Safer Fed. Workforce Task Force, B-333725, 2022 WL 843860, at *5 (Comp. Gen. Mar. 17, 2022) (concluding an OMB action was not an "agency" action subject to the CRA because the agency was "acting explicitly under a presidential delegation of the President's discretionary authority" and therefore standing "in the President's shoes").

[28] Fed. Hous. Fin. Agency, B-335424, 2024 WL 1016116, at *4 (Comp. Gen. Mar. 7, 2024). In this opinion, GAO further concluded that the Federal Housing Finance Agency's (FHFA) actions directing Fannie Mae and Freddie Mac also were not subject to the CRA because FHFA was acting in its role as conservator, shedding its government character and acting in a private capacity. *Id.* at *5. *Accord* Fed. Hous. Fin. Agency, B-336260, 2024 WL 4380633, at *5 (Comp. Gen. Oct. 1, 2024).

[29] Off. of the U.S. Trade Rep., B-335714, 2024 WL 2700013, at *3 (Comp. Gen. May 23, 2024).

[30] *See* 5 U.S.C. § 804(3).

[31] Cong. Requesters, B-325553, 2014 WL 2211715, at *1 (Comp. Gen. May 29, 2014); *accord, e.g.,* Hon. Edward Markey, B-330190, 2018 WL 6632991, at *1 (Comp. Gen. Dec. 19, 2018) (declining to consider a memorandum that contained "only a proposal with recommendations"); Natl. Inst. of Standards and Tech., Dep't of Com., B-336146, 2024 WL 2746950, at *3 (Comp. Gen. May 28, 2024). The APA similarly only allows judicial review of "final" agency action. *E.g.*, Bennett v. Spear, 520 U.S. 154, 177–78 (1997).

[32] *See* 5 U.S.C. § 804(3) ("The term 'rule' has the meaning given such term in section 551 . . . .").

[33] *Id.* § 551(4).

(B) any rule relating to agency management or personnel; or

(C) any rule of agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties.[34]

Determining whether any particular agency action is a rule subject to the CRA therefore entails a two-part inquiry: first, asking whether the action qualifies as a rule under the APA definition and, second, asking whether the action falls within any of the exceptions to that definition provided in the CRA. These two steps are illustrated below in **Figure 1**.

**Figure 1. Determining Whether an Agency Action Is a "Rule" Under the CRA: Two-Part Inquiry**



**Source:** Congressional Research Service.

The two elements of this inquiry are heavily fact specific and require looking beyond a document's label to the substance of the agency's action.[35]

While the CRA draws from the broad APA definition of "rule," it does not draw from the provisions in the APA that outline so-called notice-and-comment rulemaking procedures. The APA outlines specific rulemaking procedures that agencies must follow when they formulate, amend, or repeal a rule.[36] The APA generally requires agencies to notify the public of a proposed rule and then provide a meaningful opportunity for public comment on that rule.[37] However, not all agency acts that qualify as "rules" under the APA definition are required to comply with the APA's rulemaking procedures.[38] In particular, the APA provides that notice-and-comment is not required for "interpretative rules" and "general statements of policy."[39]

---

[34] *Id.* § 804(3).

[35] *Cf., e.g.*, Columbia Broad. Sys., Inc. v. United States, 316 U.S. 407, 416 (1942).

[36] *See* 5 U.S.C. § 553.

[37] *See* CRS Report R41546, *A Brief Overview of Rulemaking and Judicial Review*, by Todd Garvey (2017).

[38] *See* 5 U.S.C. § 553(a), (b)(A).

[39] *Id.* § 553(b)(A). *See also, e.g.*, Am. Hosp. Ass'n v. Bowen, 834 F.2d 1037, 1045–48 (D.C. Cir. 1987) (outlining three types of agency rules that are exempt from 5 U.S.C. § 553's notice-and-comment requirements). The APA also exempts rules if they involve "a military or foreign affairs function of the United States" or relate to "public property, loans, grants, benefits, or contracts." 5 U.S.C. § 553(a). There is also a "good cause" exception to the notice-and-comment requirements. *Id.* § 553(b)(B). For a more detailed overview of the good cause exception to notice-and-comment procedures, see CRS Report R44356, *The Good Cause Exception to Notice and Comment Rulemaking: Judicial Review of Agency Action*, by Jared P. Cole (2016).

Courts frequently hold that agencies' guidance documents are exempt from APA notice-and-comment rulemaking requirements because those documents are properly classified either as interpretive rules or as general policy statements.[40] Interpretive rules merely explain or clarify preexisting legal obligations without themselves "purport[ing] to impose new obligations or prohibitions,"[41] while general policy statements simply describe how an agency "will exercise its broad enforcement discretion"[42] without binding the agency.[43] The critical distinction between interpretive rules and general policy statements on the one hand and rules subject to notice-and-comment requirements on the other is that the latter "bind[] private parties or the agency itself with the 'force of law'"[44] and have "legal effect."[45]

In contrast, the CRA does not exempt interpretive rules or general policy statements. Instead, as discussed below, it has been interpreted to apply to agency guidance documents so long as they otherwise meet the definition of "rule" and do not fall under one of the three exemptions. Post-enactment legislative history[46] of the CRA supports this interpretation. Following the enactment of the CRA in 1996, the law's sponsors inserted into the *Congressional Record* a statement[47] in which they asserted that the law would cover a wide swath of agency actions:

> The committees intend this chapter to be interpreted broadly with regard to the type and scope of rules that are subject to congressional review. The term "rule" in subsection 804(3) begins with the definition of a "rule" in subsection 551(4) and excludes three subsets of rules that are modeled on APA sections 551 and 553. This definition of a rule does not turn on whether a given agency must normally comply with the notice-and-comment provisions of the APA . . . . The definition of "rule" in subsection 551(4) covers a wide spectrum of activities.[48]

This statement suggests that Congress intended the CRA to reach a broad range of agency activities, including some agency policy statements and interpretive rules, despite the fact that those actions are not subject to the APA's requirements for notice-and-comment.[49]

---

[40] *See, e.g.,* Ass'n of Flight Attendants-CWA v. Huerta, 785 F.3d 710, 717 (D.C. Cir. 2015); *see generally*, *e.g.,* CRS Legal Sidebar LSB10591, *Agency Use of Guidance Documents*, by Kate R. Bowers (2021); CRS Report R44468, *General Policy Statements: Legal Overview*, by Jared P. Cole and Todd Garvey (2016). While the APA refers to "interpretative" rules, 5 U.S.C. § 553(b)(A), many courts and commentators now use the simpler term "interpretive."

[41] Nat'l Mining Ass'n v. McCarthy, 758 F.3d 243, 252 (D.C. Cir. 2014). *See also, e.g*., *Am. Hosp. Ass'n*, 834 F.2d at 1045.

[42] *Nat'l Mining Ass'n*, 758 F.3d at 252.

[43] *Am. Hosp. Ass'n*, 834 F.2d at 1046.

[44] Gen. Elec. v. EPA, 290 F.3d 377, 382 (D.C. Cir. 2002) (quoting Molycorp, Inc. v. EPA, 197 F.3d 543, 545 (D.C. Cir. 1999)).

[45] Am. Mining Cong. v. Mine Safety & Health Admin., 995 F.2d 1106, 1112 (D.C. Cir. 1993).

[46] Courts have sometimes questioned the validity of post-enactment legislative history as an interpretive tool. *E.g.*, Bruesewitz v. Wyeth LLC, 562 U.S. 223, 242 (2011) ("Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation.").

[47] In the statement, the sponsors observed that "no formal legislative history was prepared to explain [the CRA]" and that the statement was "intended to cure this deficiency." 142 CONG. REC. 8197 (joint statement of Sens. Nickles, Reid, & Stevens). The same statement was submitted in the House. 142 CONG. REC. 6926 (statement of Rep. Hyde).

[48] 142 CONG. REC. 6929 (statement of Rep. Hyde).

[49] *See also* 142 CONG. REC. 6907 (statement of Rep. McIntosh) ("Although agency interpretive rules, general statements of policy, guideline documents, and agency policy and procedure manuals may not be subject to the notice and comment provisions of section 553(c) of title 5, United States Code, these types of documents are covered under the [CRA].").

# Determining Whether an Agency Action Is an APA Rule or Other Agency Action

The CRA defines the word "rule" by incorporating the APA's definition of that term.[50] There is very little case law interpreting the meaning of "rule" under the CRA, due in part to the fact that the statute bars judicial review of any "determination, finding, action, or omission under" the CRA.[51] Cases interpreting the APA's definition of "rule" may provide persuasive authority for interpreting the CRA because the CRA explicitly relies on that provision as the basis for its own definition.[52]

## Identifying "Rules" Under the APA

An agency statement qualifies as a "rule" under the APA definition if it (1) is "of general or particular applicability," (2) has "future effect," and (3) is "designed to implement, interpret, or prescribe law or policy."[53]

With regard to the first requirement, as the U.S. Court of Appeals for the District of Columbia Circuit (D.C. Circuit) has observed, most agency statements will be "of general or particular applicability" and will fulfill this condition.[54] Regarding the "future effect" element, GAO's interpretations have focused on whether an agency statement operates prospectively: "whether it is concerned with policy considerations for the future and not with the evaluation of past conduct."[55] Courts in the APA context have said orders are retrospective, while rules have "future effect."[56]

The third requirement for an agency action to be considered an APA rule is that it must be "designed to implement, interpret, or prescribe law or policy."[57] The D.C. Circuit has held that agency documents that merely state an "established interpretation" and "tread no new ground" do

---

[50] 5 U.S.C. § 804(3).

[51] *Id.* § 805. Most courts to consider the scope of this provision have concluded it bars adjudication of questions such as whether an agency should have submitted an action under the CRA. *See, e.g.*, Montanans for Multiple Use v. Barbouletos, 568 F.3d 225, 229 (D.C. Cir. 2009); Via Christi Reg'l Med. Ctr. v. Leavitt, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007), *abrogated by* Azar v. Allina Health Services, 587 U.S. 566 (2019); *but see* Tugaw Ranches v. U.S. Dep't of the Interior, 362 F. Supp. 3d 879, 889 (D. Idaho 2019) (holding 5 U.S.C. § 805 "does not clearly prohibit judicial review of agency action under the CRA"); United States v. S. Indiana Gas and Elec. Co., No. IP99-1692CMS, 2002 WL 31427523, at *5–7 (S.D. Ind. Oct. 24, 2002) (holding 5 U.S.C. § 805 precludes review of Congress's determinations but not of agencies' determinations, and proceeding to review whether agency rule should have been reported under the CRA).

[52] *See, e.g.*, Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 86 (2006) ("[W]hen 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.'" (quoting Bragdon v. Abbott, 524 U.S. 624, 645 (1998))).

[53] 5 U.S.C. § 551(4).

[54] *See* Indep. Equip. Dealers Ass'n v. EPA, 372 F.3d 420, 428 (D.C. Cir. 2004) ("[T]he [Environmental Protection Agency] Letter is certainly a statement of 'general or particular applicability'—what isn't?"). The CRA, however, exempts rules of particular applicability and accordingly applies only to rules of general applicability. *See infra* "Rules of Particular Applicability."

[55] *E.g.*, Hon. Orrin Hatch, B-323772, 2012 WL 3801373, at *3 (Comp. Gen. Sept. 4, 2012).

[56] *See, e.g.*, Goodman v. FCC, 182 F.3d 987, 994 (D.C. Cir. 1999) (quoting 5 U.S.C. § 551(4)). *Cf.* Neustar Inc. v. FCC, 857 F.3d 886, 895 (D.C. Cir. 2017) ("[A]lthough adjudication is by its nature retroactive, it may be proper to enter an adjudicatory order without retroactive effect."). As the next section discusses in more detail, the first two requirements are relevant to distinguish rules, which are required to be submitted to Congress, from orders, which are not. *See, e.g.*, Fed. Commc'ns Comm'n, B-332233, 2020 WL 4901732, at *4 (Comp. Gen. Aug. 13, 2020).

[57] *See* 5 U.S.C. § 551(4).

not "implement, interpret, or prescribe law or policy" and therefore are not rules.[58] Similarly, an agency statement is not a rule if it "does not change any law or official policy presently in effect."[59] Thus, courts have concluded that "educational"[60] documents that "reprint[]"[61] or "restate"[62] existing law are not rules under the APA. The D.C. Circuit has also held that an agency's budget request is not a rule.[63]

In interpreting this provision for purposes of the CRA, GAO has made a similar distinction, concluding that agency statements that merely restate or inform the public about a previously adopted policy are not rules.[64] Accordingly, GAO has said that certain agency actions required as part of a statutory process did not implement law because they merely memorialized a prior decision.[65] For instance, GAO explained that an agency notice creating a new system of records, issued "in response to a previously made policy decision," did not qualify as a rule.[66] In GAO's view, the notice "did not change existing policy but simply left the world as it found it, and, accordingly, does not implement, interpret, or prescribe law or policy nor does it describe the organization, procedure, or practice requirements of an agency."[67] In contrast, GAO has said statements that present new recommendations,[68] "provide[] extra information" to explain how regulated entities can comply with a statute, or "express[] a policy preference" as to how entities should approach compliance, do implement law rather than merely restate it.[69]

---

[58] *See* Indep. Equip. Dealers Ass'n v. EPA, 372 F.3d 420, 428 (D.C. Cir. 2004) (considering an EPA letter, responding to an inquiry from a trade association, that stated the EPA's view of the proper interpretation of the governing statute and regulation).

[59] Indus. Safety Equip. Ass'n v. EPA, 837 F.2d 1115, 1120 (D.C. Cir. 1988); *see id.* (noting that although an agency guide gave safety advice and recommendations that went beyond minimum legal requirements, these sections were only advisory and the EPA was careful to "underscore[] the distinction between the present legal requirements" and this advice).

[60] Am. Trucking Ass'n v. United States, 755 F.2d 1292, 1296 (7th Cir. 1985) (holding an agency report was not a rule where it was merely "an educational undertaking" that did not fix, and was not "intended to fix, any legal rights").

[61] Golden & Zimmerman, LLC v. Domenech, 599 F.3d 426, 431 (4th Cir. 2010) ("In reprinting the relevant statutes, regulations, and rulings, the Reference Guide undoubtedly did not 'implement, interpret, or prescribe law.'" (quoting 5 U.S.C. § 551(4))).

[62] *Id.* at 431–32 ("The Reference Guide also contains frequently asked questions and answers . . . . The questions and answers were not themselves designed to be enforceable rules, but rather to be a mechanism for explaining the laws, regulations, and rulings. They do not impose new legal requirements, having been reiterated over 13 times during the course of over 40 years. Rather, they attempt to restate or report what already exists in the relevant body of statutes, regulations, and rulings.").

[63] Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d 13, 20 (D.C. Cir. 2006) ("The agency's proposal to Congress, developed to secure the [appropriated] funds, may serve as a useful planning document, but it is not a 'rule'. . . . The most that can be said is that it outlines the goals and methods of an administrative program." (quoting 5 U.S.C. § 551(4))).

[64] *E.g.*, U.S. Dep't of Health and Hum. Serv., Ctr for Disease Control and Prevention, B-335316, 2023 WL 8278750, at *5 (Comp. Gen. Nov. 29, 2023); *accord, e.g.*, Off. of Personnel Mgt., B-334237, 2023 WL 2836787, at *3 n.3 (Comp. Gen. Apr. 6, 2023); Off. of the U.S. Trade Rep., B-335714, 2024 WL 2700013, at *4 (Comp. Gen. May 23, 2024).

[65] *E.g.*, Hon. Brian Schatz, B-330288, 2019 WL 479525, at *3 (Comp. Gen. Feb. 7, 2019).

[66] Ct. Serv. and Offender Supervision Agency, Pretrial Serv. Agency, B-334005, 2023 WL 316010, at *5 (Comp. Gen. Jan. 18, 2023).

[67] *Id.*

[68] U.S. Dep't of the Int., Bureau of Ocean Energy Mgt., B-335629, 2024 WL 3338928, at *5 (Comp. Gen. July 8, 2024).

[69] Fed. Hwy. Admin., B-334032, 2022 WL 17744101, *4 (Comp. Gen. Dec. 15, 2022); *see also* Dep't of Hous. and Urb. Dev., B-331171, 2020 WL 7629655, at *4 (Comp. Gen. Dec. 17, 2020); Off. of Personnel Mgt., B-334237, 2023 WL 2836787, *3 n.3 (Comp. Gen. Apr. 6, 2023). In evaluating the effects of a statement on third parties, this inquiry (continued...)

Some court opinions interpreting the APA have found that nonbinding agency actions cannot qualify as agency rules. For example, some D.C. Circuit opinions convey that the APA's "future effect" requirement excludes any agency statements that do not "bind the agency,"[70] and others conclude that general policy statements cannot qualify as "final" actions because they are not legally binding.[71] These cases, however, are arguably inconsistent with the structure of the APA, which suggests that the APA term "rule" includes both binding and nonbinding actions. In particular, as discussed above, some—but not all—APA "rules" must go through procedures commonly known as notice-and-comment rulemaking.[72] To determine which rules are subject to notice-and-comment requirements, courts have distinguished substantive rules (sometimes also called "legislative" rules) from non-substantive rules.[73] Substantive rules have "the force of law," meaning they are legally binding, and are subject to the APA's notice-and-comment procedures.[74] Non-substantive rules, by definition, are not legally binding—but have still been described by courts as rules.[75] Congress would not have needed to expressly exclude nonbinding interpretive rules and policy statements from the APA's notice-and-comment procedures unless they otherwise qualified as "rules" subject to those requirements.[76]

Regardless of these APA opinions, GAO has clearly stated that nonbinding agency actions can be subject to the CRA as final rules.[77] GAO has concluded the CRA "covers general statements of policy" and other nonbinding guidance documents, pointing to the fact that the CRA uses the definition of "rule" in 5 U.S.C. § 551—which is broader than the subclass of rules subject to notice-and-comment procedures—as well as the CRA's post-enactment legislative history.[78]

## Differentiating "Rules" from "Orders" Under the APA

The APA provides a general framework governing most agency actions—not only agency rulemaking,[79] but also administrative adjudications.[80] The APA accordingly distinguishes between

---

can have some conceptual overlap with the CRA's third exception. *See infra* note 189; *see also, e.g.*, U.S. Dep't of the Int., Bureau of Ocean Energy Mgt., B-335629, 2024 WL 3338928, at *6 (Comp. Gen. July 8, 2024) (concluding an agency action implements law or policy because it "outlines agency preferences concerning the behavior of current or potential beneficiaries of federal actions").

[70] Indep. Petroleum Ass'n of Am. v. Babbitt, 92 F.3d 1248, 1256 (D.C. Cir. 1996); *accord* Amoco Prod. Co. v. Watson, 410 F.3d 722, 732 (D.C. Cir. 2005). However, in other cases, the D.C. Circuit and other courts have made no mention of the idea that to have future effect, an agency statement must be binding. *E.g.*, Indep. Equip. Dealers Ass'n v. EPA, 372 F.3d 420, 428 (D.C. Cir. 2004). *Cf.* Syncor Int'l Corp. v. Shalala, 127 F.3d 90, 94 (D.C. Cir. 1997) (discussing the "distinction between a substantive rule—really any rule—and a general statement of policy").

[71] *E.g.*, Nat'l Mining Ass'n v. McCarthy, 758 F.3d 243, 252–53 (D.C. Cir. 2014); *but see, e.g.*, Appalachian Power Co. v. EPA, 208 F.3d 1015, 1021–22 (D.C. Cir. 2000) (concluding guidance documents can have a binding effect "in a practical sense" and can thus qualify as final action). For more information on the APA's requirement for agency actions to be final before courts may review them, see CRS In Focus IF12386, *Defining Final Agency Action for APA and CRA Review*, by Valerie C. Brannon (2023).

[72] *See* 5 U.S.C. § 553.

[73] *E.g.*, Chrysler Corp. v. Brown, 441 U.S. 281, 301–02 (1979). This distinction is grounded in 5 U.S.C. § 553(b)'s exclusions for general policy statements and interpretive rules.

[74] *E.g.*, *Nat'l Mining Ass'n*, 758 F.3d at 251–52; Batterton v. Marshall, 648 F.2d 694, 701 (D.C. Cir. 1980).

[75] *E.g.*, Walmart Inc. v. U.S. Dep't of Justice, 21 F.4th 200, 308 (5th Cir. 2021); *Appalachian Power Co.*, 208 F.3d at 1021–22; Nat'l Automatic Laundry & Cleaning Council v. Shultz, 443 F.2d 689, 698 (D.C. Cir. 1971).

[76] *See, e.g.*, Duncan v. Walker, 533 U.S. 167, 174 (2001) (noting that courts should avoid treating statutory terms as surplusage and, if possible, should give effect to every statutory word).

[77] *E.g.*, U.S. Dep't of Transp., B-335488, 2023 WL 6891971, at *7 (Comp. Gen. Oct. 18, 2023).

[78] *E.g.*, Hon. Pat Toomey, B-329272, 2017 WL 4684778, at *3 (Comp. Gen. Oct. 19, 2017).

[79] *See* 5 U.S.C. § 553.

[80] *See id.* §§ 554, 556–58.

different types of agency actions, separating rules from orders and investigatory acts.[81] These distinctions are also relevant when deciding whether an agency action is a rule subject to the CRA.

Primarily, the APA distinguishes a "rule" from an "order," defining an "order" as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing."[82] Orders are the product of agency adjudication, in contrast to rules, which result from rulemaking.[83] To determine whether an agency action is a rule or an order under the APA, courts look beyond the document's label to the substance of the action.[84] One federal court of appeals described the distinction between rulemaking and adjudication as follows:

> First, adjudications resolve disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals. . . . Second, because adjudications involve concrete disputes, they have an immediate effect on specific individuals (those involved in the dispute). Rulemaking, in contrast, is prospective, and has a definitive effect on individuals only after the rule subsequently is applied.[85]

Thus, rules operate generally and prospectively: they are intended to "inform the future conduct" of an open-ended class of people who might be subject to the rules when they are applied in future agency enforcement actions.[86] Adjudications, in contrast, look backwards to the conduct of specific parties and apply to those entities immediately.[87] Orders issued in adjudications may announce policies that have "some tangential impact on other entities" without being transformed into a rulemaking.[88] The difference is whether the decision must "be obeyed by the affected public" or merely the parties to the order.[89]

GAO has followed this APA distinction to conclude that agency orders, including licensing actions, are not subject to the CRA.[90] A decision to apply existing legal standards to a particular set of facts qualifies as an order.[91] To determine whether an agency action is a rule or an order, GAO has looked to the factors outlined above, including whether the action applied to a particular entity rather than "a broad unspecified group," whether the agency process "involved

---

[81] *See id.* §§ 551, 555.

[82] *Id.* § 551(6).

[83] *See id.* § 551(4)–(7).

[84] *E.g.*, Columbia Broad. Sys., Inc. v. United States, 316 U.S. 407, 416 (1942) ("The particular label placed upon [the action] by the [Federal Communications] Commission is not necessarily conclusive, for it is the substance of what the Commission has purported to do and has done which is decisive."); *id.* at 417 (holding document labeled "order" was in fact a rule under the relevant statute). *But cf.* Am. Airlines, Inc. v. Dep't of Transp., 202 F.3d 788, 797 (5th Cir. 2000) ("We . . . accord significant deference to an agency's characterization of its own action.").

[85] Yesler Terrace Cmty. Council v. Cisneros, 37 F.3d 442, 448 (9th Cir. 1994). Agency adjudications do not necessarily involve "disputes among . . . individuals." *Id.* Agency adjudications may include, for example, licensing and permitting actions. 5 U.S.C. § 551(6)–(8).

[86] Indep. Equip. Dealers Ass'n v. EPA, 372 F.3d 420, 428 (D.C. Cir. 2004); *accord, e.g.*, Safari Club Int'l v. Zinke, 878 F.3d 316, 332 (D.C. Cir. 2017). As discussed elsewhere, the APA definition of "rule" also includes rules of particular applicability, which may apply to a specifically identified person or class; however, the CRA excludes such rules. *See infra* "Rules of Particular Applicability."

[87] *See, e.g.*, Neustar Inc. v. FCC, 857 F.3d 886, 895–96 (D.C. Cir. 2017).

[88] *Id.* at 895.

[89] NLRB v. Wyman-Gordon Co., 394 U.S. 759, 765–66 (1969).

[90] *E.g.*, Fed. Commc'ns Comm'n, B-332233, 2020 WL 4901732, at *2 (Comp. Gen. Aug. 13, 2020); U.S. Dep't of the Int., B-335781, 2024 WL 837489, at *3 (Comp. Gen. Feb. 27, 2024); Fed. Energy Reg. Comm'n, B-335030, 2024 WL 2077418, at *3 (Comp. Gen. May 8, 2024).

[91] Fed. Hous. Fin. Agency, B-336260, 2024 WL 4380633, at *6 (Comp. Gen. Oct. 1, 2024).

consideration of particular facts, as opposed to general policy," and whether the action "has immediate effect."[92] The presence of only one of these factors, or the use of procedures associated more with rulemaking or adjudication, may not always be dispositive.[93] For example, GAO opined that an Environmental Protection Agency (EPA) action denying 69 petitions for exemptions from a statutory requirement qualified as an order even though EPA had employed public notice-and-comment procedures.[94] In another opinion, GAO indicated that although an Education Department action waived certain statutory requirements, it was a rule rather than an order because it applied "across the board," creating new benefits and requirements "for all loan holders" rather than addressing requests from specific entities.[95] Thus, the inquiry into whether an action is an order or rule has often focused on whether the action has a particularized application.[96] This characteristic creates overlap with the CRA exception for rules of particular applicability,[97] discussed below.[98]

In addition to the distinction between rules and orders, some courts have also differentiated rules from agency investigations.[99] A separate provision of the APA addresses an agency's authority to compel the submission of information and perform "investigative act[s] or demand[s]."[100] When agencies conduct investigative actions such as requiring regulated parties to submit informational reports, courts have sometimes held that they are not subject to the APA's rulemaking requirements,[101] particularly when an action is "preliminary to the regulatory process" and thus has no immediate effect on the public.[102] While the investigative acts themselves may not be rules, courts have observed that some general statements related to investigations may qualify as

---

[92] Env't Prot. Agency, B-334309, 2023 WL 8353888, at *5–6 (Comp. Gen. Nov. 30, 2023).

[93] Some GAO opinions, however, have seemed to focus on the agency process used to adopt the action. *See, e.g.*, Ctr for Disease Control and Prevention, B-333501, 2021 WL 5986759, at *4 (Comp. Gen. Dec. 14, 2021) (concluding an action is not an order because it resulted from "a process used to draft rules, not an adjudicatory proceeding"); *cf.* U.S. Food and Drug Admin., B-334995, 2023 WL 4365327, at *4–5 (Comp. Gen. July 6, 2023) (discussing the agency's process, but also noting that the action involved a review of applications from specific companies and had an immediate effect).

[94] Env't Prot. Agency, B-334400, 2023 WL 1927814, at *6 (Comp. Gen. Feb. 9, 2023). In contrast, GAO determined an agency letter addressed to eight specific companies was not a rule of particular applicability—although it addressed "specified entities," it did "not address individualized actions" those companies were allowed to take based on their "individual circumstances." Cong. Requesters, B-330843, 2019 WL 5448291, at *8 (Comp. Gen. Oct. 22, 2019).

[95] U.S. Dep't of Educ., B-334644, 2023 WL 2599665, at *7 (Comp. Gen. Mar. 17, 2023).

[96] *E.g.,* Hon. James A. Leach, B-286338, 2000 WL 1568268, at *3 (Comp. Gen. Oct. 17, 2000) (concluding an agency action was a rule rather than an order because, although it related to the issuance of national charters for financial institutions, the agency statement was generally applicable and "unrelated to any particular institution's application for a charter").

[97] For instance, a number of GAO opinions have concluded that in the alternative, if an agency action is not an order, it could be considered a rule of particular applicability. *E.g.*, Fed. Commc'ns Comm'n, B-332233, 2020 WL 4901732, at *5 n.3 (Comp. Gen. Aug. 13, 2020); U.S. Food and Drug Admin., B-334995, 2023 WL 4365327, at *5–6 (Comp. Gen. July 6, 2023).

[98] *See infra* "Rules of Particular Applicability."

[99] *See, e.g.*, *In re* FTC Line of Bus. Report Litig., 595 F.2d 685, 695 (D.C. Cir. 1978) (per curiam) ("The language and legislative history of the APA suggest a classification of agency activity into three basic categories: rulemaking, adjudication and investigation.").

[100] 5 U.S.C. § 555.

[101] *See In re* FTC Line of Bus. Report Litig., 595 F.2d at 696; United States v. W.H. Hodges & Co., 533 F.2d 276, 278 (5th Cir. 1976) (per curiam).

[102] Env't Def. Fund, Inc. v. Costle, 636 F.2d 1229, 1255 (D.C. Cir. 1980). Accordingly, at least some agency investigations may not be considered *final* agency action, regardless of whether they qualify as a rule. Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d 13, 19–20 (D.C. Cir. 2006); *see generally* CRS In Focus IF12386, *Defining Final Agency Action for APA and CRA Review*, by Valerie C. Brannon (2023).

---

rules.[103] For instance, in one case, a federal court of appeals indicated that the procedures governing an agency's decision to investigate "are separate from and precede the agency's ultimate [investigative] act," concluding that the procedures at issue constituted a rule.[104]

## Identifying CRA Exceptions

Even if an agency action is a "rule" within the APA definition, it will not be subject to the CRA if it falls within one of the three exceptions to the CRA's definition of a "rule."[105] The CRA exempts from the definition rules "of particular applicability," rules "relating to agency management or personnel," and "any rule of agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties."[106] Additionally, the CRA does not "apply to rules that concern monetary policy proposed or implemented by the Board of Governors of the Federal Reserve System or the Federal Open Market Committee."[107]

The CRA also contains a partial exception for rules where an agency has, "for good cause," dispensed with notice-and-comment rulemaking procedures, as well as for rules related to "a regulatory program for a commercial, recreational, or subsistence activity related to hunting, fishing, or camping."[108] This section does not exempt rules from the CRA procedures entirely; it merely allows the agency to determine when the rule shall take effect notwithstanding the CRA's requirements.[109]

As previously discussed, the APA provides that notice-and-comment procedures are not required for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."[110] Additionally, the APA's rulemaking procedures do not, in relevant part, apply to "matter[s] relating to agency management or personnel."[111] To the extent that the CRA's exceptions track language in the APA, cases interpreting those APA provisions may be useful to interpret the CRA exceptions.[112] The CRA does *not* contain an exclusion for either general policy statements or interpretive rules,[113] and as such, GAO has concluded these types of agency statements may be subject to the CRA.[114]

---

[103] *See* U.S. Dep't of Labor v. Kast Metals Corp., 744 F.2d 1145, 1150 (5th Cir. 1984) ("To state that a line exists between investigative activity that anticipates the promulgation of a rule (or the initiation of enforcement proceedings) and the rule itself demarcates only a vague result—it does not illumine the content of the distinction.").

[104] *Id.* at 1151–52.

[105] *See* 5 U.S.C. § 804(3)(A)–(C).

[106] *Id.* § 804(3).

[107] *Id.* § 807.

[108] *See id.* § 808(2). The CRA's "good cause" exclusion mirrors the text of 5 U.S.C. § 553(b)(B). *See supra* note 39.

[109] *See* 5 U.S.C. §§ 801, 808.

[110] *Id.* § 553(b)(A).

[111] *Id.* § 553(a)(2). The APA also exempts rules if they involve "a military or foreign affairs function of the United States" or relate to "public property, loans, grants, benefits, or contracts." *Id.* § 553(a).

[112] *See, e.g.*, Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 86 (2006) ("[W]hen 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.'" (quoting Bragdon v. Abbott, 524 U.S. 624, 645 (1998)) (second alteration in original)).

[113] *See* 5 U.S.C. § 804(3)(A)–(C).

[114] *E.g.*, Hon. Orrin Hatch, B-323772, 2012 WL 3801373, *2–3 (Comp. Gen. Sept. 4, 2012).

## Rules of Particular Applicability

While the APA's definition of "rule" includes agency statements "of general *or particular* applicability,"[115] the CRA expressly exempts "any rule of particular applicability."[116] Courts have said that this language refers to "legislative-type promulgations" that are "directed to" specifically named parties.[117] The CRA's text gives examples of some types of rules of particular applicability by specifying that this exemption includes any "rule that approves or prescribes for the future rates, wages, prices, services, or allowances therefor, corporate or financial structures, reorganizations, mergers, or acquisitions thereof, or accounting practices or disclosures bearing on any of the foregoing."[118] Moreover, the post-enactment statement for the record written by the CRA's sponsors maintained that "[Internal Revenue Service (IRS)] private letter rulings and Customs Service letter rulings are classic examples of rules of particular applicability."[119] Under the APA, courts have also held, for example, that agency actions designating specific sites as covered by environmental laws are rules of "particular applicability."[120]

In GAO opinions analyzing whether various agency actions fall within the particular applicability exception, GAO has stated that to be generally applicable, the CRA does not require a rule to "generally apply to the population as a whole."[121] Instead, "all that is required is a finding" that a rule "has general applicability within its intended range, regardless of the magnitude of that range."[122] For example, in one case, GAO concluded that an agency decision adopting and implementing a plan to counter decreased river flows in a certain river basin was not a matter of particular applicability.[123] In GAO's view, although the decision applied to a specific geographic area, it would nonetheless "have significant economic and environmental impact throughout several major watersheds in the nation's largest state."[124]

As mentioned above,[125] GAO has recognized an overlap between rules of particular applicability and orders, due to the fact that both focus on an agency action's particularized application to

---

[115] 5 U.S.C. § 551(4) (emphasis added).

[116] *Id.* § 804(3)(A).

[117] *See* U.S. Steel Corp. v. EPA, 605 F.2d 283, 285 n.3 (7th Cir. 1979) (discussing APA's legislative history). *See also* PBW Stock Exchange, Inc. v. SEC, 485 F.2d 718, 732 (3d Cir. 1973) (observing that because APA includes statements of particular applicability, it covers rules that "may be directly applicable to specific individuals or situations").

[118] 5 U.S.C. § 804(3)(A). *Cf.* ABC v. FCC, 682 F.2d 25, 31 (2d Cir. 1982) ("The legislative history of the APA confirms that decisions in agency ratemaking proceedings such as the establishment of a utility's allowable rate of return are rules of particular applicability . . . .").

[119] 142 Cong. Rec. 6930 (statement of Rep. Hyde). The post-enactment legislative history of the CRA provided other examples, as well: "Examples include import and export licenses, individual rate and tariff approvals, wetlands permits, grazing permits, plant licenses or permits, drug and medical device approvals, new source review permits, hunting and fishing take limits, incidental take permits and habitat conservation plans, broadcast licenses, and product approvals, including approvals that set forth the conditions under which a product may be distributed." *Id.*

[120] *See, e.g.*, Nat'l Wildlife Fed'n v. Costle, 629 F.2d 118, 126 n.27 (D.C. Cir. 1980) (holding that statement designating dredged material dumping site constitutes a rule of particular applicability for purposes of the APA). This holding may stand in some contrast to certain GAO opinions; *see infra* note 124 and accompanying text.

[121] Hon. Doug Ose, B-287557, 2001 WL 522025, at *6 (Comp. Gen. May 14, 2001).

[122] *Id.*

[123] *Id.* at *6–7.

[124] *Id.* at *7. *Accord, e.g.*, Hon. Lisa Murkowski, B-238859, 2017 WL 4772605, at *5 (Comp. Gen. Oct. 23, 2017) ("The 2016 Tongass Amendment is not an approval, license, or registration to a particular person or entity. Nor does it grant or recognize an exemption or relieve a restriction for a particular person or entity. While the plan does only apply to the Tongass National Forest and not to other national forests, it applies to . . . all persons or entities using the forest—not just a particular person or entity.").

[125] *See supra* "Differentiating "Rules" from "Orders" Under the APA."

identified parties.[126] One example comes from an opinion considering an agency action that approved a modification to an existing drug approval.[127] GAO said that as a licensing action, the modification qualified as an order, but GAO also observed that the CRA's post-enactment legislative history specifically identified "drug and medical device approvals" as examples of rules of particular applicability.[128] More generally, GAO said that although this particular action did not specifically name the companies who were the sponsors of the drugs, it still addressed only the "sponsors," who were "specific and easily identifiable parties."[129] Further, the modification was made "based on the specific facts and circumstances" of that drug.[130] Accordingly, the action qualified as a rule of particular applicability.[131]

In at least one opinion, GAO concluded that although an agency action appeared to qualify as a statutory example of a rule of particular applicability, that fact was not dispositive.[132] Specifically, GAO said that although an agency memorandum "prescribe[d] a special pay rate schedule," which appeared to make it a "rule that … prescribes for the future rates [or] wages" under the CRA,[133] the statement was not a rule of particular applicability.[134] GAO reasoned that the action did not apply to a specific person or entity but instead applied "to all employees whose pay rate would otherwise be below the special rate."[135]

Specifically identifying covered parties, however, may not always be sufficient to qualify for this exception. GAO concluded in one opinion that although an agency letter only applied to eight specifically named companies, it was not a rule of particular applicability because it did "not address individualized actions that an identified entity may or may not take based on the individual circumstances of each . . . company."[136] Rather than addressing whether the companies could, for example, engage in a specific transaction, the letters covered a general topic and discussed "a variety of actions the eight bank holding companies should consider or take."[137]

## Rules Relating to Agency Management or Personnel

The second CRA exemption excludes from the CRA's coverage "any rule relating to agency management or personnel."[138] GAO has concluded this exception includes rules establishing a

---

[126] *E.g.*, Env't Prot. Agency, B-334400, 2023 WL 1927814, at *7 (Comp. Gen. Feb. 9, 2023) (concluding first that an agency action is an order, but additionally saying that even if it did qualify as a rule, "it still would not be subject to CRA because of the exception for rules of particular applicability").

[127] U.S. Food and Drug Admin., B-334995, 2023 WL 4365327, at *1 (Comp. Gen. July 6, 2023).

[128] *Id.* at *5–6.

[129] *Id.* at *5.

[130] *Id.*

[131] *Id.*

[132] Off. of Personnel Mgt., B-334221, 2023 WL 1927816, at *4 (Comp. Gen. Feb. 9, 2023).

[133] 5 U.S.C. § 804(3)(A).

[134] Off. of Personnel Mgt., B-334221, 2023 WL 1927816, at *4 (Comp. Gen. Feb. 9, 2023).

[135] *Id.*

[136] Cong. Requesters, B-330843, 2019 WL 5448291, at *8 (Comp. Gen. Oct. 22, 2019).

[137] *Id.* This opinion may stand in contrast to the drug approval opinion mentioned above: there, the agency had modified a strategy that (as described by GAO) "may require a variety of materials and actions." U.S. Food and Drug Admin., B-334995, 2023 WL 4365327, at *2 (Comp. Gen. July 6, 2023). In distinguishing the letter to the bank holding companies, B-334995 said the drug modification addressed "actions the drug sponsors may take based on the specific facts and circumstances pertaining to" that drug, and unlike the letter to the eight bank holding companies, did not leave it to the companies to decide on the specific actions necessary. *Id.* at *5.

[138] 5 U.S.C. § 804(3)(B).

special pay rate,[139] establishing vaccination requirements for federal employees,[140] requiring new federal contract labor practices,[141] and changing servicemembers' health care.[142] The APA contains a similar exemption from its general rulemaking requirements.[143] Courts have concluded that the APA exemption covers agency statements such as policies for hiring employees.[144] A rule does not fall within this exemption solely because it is "directed at government personnel."[145] Rather, courts have viewed the APA exception to cover internal matters[146] that do not substantially affect parties outside an agency.[147]

As a matter of statutory interpretation, it may be unclear whether the substantial-effect requirement that courts developed in the APA context should be read into the CRA. Courts generally presume that where Congress adopts language from another statute, it also intends to incorporate any settled judicial interpretations of that same language.[148] Nonetheless, the CRA's exemption for rules relating to agency management or personnel does not expressly mention a rule's effect on third parties.[149] By contrast, another of the CRA's exemptions—for "any rule of agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties"—does.[150] This distinction in language could indicate that Congress intentionally chose to create a substantial-effect requirement for the latter exception while omitting this limitation from the former one[151] so that the former excludes "any rule relating to agency management or personnel" regardless of its impact on third parties.[152] On this view, the difference in phrasing would displace the ordinary presumption that Congress incorporates case law interpreting similar statutory provisions.[153] This interpretation could mean

---

[139] Off. of Personnel Mgt., B-334221, 2023 WL 1927816, at *5 (Comp. Gen. Feb. 9, 2023).

[140] Off. of Personnel Mgt., B-334237, 2023 WL 2836787, at *4 (Comp. Gen. Apr. 6, 2023).

[141] Off. of Mgt. and Budget and U.S. Dep't of Lab., B-335142, 2024 WL 1928503, at *4 (Comp. Gen. May 1, 2024).

[142] U.S. Dep't of Def., B-335115, 2023 WL 6284680, at *4 (Comp. Gen. Sept. 26, 2023).

[143] 5 U.S.C. § 553(a)(2).

[144] *See* Stewart v. Smith, 673 F.2d 485, 496, 499 (D.C. Cir. 1982) (characterizing policy of refusing to hire persons over 34 years old for jobs within correctional facilities as a "matter relating to agency management or personnel"). *See also* Hamlet v. United States, 63 F.3d 1097, 1103 (Fed. Cir. 1995) (suggesting personnel handbooks might fall within this APA exception).

[145] Joseph v. U.S. Civil Serv. Comm'n, 554 F.2d 1140, 1153 n.23 (D.C. Cir. 1977).

[146] *See* Tunik v. MSPB, 407 F.3d 1326, 1342 (Fed. Cir. 2005).

[147] *Stewart*, 673 F.2d at 498 (noting prior cases had suggested that this "substantial effect" requirement might exist, but declining to adopt that requirement itself).

[148] *E.g.*, Jama v. ICE, 543 U.S. 335, 349 (2005).

[149] *See* 5 U.S.C. § 804(3)(B).

[150] *See id.*

[151] *See, e.g.*, Russello v. United States, 464 U.S. 16, 23 (1983) ("[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). *See also* Stewart v. Smith, 673 F.2d 485, 498 (D.C. Cir. 1982) (declining to hold that the APA's two exemptions for agency matters are coextensive, because "to read the two exemptions as identical . . . would . . . ignore considerable differences between the language used").

[152] *See* 5 U.S.C. § 804(3)(B). The post-enactment legislative history of the CRA is arguably unclear on this point. *See* 142 CONG. REC. 6930 (statement of Rep. Hyde) ("Subsection 804(3)(B) excludes 'any rule relating to agency management or personnel' from the definition of a rule. Pursuant to subsection 804(3)(C), however, a 'rule of agency organization, procedure, or practice,' is only excluded if it 'does not substantially affect the rights or obligations of non-agency parties.' The committees' intent in these subsections is to exclude matters of purely internal agency management and organization, but to include matters that substantially affect the rights or obligations of outside parties.").

[153] *See* Jama v. ICE, 543 U.S. 335, 351–52 (2005) (holding principle did not apply where judicial authority was "too flimsy" to justify the presumption); Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 654 (1983) (holding principle did not apply where language of predecessor statute differed from challenged provision).

that the CRA's exception for rules relating to agency management or personnel may be interpreted more broadly than the APA exception.

However, it is also possible that Congress chose not to include the substantial-effect requirement in this exception because "prior judicial interpretation" of the identical phrases in the APA made such language unnecessary.[154] Congress may have added a substantial-effect requirement to the CRA exception for rules of agency organization, procedure, or practice in order to settle some ambiguity in the cases interpreting the parallel provision of the APA, as described below.[155]

Regardless, GAO has interpreted the CRA exception for rules relating to agency management or personnel to apply only "to purely internal agency matters, with no effect on non-agency parties."[156] In one opinion, GAO said that if a rule has an effect on third parties, then it must go on to consider the exception for rules of agency organization, procedure, or practice.[157] At the same time, like courts interpreting the similar APA exception, GAO has also recognized that personnel policies may sometimes "have an effect on individuals outside" an agency, but where that effect is "inextricably tied to" the third party's relationship with a federal employee, the rule may still fall within the CRA exception for agency management or personnel rules.[158]

In evaluating the "agency management" aspect of this exception, as opposed to the "personnel" provision, GAO has said "rules relating to management include those related to controlling, directing, or supervising internal management issues."[159] In one 2003 ruling, GAO concluded that a memorandum terminating a program that financed certain loans for the sale of agency properties fell within the exclusion.[160] GAO said the agency's decision about how to dispose of the properties was "the type of management decision left to the discretion" of the agency head.[161] In a 2024 opinion, GAO ruled that requiring agencies to designate certain staff as labor advisors and recommending their job duties qualified as "management decisions."[162] In a separate 2024 opinion, GAO said that part of an agency alert recommending communications strategies fell within this exception because it provided direction to agency communications personnel, thereby "conducting or supervising . . . interagency business."[163]

## Rules of Agency Organization, Procedure, or Practice

Finally, the CRA exempts "any rule of agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties."[164] The APA also excludes

---

[154] *See* United States v. Ressam, 553 U.S. 272, 282 (2008) (Breyer, J., dissenting) ("[O]ne can explain the absence of the words 'in relation to' in less damaging ways. The legislative drafters of the . . . amendment may have assumed that prior judicial interpretation . . . made the words 'in relation to' unnecessary.").

[155] *See infra* notes 171–177 and accompanying text.

[156] Off. of Personnel Mgt., B-334237, 2023 WL 2836787, at *3 (Comp. Gen. Apr. 6, 2023).

[157] Off. of Personnel Mgt., B-334221, 2023 WL 1927816, at *4 n.3 (Comp. Gen. Feb. 9, 2023).

[158] U.S. Dep't of Def., B-335115, 2023 WL 6284680, at *4 (Comp. Gen. Sept. 26, 2023). Specifically, GAO recognized in that opinion that a policy granting service members a travel allowance to seek certain types of health care may affect non-agency parties, but said the allowances were still part of the service members' benefits packages—a "personnel matter[]." *Id.*

[159] 5 U.S.C. § 804(3)(B); Off. of Mgt. and Budget, B-336512, 2024 WL 4005940, at *7 (Comp. Gen. Aug. 29, 2024).

[160] U.S. Gov't Accountability Off., B-292045, Whether a Department of Veterans Affairs Memorandum is a Rule Under the Congressional Review Act (2003).

[161] *Id.*

[162] Off. of Mgt. and Budget and U.S. Dep't of Lab., B-335142, 2024 WL 1928503, at *4 (Comp. Gen. May 1, 2024).

[163] Off. of Mgt. and Budget, B-336512, 2024 WL 4005940, at *8 (Comp. Gen. Aug. 29, 2024).

[164] 5 U.S.C. § 804(3)(C).

"rules of agency organization, procedure, or practice" from notice-and-comment rulemaking procedures.[165] Courts have held that the APA exception includes agency decisions relating to how regulated entities must go about satisfying investigative requirements.[166] Similarly, GAO has said the CRA exception applies to rules that change the timing of when a regulated entity has to submit certain materials but do not ultimately change the substantive criteria the agency will apply to assess compliance.[167] GAO has also concluded, for instance, that the CRA exception encompassed an agency document dictating the types of evidence an agency would consider because it only applied to agency officials.[168]

Unlike the CRA, the APA's exception for procedural rules does not expressly refer to rules without a substantial effect on "the rights or obligations of non-agency parties."[169] Nonetheless, courts have sometimes read a similar limitation into the APA exemption,[170] and so the case law defining this requirement may be relevant to determine the scope of the CRA exemption. However, in the cases interpreting the APA's procedural exception, the impact of a rule on a third party is not the only factor courts use to assess whether a rule is procedural.[171] Instead, courts have engaged in at least two kinds of inquiries.[172]

The first inquiry is the "substantial impact test," which asks whether the agency action substantially impacts the regulated industry.[173] Under this test, "a procedural rule 'does not itself alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency.'"[174] However, the D.C. Circuit has observed that even rules best characterized as procedural may have a significant effect on regulated parties, and, accordingly, has held that "a rule with a 'substantial impact' upon the persons subject to it is not

---

[165] *Id.* § 553(b)(A).

[166] *See, e.g.*, Am. Hosp. Ass'n v. Bowen, 834 F.2d 1037, 1045–48 (D.C. Cir. 1987) (holding that agency manual setting out "enforcement plan" for agency's employees to review regulated entities contained "classic procedural rules" (emphasis omitted)); Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp., 589 F.2d 658, 665–66 (D.C. Cir. 1978) (holding that regulation providing that the agency would no longer audit insured institutions in the course of their examinations, and that institutions must satisfy the regulatory audit requirement by other means, was a rule "of agency procedure"); EDF v. EPA, 515 F. Supp. 3d 1135, 1148 (D. Mont. 2021) (compiling examples of procedural rules).

[167] *See, e.g.*, Cong. Requesters, B-330843, 2019 WL 5448291, at *9–10 (Comp. Gen. Oct. 22, 2019); U.S. Dep't of Educ., B-335516, 2024 WL 319735, at *4 (Comp. Gen. Jan. 24, 2024). *See also* Bd. of Governors of the Fed. Rsrv. Sys., B-336217, 2024 WL 3721572, at *9 (Comp. Gen. Aug. 6, 2024) (concluding CRA does not apply to provisions altering an agency notification process).

[168] Hon. Jason Smith, B-329926, 2018 WL 4296553, at *4 (Comp. Gen. Sept. 10, 2018).

[169] 5 U.S.C. § 804(3)(C).

[170] Pickus v. U.S. Bd. of Parole, 507 F.2d 1107, 1113 (D.C. Cir. 1974) ("This category . . . should not be deemed to include any action which . . . substantially affects the rights of those over whom the agency exercises authority."), *overruled on other grounds by* Califano v. Sanders, 430 U.S. 99, 104–05 (1977). *See also, e.g.*, Batterton v. Marshall, 648 F.2d 694, 708 (D.C. Cir. 1980) ("The exemption cannot apply . . . where the agency action trenches on substantial private rights and interests.").

[171] *See, e.g.*, Texas v. United States, 787 F.3d 733, 765–66 (5th Cir. 2015).

[172] *See also* AFL-CIO v. NLRB, 57 F.4th 1023, 1034 (D.C. Cir. 2023) ("We treat rules as procedural if they are 'primarily directed toward improving the efficient and effective operations of an agency.'" (quoting Mendoza v. Perez, 754 F.3d 1002, 1023 (D.C. Cir. 2014))).

[173] *E.g.*, Dep't of Labor v. Kast Metals Corp., 744 F.2d 1145, 1153 (5th Cir. 1984).

[174] Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 653 F.3d 1, 5 (D.C. Cir. 2011) (quoting Chamber of Com. of U.S. v. U.S. Dep't of Labor, 174 F.3d 206, 211 (D.C. Cir. 1999)); *cf., e.g., Texas*, 787 F.3d at 765–66 (describing the "substantial impact" test as looking to whether the rule "modifies substantive rights and interests" (quoting *Kast Metals Corp.*, 744 F.2d at 1153)).

*necessarily* a substantive rule."[175] Consequently, the D.C. Circuit has also asked whether the rule "encodes a substantive value judgment"[176] or changes the "substantive standards" for evaluating compliance.[177]

Given that the text of the CRA expressly excludes rules of agency organization, procedure, or practice that do not "substantially affect the rights or obligations of non-agency parties,"[178] the CRA appears to mandate the use of something akin to the substantial impact test to determine whether a rule falls within the exception.[179] One of the sponsors of the CRA emphasized prior to its passage that to determine whether a rule should be excluded under this provision, "the focus . . . is not on the type of rule but on its effect on the rights or obligations of nonagency parties."[180] He went on to say that the exclusion covered only rules "with a truly minor, incidental effect on nonagency parties."[181] Some GAO opinions, though, refer to the "substantive value judgment" test.[182] For instance, GAO said one agency memorandum encouraging federal grant funds to be used for certain types of projects had an "overriding purpose" of advancing a "value judgment" that certain types of projects were preferable.[183] The memorandum's goal was "not to accomplish internal housekeeping," but to encourage the selection of certain types of projects.[184]

Nonetheless, many other GAO opinions evaluating the application of this exception refer to the substantial impact test.[185] Apparently as part of this inquiry, GAO has looked to whether an agency action changes the "substantive standards" for evaluating compliance with legal obligations.[186] GAO has not said what degree of effect on rights or obligations qualifies as "substantial," but it has reiterated that substantiality is part of the statutory standard and that GAO must evaluate rules based on their "likely effects . . . before they occur."[187] In a few opinions, GAO has concluded that an agency statement has *no* effect on third parties' legal rights or obligations where any consequences from noncompliance stem from an "independent legal

---

[175] Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 653 F.3d 1, 5 (D.C. Cir. 2011) (emphasis added). *See also* Am. Hosp. Ass'n v. Bowen, 834 F.2d 1037, 1047 (D.C. Cir. 1987) (noting that court's "gradual move away from looking solely into the substantiality of the impact"). *Cf.* Time Warner Cable Inc. v. FCC, 729 F.3d 137, 168 (2d Cir. 2013) (acknowledging that "all procedural rules affect substantive rights to some extent" and concluding that the distinction between substantive and procedural rules might be "one of degree" (quoting *Elec. Privacy Info. Ctr.*, 653 F.3d at 5)).

[176] Pub. Citizen, Inc. v. Dep't of State, 276 F.3d 634, 640 (D.C. Cir. 2002).

[177] JEM Broad. Co. v. FCC, 22 F.3d 320, 327 (D.C. Cir. 1994); *accord, e.g.*, *In re* Chestek PLLC, 92 F.4th 1105, 1109–10 (Fed. Cir. 2024).

[178] *See* 5 U.S.C. § 804(3)(C).

[179] *See* U.S. Gov't Accountability Off., B-275178, Status of the Tongass National Forest Land and Resource Management Plan Under the Small Business Regulatory Enforcement Fairness Act 13 (2003).

[180] 142 Cong. Rec. 6907 (statement of Rep. McIntosh). Courts are sometimes skeptical of statements made by individual legislators. *E.g.* Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 599 (2004).

[181] *Id.* ("[T]his exception should be read narrowly and resolved in favor of nonagency parties who can demonstrate that the rule will have a nontrivial effect on their rights or obligations.").

[182] *E.g.*, Hon. Lisa Murkowski, B-238859, 2017 WL 4772605, at *6–7 (Comp. Gen. Oct. 23, 2017).

[183] Fed. Hwy. Admin., B-334032.2, 2023 WL 2809886, at *6 (Comp. Gen. Apr. 5, 2023).

[184] *Id.* at *7. *See also* U.S. Dep't of the Int., Bureau of Ocean Energy Mgt., B-335629, 2024 WL 3338928, at *7 (Comp. Gen. July 8, 2024) (saying "rules not focused on agency internal operations" do not qualify for the exception).

[185] *E.g.*, Hon. Jason Smith, B-329926, 2018 WL 4296553, at *3 (Comp. Gen. Sept. 10, 2018); Cong. Requesters, B-330843, 2019 WL 5448291, at *5 (Comp. Gen. Oct. 22, 2019).

[186] *E.g.*, Hon. Mark Meadows, B-329916, 2018 WL 2254709, at *3–4 (Comp. Gen. May 17, 2018); *see also* Cong. Requesters, B-330843, 2019 WL 5448291, at *10 (Comp. Gen. Oct. 22, 2019) (concluding that an agency statement did "not change the substantive criteria" for a federal program).

[187] Fed. Hwy. Admin., B-334032.2, 2023 WL 2809886, at *2–3, 5 (Comp. Gen. Apr. 5, 2023).

obligation" established elsewhere.[188] In contrast, where a statement "forwards a novel interpretation of the law" that does expand rights and obligations, GAO has said it does not qualify for this exception.[189]

Apart from the differences in statutory text, another reason the CRA's procedural exception might be viewed differently from the APA's procedural exception is the distinct context. As discussed above, the APA's notice-and-comment procedures apply only to substantive rules, defined as rules that are legally binding.[190] Accordingly, courts inquiring into whether a rule qualifies as "'procedural' or 'substantive'" under the APA are looking to whether a rule modifies rights in a way that implicates the need for public participation.[191] In contrast, the CRA can include both substantive and non-substantive rules—that is, rules that are not legally binding. This creates an interpretive question that does not exist under the APA: when does a rule without legal effect nonetheless have a substantial effect on "the rights or obligations of non-agency parties"?[192]

In a few opinions, GAO has said that even though an agency statement is nonbinding, it may nonetheless have a substantial effect on third-party rights or obligations where it "encourage[s]" a regulated community to change their "internal operations or policies."[193] One 2024 opinion concluded that an OMB alert recommending that agencies take certain actions to implement funding agreements did not qualify for the exception even though the alert was directed toward agencies rather than funding recipients or third parties.[194] GAO said that it had to consider the "indirect effects" of the alert, which was "intended to and has led agencies to incorporate new . . . requirements into the terms and conditions of federal funding agreements beyond what is required by law."[195] According to GAO, providing new criteria for federal funds had a "substantial effect on the rights or interests of third parties."[196]

# CRA Requirement for Submission of Rules

The CRA requires agencies to submit actions that fall within the CRA's definition of a rule to both houses of Congress and to GAO before the actions may take effect. Section 801(a)(1)(A) of the CRA requires the agency to submit a report containing a copy of the rule to each house of

---

[188] Hon. Mark Meadows, B-329916, 2018 WL 2254709, at *4 (Comp. Gen. May 17, 2018); *accord* Hon. Edward Markey, B-330190, 2018 WL 6632991, at *5 (Comp. Gen. Dec. 19, 2018); Dep't of Homeland Sec., B-334045, 2023 WL 4362791, at *6 (Comp. Gen. July 5, 2023).

[189] U.S. Dep't of Agric., Food and Nutrition Serv., B-334411, 2023 WL 3842839, at *5 (Comp. Gen. June 5, 2023). *See also, e.g.*, U.S. Dep't of Transp., B-335488, 2023 WL 6891971, at *6 (Comp. Gen. Oct. 18, 2023) (concluding a notice of funding opportunity did "more than echo" requirements set out in statute because it exercised the agency's "discretion and gap-filling authority" to elaborate on the statutory terms); *accord* U.S. Dep't of Com., B-335175, 2024 WL 2023285, at *3–4 (Comp. Gen. May 6, 2024). Thus, there is possible overlap between this inquiry and the requirement that a rule must "implement, interpret, or prescribe law or policy": GAO has said a statement that leaves the world as it found it and does not change policy does not qualify as a "rule" under the APA definition. U.S. Dep't of Health and Hum. Serv., Ctr for Disease Control and Prevention, B-335316, 2023 WL 8278750, at *4 (Comp. Gen. Nov. 29, 2023); *see supra* "Identifying "Rules" Under the APA."

[190] *See supra* "Identifying "Rules" Under the APA."

[191] Dep't of Labor v. Kast Metals Corp., 744 F.2d 1145, 1153 (5th Cir. 1984); *accord* Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 653 F.3d 1, 5–6 (D.C. Cir. 2011).

[192] 5 U.S.C. § 804(3)(C).

[193] Fed. Hwy. Admin., B-334032, 2022 WL 17744101, at *4 (Comp. Gen. Dec. 15, 2022) (coming to this conclusion and citing prior opinions).

[194] Off. of Mgt. and Budget, B-336512, 2024 WL 4005940, at *9 (Comp. Gen. Aug. 29, 2024).

[195] *Id.* at *9–10.

[196] *Id.* at *10.

Congress and the Comptroller General; a concise general statement relating to the rule, including whether it is a major rule; and the proposed effective date of the rule.[197] The agency is also required to submit additional information pertaining to any cost-benefit analysis the agency conducted, along with information on the agency's actions resulting from other regulatory impact analysis requirements, including the Regulatory Flexibility Act and the Unfunded Mandates Reform Act.[198] For major rules, after receiving this information, GAO is required to assess the agency's compliance with these additional informational requirements in a report to the congressional committees of jurisdiction. GAO must submit this major rule report to Congress within 15 calendar days of the submission of the rule or its publication in the *Federal Register*, whichever date is later.[199]

The "report" that agencies are required to submit along with the rule, in practice, is a two-page form on which they provide the information required under Section 801(a)(1)(A) and, for major rules, most of the information required to be included in GAO's major rule report. In FY1999 appropriations legislation, Congress required the Office of Management and Budget (OMB) to provide agencies with a standard form to use to meet this reporting requirement.[200] OMB issued the form in March 1999 as part of larger guidance to agencies on compliance with the CRA.[201] A copy of the form is provided in **Appendix A** of this report.[202]

When final rules are submitted to Congress, notice of each chamber's receipt and referral appears in the respective House and Senate sections of the daily *Congressional Record* devoted to "Executive Communications." Notice of each chamber's receipt is also entered into a database that can be searched using Congress.gov.[203] When the rule is submitted to GAO, a record of its receipt at GAO is noted in a database on GAO's website as well.[204]

The time periods for the fast-track procedures in the CRA begin once the rule is received in Congress and published in the *Federal Register*, if so published, and Members may then use the procedures to consider a joint resolution of disapproval. Thus, submission of rules to Congress under the CRA is central to its operation, because the receipt of the rule in Congress triggers the availability of the CRA's fast-track procedures for introduction and consideration of a joint resolution disapproving the rule.[205] In other words, under the terms of the statute, if an agency

---

[197] 5 U.S.C. § 801(a)(1)(A).

[198] Regulatory Flexibility Act, Pub. L. No. 96-354, 94 Stat. 1164 (1980); Unfunded Mandates Reform Act, Pub. L. No. 104-4, 109 Stat. 48 (1995).

[199] 5 U.S.C. § 801(a)(2)(A).

[200] Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, 112 Stat. 2681.

[201] Memorandum from Jacob J. Lew, Director, Off. of Mgmt. and Budget, to the Heads of Departments, Agencies, and Independent Establishments on Guidance for Implementing the Congressional Review Act, M-99-13, *9–10 (Mar. 30, 1999).

[202] OMB, SUBMISSION OF FEDERAL RULES UNDER THE CONGRESSIONAL REVIEW ACT, FORM 24722 (Mar. 23, 1999), https://www.whitehouse.gov/wp-content/uploads/legacy_drupal_files/omb/inforeg/inforeg/fed_rule.pdf.

[203] These databases can be searched on the homepage of Congress.gov under "Senate Communications" and "House Communications." *House Communications*, CONGRESS.GOV, https://www.congress.gov/search?q=%7B%22source%22%3A%22house-communications%22%7D (last visited Oct. 21, 2024); *Senate Communications*, CONGRESS.GOV, https://www.congress.gov/search?q=%7B%22source%22%3A%22senate-communications%22%7D (last visited Oct. 21, 2024).

[204] *Congressional Review Act: Database of Rules*, GAO, https://www.gao.gov/legal/congressional-review-act/search-database-of-rules (last visited Oct. 21, 2024).

[205] For an overview of these procedures, see CRS Report R43992, *The Congressional Review Act (CRA): Frequently Asked Questions*, by Maeve P. Carey and Christopher M. Davis (2021).

fails to submit a rule to Congress, the House and Senate are unable to avail themselves of the fast-track procedures to overturn the rule.

## Agency Compliance with Submission Requirement

Following enactment of the CRA in 1996, some Members of Congress and others raised concerns over agencies not submitting their rules on several occasions. At a hearing on the CRA in 1997, witnesses observed that agencies were not in full compliance with the submission requirement, although they also indicated that agencies appeared to be seeking "in good faith" to comply with the statute.[206] At a hearing in 1998 on implementation of the CRA, GAO's General Counsel testified that agencies were often not sending their rules to GAO or Congress.[207] Also in 1998, to further improve agency compliance with the CRA, Congress required OMB to issue guidance on certain provisions of the CRA, specifically including the submission requirement.[208]

Because agencies were initially inconsistent about submitting their rules, GAO began to monitor agencies' compliance with the submission requirement by comparing the final rules that were published in the *Federal Register* with rules that were submitted to GAO.[209] This was not a role that was required under the CRA; rather, GAO conducted these reviews voluntarily. As GAO's General Counsel testified in 1998, GAO

> conducted a review to determine whether all final rules covered by the Congressional Review Act and published in the *Register* were filed with the Congress and the GAO. We performed this review both to verify the accuracy of our own data base and to ascertain the degree of agency compliance with the statute. We were concerned that regulated entities may have been led to believe that rules published in the *Federal Register* were effective, when, in fact, they were not unless filed in accordance with the statute.[210]

After its review of agency compliance with the submission requirement, in November 1997, GAO submitted to OMB's Office of Information and Regulatory Affairs (OIRA) a list of the rules that had been published in the *Federal Register* but had not been submitted to GAO.[211] According to GAO, OIRA distributed this list to affected agencies; GAO then followed up again with the

---

[206] *Congressional Review Act*: *Hearing Before the H. Comm. on the Judiciary, Subcomm. on Commercial and Admin. Law*, 105th Cong. 134, 49 (1997) (statement of Peter Strauss, Columbia Law School Professor, observing that many agency actions that fall outside the scope of what agencies publish in the *Federal Register* as part of regular notice-and-comment rulemaking proceedings were not being submitted).

[207] *OIRA Implementation of the Congressional Review Act: Hearing Before the H. Comm. on Gov't Reform and Oversight, Subcomm. on Nat'l Econ. Growth, Nat. Res. and Regul. Aff.*, 105th Cong. (1998).

[208] Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, 112 Stat. 2681. To comply with this requirement, then-OMB Director Jacob J. Lew issued a memorandum for agencies in March 1999. Memorandum from Jacob J. Lew, Director, Off. of Mgmt. and Budget, to the Heads of Departments, Agencies, and Independent Establishments on Guidance for Implementing the Congressional Review Act, M-99-13 (Mar. 30, 1999). The Lew memorandum provided information such as where agencies should send their rules in the House and Senate, what information the agencies should include with the rule, and an explanation of what types of rules are required to be submitted.

[209] For a history of the correspondence between GAO and OIRA regarding agency compliance with the CRA, see CRS Report R40997, *Congressional Review Act: Rules Not Submitted to GAO and Congress*, by Curtis W. Copeland (2009) (on file with author).

[210] *See OIRA Implementation of the Congressional Review Act: Hearing Before the H. Comm. on Gov't Reform and Oversight, Subcomm. on Nat'l Econ. Growth, Nat. Res. and Regul. Aff.*, 105th Cong. 52 (1998).

[211] CRS Report R40997, *Congressional Review Act: Rules Not Submitted to GAO and Congress*, by Curtis W. Copeland (2009) (on file with author). OIRA has several responsibilities in the rulemaking process, including determining whether rules are "major" under the CRA and reviewing most "significant" rules in accordance with Executive Order 12866. For more information about OIRA review, see CRS Report RL32397, *Federal Rulemaking: The Role of the Office of Information and Regulatory Affairs*, coordinated by Maeve P. Carey (2011).

agencies that had rules that remained unsubmitted in February 1998.[212] GAO stated in its March 1998 testimony that "[i]n our view, OIRA should have played a more proactive role in assuring that the agencies were both aware of the statutory filing requirements and were complying with them."[213]

GAO continued to conduct similar reviews regularly, comparing the list of rules that agencies submitted to GAO against rules that were published in the *Federal Register*. Until 2012, GAO periodically sent letters to OIRA regarding rules that it had not received. In March 2012, GAO notified OIRA that, due to resource constraints, it would no longer be sending lists of final rules not received. Instead, GAO decided to continue to track only major rules not received.[214]

## Submission of Notice-and-Comment Rules Versus Other Types of Documents

In general, although there have been exceptions noted by GAO, agencies appear to be fairly comprehensive in submitting rules to Congress and GAO when those rules have been promulgated through the APA's notice-and-comment rulemaking process. GAO's federal rules database lists thousands of such rules each year.[215] In the case of rules that are not subject to notice-and-comment procedures, however, tracking compliance is more difficult, and practice would suggest that agencies do not submit these types of actions as consistently.[216]

The higher incidence of noncompliance with the CRA's submission requirement for agency actions that were conducted outside the notice-and-comment rulemaking process may be due in part to the practical difficulty of submitting the substantial number of agency statements that qualify as rules under the CRA. GAO has determined that the CRA's submission requirement can extend to such actions as website announcements[217] and policy memoranda.[218] In congressional testimony in 1997, one administrative law scholar argued that agencies "annually take tens of thousands of actions" that would fall under the CRA's definition of rule, and that

> [w]ere agencies to comply fully with [the CRA's] requirement that all these matters be filed with Congress as a condition of their effectiveness (as it appears, thus far, they are not doing), Congress and the GAO would be swamped with filings. Burying Congress in paper might even seem a useful means of diverting attention from larger, controversial matters; haystacks can be useful for concealing needles. No one believes many, if any, of these rules will be the subjects of resolutions of disapproval. Yet for them even simple

---

[212] CRS Report R40997, *Congressional Review Act: Rules Not Submitted to GAO and Congress*, by Curtis W. Copeland (2009) (on file with author).

[213] *OIRA Implementation of the Congressional Review Act: Hearing Before the H. Comm. on Gov't Reform and Oversight, Subcomm. on Nat'l Econ. Growth, Nat. Res. and Regul. Aff.*, 105th Cong. 53 (1998).

[214] Curtis W. Copeland, Congressional Review Act: Many Recent Final Rules Were Not Submitted to GAO and Congress (2014), https://legacy-assets.eenews.net/open_files/assets/2017/02/22/document_pm_01.pdf.

[215] *See Congressional Review Act: Database of Rules*, GAO, https://www.gao.gov/legal/congressional-review-act/search-database-of-rules (last visited Oct. 21, 2024).

[216] *See, e.g.*, *Shining Light on Regulatory Dark Matter: Hearing Before the H. Comm. on Oversight and Gov't Reform*, 115th Cong. 10 (2018); *see also* Press Release, Committee On Oversight and Accountability, Committee Report Scrutinizes Federal Regulatory Guidance Practices (Mar. 15, 2018), https://oversight.house.gov/report/committee-report-scrutinizes-federal-regulatory-guidance-practices/ (identifying a small number of agency guidance documents that agencies submitted to Congress under the CRA during the 10-year period the committee studied in its report).

[217] U.S. Dep't of Educ., B-335516, 2024 WL 319735, at *4 (Comp. Gen. Jan. 24, 2024).

[218] *E.g.*, U.S. Dep't of Agric., Food and Nutrition Serv., B-334411, 2023 WL 3842839, at *1 (Comp. Gen. June 5, 2023).

accompanying documents to permit data analysis and tracking, such as GAO has been proposing, would impose significant aggregate costs, well beyond their possible benefit.[219]

Although GAO has voluntarily tracked agency compliance with the submission requirement, its methodology for doing so would not have resulted in a complete list of agency actions that should have been submitted.[220] GAO's point of reference was to compare regulations that were published in the *Federal Register* against regulations it received pursuant to the CRA. Most rules that are required to be published in the *Federal Register* are indeed subject to the CRA, making this a potentially helpful method of identifying rules that were not submitted. However, many other agency actions that are not subject to notice-and-comment requirements are not generally published in the *Federal Register* and are also not submitted to GAO. As discussed, the CRA can encompass rules that are not subject to notice-and-comment requirements.[221] Therefore, using this method, many rules that should have been submitted likely were undetected by GAO and thus not included in the lists of unsubmitted rules it sent to OIRA and to the agencies.

## GAO's Role in Determining Whether an Agency Action Is Covered by the CRA

Given the lack of comprehensive agency compliance with the CRA's reporting requirement, Congress has developed a practice that has involved seeking an opinion from GAO on whether a specific agency action should have been submitted under the CRA (i.e., whether the action is covered by the CRA's definition of "rule"). To date, GAO has issued several dozen such opinions in response to Member requests.[222] These opinions are listed in a table in **Appendix B** to this report, and the substance of some of the opinions is discussed above in defining a CRA "rule."

In recent years, the Senate has treated publication in the *Congressional Record* of a GAO opinion classifying an agency action as a rule as the trigger date for the initiation period to introduce a joint resolution of disapproval and for the action period during which such a joint resolution qualifies for fast-track consideration in the Senate.[223] Thus, the question of whether Congress may use the CRA's fast-track parliamentary disapproval mechanism generally hinges upon the determination reached in GAO's opinion in such cases. By allowing the GAO opinion to serve as a substitute for the actual submission of a rule, the Senate can still avail itself of the CRA's fast-track procedures to overturn rules.

### Origin and Basis of GAO's Role

In responding to requests from Members for opinions on whether certain agency actions are covered, GAO has played a significant role in determining the applicability of the CRA. The

---

[219] *House Congressional Review Act: Hearing Before the H. Comm. on the Judiciary, Subcomm. on Commercial and Admin. Law*, 105th Cong. 138 (1997) (statement of Peter Strauss, Columbia Law School Professor). Peter Strauss argued that Congress should consider narrowing the scope of the CRA: "Congress . . . should assure that its limited resources are addressed to the most important occasions for review, by adopting a mechanism for limiting the application of the Act."

[220] *See* CRS Report R40997, *Congressional Review Act: Rules Not Submitted to GAO and Congress*, by Curtis W. Copeland (2009) (on file with author) (describing GAO letters and methodology).

[221] *Supra* "Types of Agency Actions Covered by the CRA."

[222] The letters from Members to GAO are not made public by GAO, but sometimes are released publicly by the requesting Member. Examples of these letters that have been shared publicly can be obtained upon request from CRS. Copies of the GAO opinions are available on GAO's website. *See Legal Decisions*, GAO, https://www.gao.gov/legal/congressional-review-act/legal-decisions (last visited Oct. 21, 2024).

[223] *See, e.g.*, 163 CONG. REC. 16445 (2017); 163 CONG. REC. 18507 (2017).

history of the early implementation of the CRA, and GAO's other activities under the CRA, suggest that the role GAO plays with regard to determining whether a specific agency action is a "rule" is linked to other activities GAO has engaged in regarding the CRA. GAO's primary statutory requirement under the CRA is to provide a report to the committees of jurisdiction on each major rule and to include in the report information about the agency's compliance with various steps of the rulemaking process for each major rule.[224] GAO itself has stated that "[i]n conjunction with this statutory responsibility, GAO also issues opinions on CRA related questions when requested by Members of the Congress. These opinions address issues such as whether an agency document that was not issued as a rulemaking meets the CRA definition of a rule."[225]

For non-major rules, soon after the CRA was enacted, GAO voluntarily created an online database of rules submitted to it under the CRA.[226] As GAO's General Counsel explained in congressional testimony in 1998:

> Although the law is silent as to GAO's role relating to the nonmajor rules, we believe that basic information about the rules should be collected in a manner that can be of use to Congress and the public. To do this, we have established a database that gathers basic information about the 15-20 rules we receive on the average each day.[227]

The database can be used to search for rules by elements such as the title, issuing agency, regulation identifier number, type of rule (major or non-major), effective date, and date received by GAO. The website also contains links to each of GAO's major rule reports.

GAO's determination of whether agency actions are considered "rules" under the CRA appears to be closely linked to its monitoring of agency compliance with the submission requirement as discussed above. The question of whether an agency action meets the definition of "rule" under the CRA is also a question of whether it should be submitted; arguably, then, GAO is addressing a very similar question in its opinions on whether certain agency actions are covered as it was in its initial reports to OIRA on agency compliance with the submission requirement.

A discussion of GAO's role in a congressional hearing on the Tongass Land Management Plan in 1997 provides some indication of the voluntary and, initially, ad hoc nature of GAO's role in this regard.[228] One of the issues that was addressed at the hearing was whether the plan should be considered a rule under the CRA; GAO's General Counsel was invited to testify at the hearing. Six days before the hearing, GAO issued its second opinion on the applicability of the CRA, in which it stated that the Tongass Land Management Plan should have been submitted as a rule under the CRA.[229] Former Senator Larry Craig, who had requested the opinion, asked GAO's General Counsel at the hearing about GAO's role:

> It is our understanding of your testimony and our own reading of the Regulatory Flexibility Act that the [GAO] has been given the role of advising Congress and perhaps agencies on whether their policy decisions constitute rules. It is our understanding that the GAO's

---

[224] 5 U.S.C. § 801(a)(2)(A).

[225] U.S. Gov't Accountability Off., GAO-24-107329, GAO's Protocols for Legal Decisions and Opinions 8 (2024).

[226] *See Congressional Review Act: Database of Rules*, GAO, https://www.gao.gov/legal/congressional-review-act/search-database-of-rules (last visited Oct. 21, 2024).

[227] *OIRA Implementation of the Congressional Review Act: Hearing Before the H. Comm. on Gov't Reform and Oversight, Subcomm. on Nat'l Econ. Growth, Nat. Res. and Regul. Aff.*, 105th Cong. 58–59 (1998).

[228] *Tongass Land Management: Joint Hearings Before the S. Comm. on Energy and Nat. Res. and H. Comm. on Res.*, 105th Cong. (1997).

[229] U.S. Gov't Accountability Off., B-275178, Status of the Tongass National Forest Land and Resource Management Plan Under the Small Business Regulatory Enforcement Fairness Act 13 (2003).

independent opinion is generally given considerable weight by the agencies. Is this also the GAO's understanding of its role?[230]

In response, GAO's General Counsel stated that the CRA

> does not provide any identification of who is to decide what a rule is, unlike the issue of whether a rule is a major rule or not, which, as [OIRA Administrator] Ms. Katzen pointed out, has been assigned to her. So in that sense, I cannot say that GAO has a special role under the statute for making that determination. The decision, the opinion, that we issued last week on the question [of whether the Tongass Land Management Plan was a rule under the CRA] was done in our role as adviser to the Congress in response to the request of three chairmen of congressional committees.[231]

Thus, GAO acknowledged that its opinion was provided not pursuant to any specific provision of the statute, but in its more general, advisory capacity.

## Congressional Response to GAO Opinions Since 1996

Congress's response to GAO's opinions has evolved over time. Initially, GAO opinions finding that agency actions were rules under the CRA did not lead to the introduction of joint resolutions of disapproval—Members appear not to have introduced any joint resolutions of disapproval following the five affirmative GAO opinions issued prior to 2008. In 2008, GAO issued an opinion stating that a letter from the Centers for Medicare and Medicaid Services to state health officials concerning the State Children's Health Insurance Program was a rule for the purposes of the CRA; in response, Senator John D. Rockefeller introduced S.J. Res. 44 to disapprove the guidance provided in the letter.[232] The Senate did not take further action on S.J. Res. 44.[233]

The first time either chamber took action on a resolution of disapproval introduced following a GAO opinion was in 2012, when the House passed H.J. Res. 118, a resolution of disapproval that would have overturned an information memorandum issued by the Department of Health and Human Services relating to the implementation of the Temporary Assistance for Needy Families program.[234] The first time the Senate took action on such a resolution of disapproval was on April 18, 2018, when it passed S.J. Res. 57, overturning guidance from the Bureau of Consumer

---

[230] *Tongass Land Management: Joint Hearings Before the S. Comm. on Energy and Nat. Res. and H. Comm. on Res.,* 105th Cong. 20 (1997).

[231] *Id.*

[232] Comptroller General, B-316048, 2008 WL 1795346 (Comp. Gen. Apr. 17, 2008); S.J. Res. 44, 110th Cong. (as introduced, July 17, 2008).

[233] S.J. Res. 44, 110th Cong. (as introduced, July 17, 2008). According to a press release from the Committee on Finance two months later, the committee did not take further action on the resolution of disapproval because it had missed the window during which the action would have been required to be taken under the CRA to use its fast-track procedures. Press Release, United States Senate Committee on Finance, Senators Vow to Keep Fighting for Children's Health Care (July 22, 2008), https://www.finance.senate.gov/chairmans-news/senators-vow-to-keep-fighting-for-childrens-health-care.

In 2008, after Sen. Rockefeller introduced the resolution disapproving of the letter from the Centers for Medicare and Medicaid Services, there was some dispute regarding when the CRA deadlines began. *Id.* The Senators supporting the resolution argued that the CRA deadlines began either when the resolution was introduced or when CMS affirmatively refused to submit the rule to Congress; however, it was ultimately decided that the clock started ticking on the day that GAO published its opinion determining that the agency letter was a rule. *Id.*

[234] H.J. Res. 118, 112th Cong. (as passed by House, Sept. 20, 2012). Memorandum from Earl S. Johnson, Director Office of Family Assistance, to the States administering the Temporary Assistance for Needy Families (TANF) Program and other interested parties on TANF-ACF-IM-2012-03 (Guidance Concerning Waiver and Expenditure Authority Under Section 1115) (May 20, 2019), https://www.acf.hhs.gov/ofa/policy-guidance/tanf-acf-im-2012-03-guidance-concerning-waiver-and-expenditure-authority-under.

Financial Protection pertaining to indirect auto lending and the Equal Credit Opportunity Act.[235] The House passed S.J. Res. 57 on May 8, 2018, and the President signed it into law on May 21, 2018.[236]

The frequency of Member requests for GAO opinions has increased over time. In the first decade after the CRA's enactment in 1996, GAO issued eight opinions total.[237] In more recent years, GAO has issued opinions much more frequently—in 2023, GAO issued 14 opinions; to date in 2024, it has issued 13.[238]

## Consequences of GAO Opinions

Standing alone, a GAO opinion deciding whether an agency action is a "rule" covered by the CRA does not have binding legal effect.[239] As discussed, GAO's role in determining whether actions are subject to the CRA is not provided for in the CRA,[240] and its opinions are thus likely to be considered advisory.[241] The opinions do not have any immediate effect other than advising Congress as to whether GAO considers an agency action to meet the definition of "rule" under the CRA.

As a matter of course, however, the Senate appears to have chosen to follow the GAO opinions.[242] GAO described the practice as follows in one of its opinions relating to the applicability of the CRA: "Congress has opted to treat the receipt of a GAO opinion concluding that an agency action is a rule as triggering the statutory provisions that otherwise would have been triggered by the agency's submission. Thus, Congress has used GAO opinions to cure the impediment created by the agency's failure to submit the rule, protecting its review and oversight authorities."[243]

A provision in the CRA barring judicial review makes it unlikely that a GAO opinion or any other congressional determination stating that a rule is subject to the CRA would be subject to challenge in court.[244] The provision states that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review."[245] Most courts to consider the issue have refused to review claims that an agency action should have been submitted to Congress as a rule

---

[235] S.J. Res. 57, 115th Cong. (2018) (enacted); CONSUMER FINANCIAL PROTECTION BUREAU, INDIRECT AUTO LENDING AND COMPLIANCE WITH THE EQUAL CREDIT OPPORTUNITY ACT, (March 21, 2013), https://files.consumerfinance.gov/f/201303_cfpb_march_-Auto-Finance-Bulletin.pdf; Equal Credit Opportunity Act, Pub. L. No. 93-495, 88 Stat. 1500 (1974).

[236] *See* Indirect Auto Lending and Compliance with the Equal Credit Opportunity Act, Pub. L. No. 115-172, 132 Stat. 1290 (2018).

[237] *See infra* **Appendix B**.

[238] *Id.*

[239] *Cf., e.g.*, Konecranes Nuclear Equip. & Servs., LLC v. United States, 165 Fed. Cl. 421, 431 n.6 (Fed. Cl. 2023) ("GAO opinions, although not binding on this Court, can be persuasive."). Critically, the Comptroller General, a legislative agent, is prohibited by the Constitution from executing the laws; the Supreme Court has accordingly struck down statutory provisions that gave the Comptroller General "ultimate authority" to determine which budget cuts to make. Bowsher v. Synar, 478 U.S. 714, 732–33 (1986).

[240] *See* 5 U.S.C. §§ 801–808.

[241] *Cf., e.g.*, United States *ex rel.* Weinberger v. Equifax, Inc., 557 F.2d 456, 463 n.6 (5th Cir. 1977).

[242] Several Senators have stated that the publication of the GAO opinion in the *Congressional Record* would have the effect of commencing the CRA's time periods. *See* 163 CONG. REC. 16445 (2017); 163 CONG. REC. 18507 (2017).

[243] Hon. Orrin Hatch, B-330376, 2018 WL 6266285, at *2 (Comp. Gen. Nov. 30, 2018).

[244] 5 U.S.C. § 805.

[245] *Id.* This provision is discussed in more detail in CRS Report R43992, *The Congressional Review Act (CRA): Frequently Asked Questions*, by Maeve P. Carey and Christopher M. Davis (2021).

under the CRA.[246] As a result, the question of whether an agency action is subject to the CRA and its fast-track procedures will likely be settled in the political arena rather than in the courts, and, if Congress continues to treat GAO opinions as determinative, those opinions likely will be the final word on the issue.[247]

---

[246] *See, e.g.*, Montanans for Multiple Use v. Barbouletos, 568 F.3d 225, 229 (D.C. Cir. 2009); *see also supra* note 51.

[247] Even if the CRA did not contain a provision barring judicial review, or if that provision were found not to apply to a certain dispute, courts may be reluctant to intervene in a dispute regarding the application of the CRA to the extent that it would require a court to second-guess congressional procedures. *See, e.g.*, Leach v. Resolution Trust Corp., 860 F. Supp. 868, 875 (D.D.C. 1994) (declining to resolve dispute over the meaning of a statutory term because it would require court to meddle in Congress's internal affairs). *See also* NLRB v. Noel Canning, 573 U.S. 513, 550–54 (2014) (acknowledging "the Constitution's broad delegation of authority to the Senate to determine how and when to conduct its business").

# Appendix A. P.L. 104-19 Submission Form for Rules Under the CRA

```
24722
```

## Submission of Federal Rules
## Under the Congressional Review Act

☐ **President of the Senate**     ☐ **Speaker of the House of Representatives**     ☐ **GAO**

Please fill the circles electronically or with black pen or #2 pencil.

1. Name of Department or Agency

2. Subdivision or Office

3. Rule Title

4. Regulation Identifier Number (RIN) or Other Unique Identifier (if applicable)

5.      Major Rule      Non-major Rule

6.      Final Rule      Other

7. With respect to this rule, did your agency solict public comments?      Yes  ○    No      N/A

8. Priority of Regulation (fill in one)

    Economically Significant; or      Routine and Frequent or
    Significant; or                   Informational/Administrative/Other
    Substantive, Nonsignificant       (Do not complete the other side of this form
                                      if filled in above.)

9. Effective Date (if applicable)

10. Concise Summary of Rule (fill in one or both)      attached    stated in rule

Submitted by: _____ (signature)

Name: _____

Title: _____

For Congressional Use Only:

Date Received: _____

Committee of Jurisdiction: _____

3/23/99



**Source:** Form available on the White House website at https://www.whitehouse.gov/omb/information-regulatory-affairs/regulatory-matters/.

# Appendix B. Summary of GAO Opinions

**Table B-1. GAO Opinions on Whether Certain Agency "Rules" Are Covered by the Congressional Review Act**

As of October 21, 2024

| Agency Action | GAO Opinion Citation | Date of Opinion | GAO Determination |
|---|---|---|---|
| Department of Agriculture memorandum concerning the Emergency Salvage Timber Sale Program | B-274505 | September 16, 1996 | Agency action is a rule. |
| U.S. Forest Service Tongass National Forest Land and Resource Management Plan | B-275178 | July 3, 1997 | Agency action is a rule. |
| American Heritage River Initiative, created by Executive Order 13,061 | B-278224 | November 10, 1997 | Action is not a rule because the President is not an agency under the CRA. |
| EPA "Interim Guidance for Investigating Title VI Administrative Complaints Challenging Permits" | B-281575 | January 20, 1999 | Agency action is a rule. |
| Farm Credit Administration national charter initiative | B-286338 | October 17, 2000 | Agency action is a rule. |
| Department of the Interior Record of Decision "Trinity River Mainstem Fishery Restoration" | B-287557 | May 14, 2001 | Agency action is a rule. |
| Department of Veterans Affairs (VA) memorandum regarding the VA's marketing activities to enroll new veterans in the VA health care system | B-291906 | February 28, 2003 | Agency action is not a rule because it falls under the exception in 5 U.S.C. § 804(3)(C) (a rule of "agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties"). |
| VA memorandum terminating Vendee Loan Program | B-292045 | May 19, 2003 | Agency action is not a rule because it falls under the exception in 5 U.S.C. § 804(3)(B) (a rule "relating to agency management or personnel") or (C) (a rule of "agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties"). |
| Centers for Medicare and Medicaid Services Letter on the State Children's Health Insurance Program | B-316048 | April 17, 2008 | Agency action is a rule. |
| Department of Health and Human Services Information Memorandum concerning the Temporary Assistance to Needy Families Program | B-323772 | September 4, 2012 | Agency action is a rule. |

| Agency Action | GAO Opinion Citation | Date of Opinion | GAO Determination |
|---|---|---|---|
| EPA proposed rule on Standards of Performance for Greenhouse Gas Emissions from New Stationary Sources: Electric Utility Generating Units | B-325553 | May 29, 2014 | Agency action is not a rule because it is a proposed rule. |
| Office of the Comptroller of the Currency, Federal Reserve Board, and Federal Deposit Insurance Corporation Interagency Guidance on Leveraged Lending | B-329272 | October 19, 2017 | Agency action is a rule. |
| U.S. Forest Service 2016 Amendment to the Tongass Land and Resource Management Plan | B-238859 | October 23, 2017 | Agency action is a rule. |
| Bureau of Land Management Eastern Interior Resource Management Plan | B-329065 | November 15, 2017 | Agency action is a rule. |
| Consumer Financial Protection Bureau bulletin on Indirect Auto Lending and Compliance with the Equal Credit Opportunity Act | B-329129 | December 5, 2017 | Agency action is a rule. |
| U.S. Agency for International Development fact sheet on global health assistance and revisions to standard provisions for U.S. nongovernmental organizations | B-329206 | May 1, 2018 | Agency actions are not rules because "federal courts have held that agencies' implementation of presidential policy-making does not constitute a rule." |
| IRS statement on health care reporting requirements | B-329916 | May 17, 2018 | Agency action is not a rule because it falls under the exception in 5 U.S.C. § 804(3)(C) (a rule of "agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties"). |
| Social Security Administration Hearings, Appeals, and Litigation Law Manual ("HALLEX") sections | B-329926 | September 10, 2018 | Agency action is not a rule because it falls under the exception in 5 U.S.C. § 804(3)(C) (a rule of "agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties"). |
| IRS Revenue Procedure 2018-38 | B-330376 | November 30, 2018 | Agency action is eligible for review "because IRS submitted the revenue procedure as a rule" and "IRS's submission triggered Congress's review and oversight powers under CRA." The opinion took no position on whether the document was a "rule." |

| Agency Action | GAO Opinion Citation | Date of Opinion | GAO Determination |
|---|---|---|---|
| Department of Justice memorandum to federal prosecutors along the southwest border of the United States | B-330190 | December 19, 2018 | Agency action is not a rule because it falls under the exception in 5 U.S.C. § 804(3)(C) (a rule of "agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties"). |
| Department of Commerce memorandum regarding a citizenship question on the 2020 Census | B-330288 | February 7, 2019 | Agency action is not a rule because it does not meet the APA definition of a "rule." |
| Department of Health and Human Services and Department of the Treasury guidance entitled "State Relief and Empowerment Waivers" | B-330811 | July 15, 2019 | Agency action is a rule. |
| Board of Governors of the Federal Reserve System Supervision and Regulation (SR) Letters (SR 12-17, SR 14-8, SR 15-7) | B-330843 | October 22, 2019 | SR 12-17 and SR 14-8 are rules; SR 15-7 is not a rule because it falls under the exception in 5 U.S.C. § 804(3)(C) (a rule of "agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties"). |
| Board of Governors of the Federal Reserve System SR Letter 11-7 | B-331324 | October 22, 2019 | Agency action is a rule. |
| Board of Governors of the Federal Reserve System SR Letter 15-18 | B-331560 | April 16, 2020 | Agency action is a rule. |
| Federal Communications Commission order entitled LightSquared Technical Working Group Report, et al. (*Ligado Order*) | B-332233 | August 13, 2020 | Agency action is not a rule because it meets the APA definition of an "order" or falls under the exception in 5 U.S.C. § 804(3)(A) (a rule of particular applicability). |
| IRS Notice 2020-65 | B-332517 | September 15, 2020 | Agency action is eligible for disapproval because the agency submitted it under the CRA. The opinion took no position on whether the document was a "rule." |
| Department of Housing and Urban Development Fair Housing Act guidance on assistance animals | B-331171 | December 17, 2020 | Agency action is a rule. |
| Centers for Disease Control and Prevention document entitled "Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs" | B-333501 | December 14, 2021 | Agency action is a rule. |
| Safer Federal Workforce Task Force guidance entitled "COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors" | B-333725 | March 17, 2022 | Agency action is not a rule because neither the task force nor the OMB, in this instance, meet the CRA's definition of "agency." |
| Department of Agriculture 2021 Updates to the Thrifty Food Plan | B-333732 | July 28, 2022 | Agency action is a rule. |

| Agency Action | GAO Opinion Citation | Date of Opinion | GAO Determination |
|---|---|---|---|
| Federal Highway Administration memorandum entitled "Information: Policy on Using Bipartisan Infrastructure Law Resources to Build a Better America" | B-334032 | December 15, 2022 | Agency action is a rule. (GAO was asked by a Senator to reconsider this opinion; their response confirmed their original conclusion. See B-334032.2) |
| District of Columbia Court Services and Offender Supervision Agency notice entitled "Privacy Act of 1974; System of Records" | B-334005 | January 18, 2023 | Agency action is not a rule because it does not meet the APA definition of a "rule." |
| Office of Personnel Management memorandum entitled "Achieving a $15 Per Hour Minimum Pay Rate for Federal Employees" | B-334221 | February 9, 2023 | Agency action is not a rule because it falls under the exception in 5 U.S.C. § 804(3)(B) (a rule "relating to agency management or personnel"). |
| EPA document announcing denial of petitions for small refinery exemptions under the Renewable Fuel Standard Program | B-334400 | February 9, 2023 | Agency action is not a rule because it meets the APA definition of an "order" or falls under the exception in 5 U.S.C. § 804(3)(A) (a rule of particular applicability). |
| Department of Education website announcement entitled "One-Time Federal Student Loan Debt Relief" and *Federal Register* document relating to student loans | B-334644 | March 17, 2023 | Agency actions are a rule. |
| Office of Personnel Management guidance on COVID-19 vaccination requirement for federal employees | B-334237 | April 6, 2023 | Agency action is not a rule because it falls under the exception in 5 U.S.C. § 804(3)(B) (a rule "relating to agency management or personnel"). |
| Department of Agriculture actions implementing four financial assistance programs established with funds from the Commodity Credit Corporation | B-334146 | June 5, 2023 | Agency actions are rules. |
| Food and Nutrition Service memorandum entitled "Application of *Bostock v. Clayton County* to Program Discrimination Complaint Processing—Policy Update" | B-334411 | June 5, 2023 | Agency action is a rule. |
| Department of Homeland Security memoranda terminating the Migrant Protection Protocols | B-334045 | July 5, 2023 | Agency actions are not a rule because they fall under the exception in 5 U.S.C. § 804(3)(C). |
| Food and Drug Administration revision of risk evaluation and mitigation strategy for mifepristone | B-334995 | July 6, 2023 | Agency action is not a rule because it meets the APA definition of an "order" or falls under the exception in 5 U.S.C. § 804(3)(A) (a rule of particular applicability). |
| Department of Defense memoranda implementing changes to policies regarding servicemembers' reproductive health care | B-335115 | September 26, 2023 | Agency actions are not a rule because they fall under the exception in 5 U.S.C. § 804(3)(B) (a rule "relating to agency management or personnel"). |

| Agency Action | GAO Opinion Citation | Date of Opinion | GAO Determination |
|---|---|---|---|
| Department of Transportation notice of funding opportunity for the FY2023-2024 Multimodal Project Discretionary Grant Opportunity (MPDG) | B-335488 | October 18, 2023 | Agency action is a rule. |
| Securities and Exchange Commission staff accounting bulletin (SAB No. 121) | B-334540 | October 31, 2023 | Agency action is a rule. |
| Centers for Disease Control and Prevention document titled "Advisory Committee on Immunization Practices Recommended Immunization Schedule for Children and Adolescents Aged 18 Years or Younger—United States, 2023" | B-335316 | November 29, 2023 | Agency action is not a rule because it does not meet the APA definition of a "rule" or falls under the exception in 5 U.S.C. § 804(3)(C) (a rule of "agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties"). |
| EPA notice of decision entitled "California State Motor Vehicle Pollution Control Standards; Advanced Clean Car Program; Reconsideration of a Previous Withdrawal of a Waiver of Preemption; Notice of Decision" | B-334309 | November 30, 2023 | Agency action is not a rule because it meets the APA definition of an "order" or falls under the exception in 5 U.S.C. § 804(3)(A) (a rule of particular applicability). |
| Department of Education (Education) website announcement of an "On Ramp" toward repayment for student loan borrowers | B-335516 | January 24, 2024 | Agency action is not a rule because it falls under the exception in 5 U.S.C. § 804(3)(C) (a rule of "agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties"). |
| Department of the Interior announcement canceling oil leases in the Arctic National Wildlife Refuge | B-335781 | February 27, 2024 | Agency action is not a rule because it meets the APA definition of an "order" or falls under the exception in 5 U.S.C. § 804(3)(A) (a rule of particular applicability). |
| Federal Housing Finance Agency (FHFA) announcements related to fees charged by Fannie Mae and Freddie Mac | B-335424 | March 7, 2024 | Agency actions are not a rule because Fannie Mae and Freddie Mac do not meet the CRA's definition of "agency," and neither does FHFA in this instance. |
| OMB and Department of Labor memorandum titled "Strengthening Support for Federal Contract Labor Practices" | B-335142 | May 1, 2024 | Agency action is not a rule because it falls under the exception in 5 U.S.C. § 804(3)(B) (a rule "relating to agency management or personnel"). |
| U.S. Sentencing Commission amendments to sentencing guidelines | B-335515 | May 1, 2024 | Agency action is not covered because the Sentencing Commission does not meet the CRA's definition of "agency." |
| Department of Commerce notice of funding opportunity for CHIPS Incentive Program | B-335175 | May 6, 2024 | Agency action is a rule. |
| Federal Energy Regulatory Commission order entitled "Order Modifying and Approving Surrender of License and Removal of Project Facilities" | B-335030 | May 8, 2024 | Agency action is not a rule because it meets the APA definition of an "order." |

| Agency Action | GAO Opinion Citation | Date of Opinion | GAO Determination |
|---|---|---|---|
| Office of the U.S. Trade Representative agreement with Japan on strengthening critical minerals supply chains | B-335714 | May 23, 2024 | Agency action is not a rule because it does not fall within the APA definition of a "rule." |
| National Institute of Standards and Technology notice entitled "Request for Information Regarding the Draft Interagency Framework for Considering the Exercise of March-In Rights" | B-336146 | May 28, 2024 | Agency action is not a rule because it is not a final agency action. |
| Bureau of Ocean Energy Management notice entitled "Notice to Lessees and Operators of Federal Oil and Gas, and Sulphur Leases in the Gulf of Mexico Outer Continental Shelf" | B-335629 | July 8, 2024 | Agency action is a rule. |
| Board of Governors of the Federal Reserve System SR Letter 23-8 | B-336217 | August 6, 2024 | Agency action is not a rule because it falls under the exception in 5 U.S.C. § 804(3)(C) (a rule of "agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties"). |
| OMB Controller Alert *CA-23-6, Enhancing Transparency Through Use of the Investing in America Emblem on Signs* (UPDATED) | B-336512 | August 29, 2024 | Agency action is a rule. |
| FHFA bi-merge requirement and determination regarding credit score models | B-336260 | October 1, 2024 | Agency actions are not rules because FHFA did not meet the CRA's definition of "agency" in taking the first action and because the second action meets the APA definition of an "order." |

**Source:** Congressional Research Service. Opinions are listed on the GAO website at https://www.gao.gov/legal/congressional-review-act/legal-decisions.

**Note:** This table lists agency actions for which Members of Congress requested GAO's opinion as to the applicability of the CRA.

# Author Information

Valerie C. Brannon
Legislative Attorney

Maeve P. Carey
Specialist in Government Organization and Management

## Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.