**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

STATE OF CALIFORNIA,

        *Plaintiff*,

       v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, and LEE ZELDIN,
in his official capacity as Administrator of the
United States Environmental Protection
Agency,

        *Defendants*.

Case No. 1:26-cv-02185-BAH

---

**EPA'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND IN SUPPORT OF EPA'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES .........................................................................................ii

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................2

    I.       STATUTORY BACKGROUND ...................................................................... 2

          A.      The Congressional Review Act ...................................................................2

          B.      The Clean Air Act..........................................................................................4

    II.      FACTUAL BACKGROUND............................................................................ 6

STANDARD OF REVIEW ...........................................................................................8

ARGUMENT...............................................................................................................9

    I.       Plaintiff is not likely to prevail on the merits of its claims.......................... 10

          A.      The jurisdiction-stripping provision in 5 U.S.C. § 805 expressly bars California's claims. ..................................................................................10

          B.      California lacks Article III standing. ..................................................18

          C.      Neither EPA's determination that it needed to send the reports to Congress, nor its reports to Congress, is a final agency action reviewable under the APA. ..................................................................................24

    II.      Plaintiff has not demonstrated irreparable injury absent the requested relief.............. 27

    III.    The remaining factors weigh against the requested preliminary relief........................ 30

CONCLUSION............................................................................................................31

i

**TABLE OF AUTHORITIES**

**Constitution**

U.S. Const. art. I, § 5, cl. 2..............................................................................................3, 16

**Cases**

*Aid for Women v. Foulston,*
    441 F.3d 1101 (10th Cir. 2006) ....................................................................................30

*Akiachak Native Cmty. v. Jewell,*
    995 F. Supp. 2d 7 (D.D.C. 2014)...................................................................................28

*Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.,*
    816 F. Supp. 3d 27 (D.D.C. 2026)...................................................................................8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................................9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................................................9

*Bennett v. Spear,*
    520 U.S. 154 (1997)......................................................................................................24

*Bldg. & Constr. Trades Dep't., AFL-CIO v. Allbaugh,*
    295 F.3d 28 (D.C. Cir. 2002).........................................................................................20

*Carpenters Indus. Council v. Zinke,*
    854 F.3d 1 (D.C. Cir. 2017)..........................................................................................22

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)........................................................................................20, 21, 29

*Ctr. for Biological Diversity v. Bernhardt,*
    946 F.3d 553 (9th Cir. 2019) ..........................................................................13, 15, 16, 18

*Cuomo v. U.S. Nuclear Regul. Comm'n,*
    772 F.2d 972 (D.C. Cir. 1985).........................................................................................9

*Dalton v. Specter,*
    511 U.S. 462 (1994)..................................................................................................25, 26

*DCH Reg'l Med. Ctr. v. Azar,*
    925 F.3d 503 (D.C. Cir. 2019)......................................................................................15

*Dorfmann v. Boozer,*
    414 F.2d 1168 (D.C. Cir. 1969).....................................................................................27

*Dynalantic Corp. v. Dep't of Def.*,
115 F.3d 1012 (D.C. Cir. 1997)...............................................................22

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
15 F.Supp.3d 32 (D.D.C. 2014)..................................................................9

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*,
928 F.3d 95 (D.C. Cir. 2019)....................................................................10

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024).................................................................................29

*Food & Water Watch, Inc. v. Vilsack*,
79 F. Supp. 3d 174 (D.D.C.), *aff'd*, 808 F.3d 905 (D.C. Cir. 2015).........................................19

*Franklin v. Massachusetts*,
505 U.S. 788 (1992).................................................................................25

*Heckler v. Ringer*,
466 U.S. 602 (1984).................................................................................15

*Hisp. Affs. Project v. Perez*,
141 F. Supp. 3d 60 (D.D.C. 2015)............................................................27

*In re Murray Energy Corp.*,
788 F.3d 330 (D.C. Cir. 2015)..................................................................21

*K.G. ex rel. Garrido v. Dudek*,
839 F. Supp. 2d 1254 (S.D. Fla. 2011) ....................................................30

*Kan. Nat'l Res. Coal. v. U.S. Dep't of Interior*,
971 F.3d 1222 (10th Cir. 2020) .........................................................12, 14

*Kingdom v. Trump*,
No. 26-5181, 2026 WL 1905418 (D.C. Cir. June 17, 2026) ....................30

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016)......................................................................29

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..............................................................................9, 18

*Mexichem Specialty Resins, Inc. v. E.P.A.*,
787 F.3d 544 (D.C. Cir. 2015)..................................................................27

*Montanans for Multiple Use v. Barbouletos*,
568 F.3d 225 (D.C. Cir. 2009)..................................................................12

*Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't of Env't Conservation*,
   17 F.3d 521 (2d Cir. 1994) ................................................................................................ 5

*Mullin v. Doe*,
   No. 25-1083, 2026 WL 1825840 (U.S. June 25, 2026) ................................................ 10, 11, 14

*Murthy v. Missouri*,
   603 U.S. 43 (2024) ............................................................................................................ 23

*N. Am.'s Bldg. Trades Unions v. Dep't of Def.*,
   783 F. Supp. 3d 290 (D.D.C. 2025) ................................................................................. 30

*Nixon v. United States*,
   506 U.S. 224 (1993) .......................................................................................................... 17

*Pharm. Rsch. & Mfrs. of Am. v. HHS*,
   656 F. Supp. 3d 137 (D.D.C. 2023) ................................................................................. 21

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Admin.*,
   513 F.3d 234 (D.C. Cir. 2008) ......................................................................................... 19

*Pugin v. Garland*,
   599 U.S. 600 (2023) .......................................................................................................... 15

*Pursuing Am.'s Greatness v. FEC*,
   831 F.3d 500 (D.C. Cir. 2016) ...................................................................................... 8, 30

*Racing Enthusiasts & Suppliers Coal. v. EPA*,
   45 F.4th 353 (D.C. Cir. 2022) .......................................................................................... 25

*Renal Physicians Ass'n v. U.S. Dep't of Health & Hum. Servs.*,
   489 F.3d 1267 (D.C. Cir. 2007) ....................................................................................... 23

*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011) ........................................................................................... 8

*Sierra Club v. EPA,*
   292 F.3d 895 (D.C. Cir. 2002) ......................................................................................... 18

*Sierra Club v. EPA*,
   955 F.3d 56 (D.C. Cir. 2020) ........................................................................................... 25

*Singh v. Carter*,
   185 F. Supp. 3d 11 (D.D.C. 2016) ..................................................................................... 9

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................................................ 10

*Susan B. Anthony List v. Direhaus*,
  573 U.S. 149 (2014).................................................................................................... 21

*Teva Pharms. USA, Inc. v. U.S. Food & Drug Admin.*,
  514 F. Supp. 3d 66 (D.D.C. 2020)............................................................................. 20

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025).................................................................................................... 31

*Turlock Irrigation Dist. v. FERC*,
  786 F.3d 18 (D.C. Cir. 2015)...................................................................................... 20

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  578 U.S. 590 (2016)........................................................................................ 24, 26, 27

*United Transp. Union v. Interstate Com. Comm'n*,
  891 F.2d 908 (D.C. Cir. 1989).................................................................................... 20

*Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*,
  09 F.3d 1259 (10th Cir. 2007) .................................................................................... 12

*Wash. All. of Tech. Workers v. DHS*,
  892 F.3d 332 (D.C. Cir. 2018).................................................................................... 12

*Watkins v. United States*,
  354 U.S. 178 (1957).................................................................................................... 23

*Watts v. SEC*,
  482 F.3d 501 (D.C. Cir. 2007)..................................................................................... 11

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)............................................................................................... 8, 27, 30

*Wis. Gas Co. v. Fed. Energy Regul. Comm'n*,
  758 F.2d 669 (D.C. Cir. 1985)..................................................................................... 27

**Statutes**

5 U.S.C. § 551(4) ............................................................................................................... 3

5 U.S.C. § 704................................................................................................................... 24

5 U.S.C. § 801..................................................................................................................... 3

5 U.S.C. § 801(a)(1)........................................................................................................... 11

5 U.S.C. § 801(a)(1)(A) ...................................................................................................... 2

5 U.S.C. § 801(b)(1) ............................................................................................................ 3

v

5 U.S.C. § 801(b)(2) ................................................................................................ 3

5 U.S.C. § 802 ................................................................................................... 2, 3

5 U.S.C. § 802(a) .................................................................................................. 2

5 U.S.C. § 802(g) ............................................................................................. 2, 3

5 U.S.C. § 802(g)(1) ........................................................................................... 16

5 U.S.C. § 804(3) ........................................................................................... 3, 11

5 U.S.C. § 805 ......................................................................... 1, 9, 10, 11, 12, 16

5 U.S.C. §§ 801-08 ............................................................................................... 2

8 U.S.C. § 1254a(b)(5)(A) ................................................................................. 13

42 U.S.C. § 7507 .................................................................................................. 5

42 U.S.C. § 7543(a) ............................................................................................. 5

42 U.S.C. § 7543(b) ............................................................................................. 5

42 U.S.C. § 7543(b)(1) ..................................................................................... 5, 6

42 U.S.C. § 7543(e) ............................................................................................. 6

Pub. L. No.  89-272, § 101, 79 Stat. 992 (1965) ................................................. 4

Pub. L. No. 119-15, 139 Stat. 65 (2025) ........................................................ 6, 17

Pub. L. No. 119-16, 139 Stat. 66 (2025) ........................................................ 6, 17

Pub. L. No. 119-17, 139 Stat. 67 (2025) ........................................................ 6, 17

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 9

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 9

**Federal Register**

74 Fed. Reg. 32744 (July 8, 2009) ...................................................................... 7

78 Fed. Reg. 2112 (Jan. 9, 2013) ........................................................................ 7

83 Fed. Reg. 42986 (Aug. 24, 2018) ............................................................. 6, 20

84 Fed. Reg. 51310 (Sep. 27, 2019) .................................................................. 6, 21, 24

87 Fed. Reg. 14332 (Mar. 14, 2022) ............................................................................ 7

90 Fed. Reg. 640 (Jan. 6, 2025) ................................................................................... 7

Exec. Order No. 14154, 90 Fed. Reg. 8353 (Jan. 20, 2025) ...................................... 20

**Legislative History**

170 Cong. Rec. S5883 (daily ed. Sep. 9, 2024) ........................................................... 4

171 Cong. Rec. S3017 (daily ed. May 21, 2025) ...................................................... 17

171 Cong. Rec. S3047 (daily ed. May 21, 2025) ...................................................... 17

171 Cong. Rec. S3099 (daily ed. May 22, 2025) ...................................................... 17

H.R.J. Res. 87, 119th Cong. (2025) ............................................................................. 6

H.R.J. Res. 88, 119th Cong. (2025) ............................................................................. 6

H.R.J. Res. 89, 119th Cong. (2025) ............................................................................. 6

**Other Authorities**

U.S. Gov't Accountability Off., GAO-B-325553, GAO's Role and Responsibilities Under the Congressional Review Act 9 (2014) ............................................................................. 4

Valerie C. Brannon & Maeve P. Carey, Cong. Rsch. Serv., R45248, The Congressional Review Act: Determining Which "Rules" Must Be Submitted To Congress (2024) ......................... 3, 4

**INTRODUCTION**

The Congressional Review Act establishes a set of procedures for Congress to review agency rules and, if desired, invalidate them through joint resolutions. The CRA first requires agencies to submit their rules to Congress for review. It then contains a set of fast-track legislative procedures for debating and enacting joint resolutions of disapproval. Because this process is exclusively in Congress's wheelhouse, the CRA contains a comprehensive jurisdiction-stripping provision: "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. That provision means what it says, and it renders this lawsuit futile, to say the least.

On June 12, the United States Environmental Protection Agency sent four reports to Congress identifying four Clean Air Act preemption waivers as rules subject to the CRA. California uses those preemption waivers to regulate greenhouse gas emissions from certain motor vehicles and engines. In this lawsuit, California complains that EPA incorrectly determined that its preemption waivers are rules under the CRA, and that it incorrectly submitted the reports to Congress under the CRA. California now asks this Court to direct EPA to "withdraw or correct" the agency's determinations and its reports to Congress, and to preliminarily enjoin EPA from taking similar action with respect to any other Clean Air Act preemption waivers.

California's challenges to EPA's determination and submission are unequivocally barred by the CRA's jurisdiction-stripping provision because they are a "determination" and an "action" under the CRA. 5 U.S.C. § 805. That resolves this case.

California also lacks standing. First, it alleges injury based on the possibility that Congress might enact a joint resolution disapproving the preemption waivers. Not only is it speculative whether Congress will enact a statute, but Congress's joint resolutions are

1

attributable to Congress, a third party not before this Court, and ordering EPA to unsend its report would redress nothing because Congress can pass a joint resolution regardless of any report from EPA. Second, California also alleges injury on the illogical theory that EPA's reports to Congress make it more likely that EPA will revoke the waivers administratively and will do so without notice to California. EPA has long understood that issuing or rescinding a waiver requires notice and comment; there is absolutely *no* evidence that EPA intends imminently to rescind the waivers; and, in any event, such action would be separately challengeable on its own terms and cannot be enjoined *in advance* based on speculative procedural concerns.

If more were needed, California identifies no final agency action, asserts no irreparable harm, and badly loses the balancing of the equities. California's motion for a preliminary injunction should be denied and the case dismissed.

## BACKGROUND

### I.    STATUTORY BACKGROUND

#### A.  The Congressional Review Act

Enacted in 1996 to enhance congressional oversight of executive rulemaking, the CRA creates a set of procedures for Congress to review and repeal agency rules. 5 U.S.C. §§ 801-08. The CRA provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit" a report "to each House of the Congress." 5 U.S.C. § 801(a)(1)(A). Upon receipt of such a report, Congress may enact a joint resolution "disapprov[ing] the rule." 5 U.S.C. § 802(a). To do so, the CRA creates a set of expedited legislative procedures for debating disapproval resolutions in Congress. *Id.* § 802. These procedures, along with the definition of a "joint resolution" of disapproval, were enacted in "an exercise of the rulemaking power of the Senate and House of Representatives." *Id.* § 802(g). And because the procedures are "deemed a part of the rules of each House," either House may "change the rules … at any time." *Id.* §

2

802(g). This is consistent with the constitutional authority of each House of Congress to "determine the Rules of its Proceedings." U.S. Const. art. I, § 5, cl. 2.

If a joint resolution of disapproval passes both Houses of Congress, and is signed into law by the President, two consequences follow. First, and most immediately, the rule "shall have no force or effect." *Id.* § 801(b)(1) (the rule "shall not take effect (or continue)"). Second, the rule "may not be reissued in substantially the same form," nor may a "new rule that is substantially the same as such a rule … be issued, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule." *Id.* § 801(b)(2).

As a general matter, the CRA applies to agency "rules," not agency "orders." *Id*. §§ 801, 802. Under the CRA, "rule" "has the meaning given such term in" the Administrative Procedure Act ("APA"), with certain CRA-specific exceptions. *Id*. § 804(3). The APA, in turn, broadly defines "rule" as any "agency statement of general … applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id*. § 551(4).

Congress and individual members sometimes disagree with the Executive Branch's assessment of whether an agency action is a "rule" subject to CRA procedures. *See* Valerie C. Brannon & Maeve P. Carey, Cong. Rsch. Serv., R45248, *The Congressional Review Act: Determining Which "Rules" Must Be Submitted To Congress* (2024) ("CRS Rpt."). In the past, "Congress and others raised concerns over agencies not submitting their rules." *Id.* at 21. "To protect its prerogative to review agency rules under the CRA, Congress and the Government Accountability Office (GAO) have developed an ad hoc process in which Members can request that GAO provide a formal legal opinion on whether a particular agency action qualifies as a rule under the CRA." *Id.* at Summary. GAO has long acknowledged that its opinions are purely

3

advisory because the "statutory scheme ultimately leaves it to *Congress* to decide whether CRA would apply." U.S. Gov't Accountability Off., GAO-B-325553, *GAO's Role and Responsibilities Under the Congressional Review Act* 9 (2014) (emphasis added).

In exercising that prerogative, Congress can and has enacted joint resolutions under the CRA even when an agency did not submit the report to Congress, based on Congress's own determination that the agency action was subject to the CRA. *Id.* The mechanism Congress uses is to sometimes treat a GAO opinion "classifying an agency action as a rule as the trigger date" for the CRA's fast-track debate procedures under the CRA. CRS Rpt. at 23. On the other hand, in response to GAO monitoring of agency compliance, agencies have submitted dozens of actions to Congress "out of an abundance of caution." *See, e.g.*, 170 Cong. Rec. S5883 (daily ed. Sep. 9, 2024) (EC-5696) ("EPA disagrees with GAO's broader reading of the Congressional Review Act" but submits "this action" "out of an abundance of caution"). Whether Congress ultimately chooses to debate or enact a joint resolution disapproving of any agency action is exclusively up to Congress.

To protect that prerogative, Congress included a comprehensive jurisdiction-stripping provision in the CRA. Section 805 states: "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. Accordingly, the determination of whether an agency action is a rule or an order under the CRA—whether that determination is made by an agency, the GAO, lawyers for plaintiffs, or by majority vote in the Senate—is never subject to judicial review. Nor is any "finding," "action," or "omission" under the CRA. In short, the CRA is Congress's domain.

**B. The Clean Air Act**

In 1965, Congress amended Title II of the Clean Air Act to authorize federal emission standards for motor vehicles. Pub. L. No. 89-272, § 101, 79 Stat. 992 (1965). Even so, many

states continued developing their own emission programs. *Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't of Env't Conservation*, 17 F.3d 521, 525 (2d Cir. 1994). Congress responded in 1967 by adding a broad preemption provision in what is now section 209(a). 42 U.S.C. § 7543(a). That provision is the "cornerstone" of Title II's federal regime for regulating mobile sources in a uniform manner that reflects the interstate nature of the sources and nationwide scope of the relevant industries. *Motor Vehicle Mfrs.*, 17 F.3d at 526.

The preemption provision provides that "[n]o State … shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles." 42 U.S.C. § 7543(a). Congress left only one exception for new motor vehicles to § 209(a)'s broad preemptive reach in what is now § 209(b). 42 U.S.C. § 7543(b). Under § 209(b), California may obtain a preemption waiver from EPA under certain circumstances. 42 U.S.C. § 7543(b).[1] EPA "shall, after notice and opportunity for public hearing," grant a preemption waiver for standards that California determines "will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards." *Id.* § 7543(b)(1). "No such waiver shall be granted," however, if EPA concludes that California's determination is arbitrary and capricious, that California "does not need" such standards "to meet compelling and extraordinary conditions," or that the standards are "not consistent with" requirements of section 202(a). *Id.* Unless EPA issues a waiver, it remains unlawful for California to "adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles." *Id.* § 7543(a). California alleges that EPA has granted more than 75 preemption waivers under the Clean Air Act. Dkt. No. 1 (Compl.) ¶ 6.

---

[1] Additional states may adopt standards identical to California standards for which EPA has issued a waiver, if certain conditions are met. 42 U.S.C. § 7507.

Under § 209(b)(1), EPA can issue preemption waivers only after providing notice and an opportunity for comment. 42 U.S.C. § 7543(b)(1). And when EPA has taken administrative action to withdraw a preemption waiver issued under § 209, it followed a similar process for notice and comment. *See* 83 Fed. Reg. 42986 (Aug. 24, 2018); 84 Fed. Reg. 51310 (Sep. 27, 2019).[2]

## II.    FACTUAL BACKGROUND

In February 2025, EPA submitted three Clean Air Act preemption waivers to Congress. *See* Compl. ¶ 13. At the time, the GAO had advised Congress that EPA's preemption waivers are orders and not rules under the CRA. The Executive Branch disagreed, however, and determined that EPA waivers are rules under the CRA, as explained by the Office of Management and Budget. *See* https://www.whitehouse.gov/wp-content/uploads/2025/03/CA-Waiver-Letter-to-GAO.pdf [https://perma.cc/T5L3-USQV] (Letter from the Office of Management and Budget to GAO).

Congress ultimately determined that the EPA waivers were subject to the CRA. On April 2, 2025, members of the House of Representatives introduced three CRA disapproval resolutions, each one targeting one of the three preemption waivers (the Resolutions). By May 1, 2025, a majority of the House of Representatives had voted in favor of all three Resolutions. On May 22, 2025, the Senate voted on each of the Resolutions and passed all three. H.R.J. Res. 87, 119th Cong. (2025); H.R.J. Res. 88, 119th Cong. (2025); H.R.J. Res. 89, 119th Cong. (2025). The President signed the Resolutions into law on June 12, 2025. Pub. L. No. 119-15, 139 Stat. 65 (2025); *see also* Pub. L. No. 119-16, 139 Stat. 66 (2025); Pub. L. No. 119-17, 139 Stat. 67 (2025).

---

[2] The Clean Air Act also provides a comparable preemption and waiver regime as to California for certain nonroad engines, with differences immaterial here. 42 U.S.C. § 7543(e).

In a June 12, 2026 press release, EPA stated it had transmitted to Congress four additional preemption waivers it had previously issued to California under § 209 of the Clean Air Act. *See* https://www.epa.gov/newsreleases/epa-fulfills-statutory-obligation-transmitting-four-California-waiver-rules-Congress [https://perma.cc/GZA4-CYHF]. EPA made a determination pursuant to the requirements of the CRA that prior agency actions granting Clean Air Act preemption waivers with national implications should have been reported to Congress. The resulting transmission of reports to Congress was "to fulfill [EPA's] statutory obligation" under the Congressional Review Act after the agency "determined that each of these waivers is a rule under the CRA." *Id.*

The following waivers were transmitted to Congress:

- A waiver authorizing California greenhouse gas emissions for new motor vehicles. 74 Fed. Reg. 32744 (July 8, 2009);

- A waiver authorizing California's Advanced Clean Cars I regulation. 78 Fed. Reg. 2112 (Jan. 9, 2013);

- A waiver re-authorizing California Advanced Clean Cars I regulation. 87 Fed. Reg. 14332 (Mar. 14, 2022);[3] and

- A waiver authorizing California's amended Small Off-Road Engine regulations. 90 Fed. Reg. 640 (Jan. 6, 2025).[4]

California filed this action on June 22, 2026, and seeks review under the Administrative Procedure Act of what it describes as EPA's "purported reclassification[]" of the four preemption waivers as rules, and the submission of those waivers to Congress under the CRA. Compl. ¶¶ 97, 118. California asserts that these actions are "final agency actions" and that they

---

[3] This action is the subject of a petition for review. *Ohio v. EPA*, No. 22-1081 (D.C. Cir.).

[4] This action is the subject of petitions for review. *E.g.*, *OPEI v. EPA*, No. 25-881 and *AFPM v. EPA*, 25-1481 (9th Cir.).

7

are either arbitrary and capricious or contrary to law (Count I) or *ultra vires* (Count II). *Id.* at 23-28.

On June 25, 2026, California filed a motion for preliminary injunction or stay pursuant to its interpretation of 5 U.S.C. § 705. Pl.'s Mot., Dkt. No. 13. California seeks an order requiring EPA to, *inter alia*, "withdraw or correct" (consistent with California's view) EPA's determinations that the waivers should be transmitted to Congress under the CRA, and "withdraw or correct" (consistent with California's view) EPA's CRA submissions to Congress. *See* Proposed Order, Dkt. No. 13-30. California further requests that the Court enjoin EPA from "giving effect" to its determination that the preemption waivers are rules, and from determining that any other Clean Air Act preemption waivers are rules. *Id.*

Simultaneous with the filing of its response in opposition to California's motion, EPA is moving to dismiss the complaint under Rule 12(b)(1) and (6).

## STANDARD OF REVIEW

***Preliminary injunction.*** A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). The movant must make a "clear showing" that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm absent relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.*, 816 F. Supp. 3d 27, 45 n.6 (D.D.C. 2026) (Howell, J.). But the balance of equities and public interest merge when preliminary relief is sought against the government because "the government's interest is the public interest." *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original).

Where, as here, "the plaintiff's requested injunction is 'mandatory—that is, where its terms would alter, rather than preserve, the *status quo* by commanding some positive act,' Judges on this Court have required the moving party to 'meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction.'" *Singh v. Carter*, 185 F. Supp. 3d 11, 17 (D.D.C. 2016) (Howell, J.) (citing *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F.Supp.3d 32, 39 (D.D.C. 2014) ("*EPIC II*") (collecting cases).

The same factors governing preliminary injunctions also govern relief under 5 U.S.C. § 705. *See Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).

***Motion to dismiss.*** The complaining party bears the burden of establishing standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In the absence of plausible allegations sufficient to support standing, a court must dismiss a complaint for lack of subject-matter jurisdiction. *See id.*; Fed. R. Civ. P. 12(b)(1).

The complaining party also bears the burden of pleading each element of a claim on the merits. Fed. R. Civ. P. 12(b)(6). To pass muster, a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Speculation, "naked assertion[s]," "legal conclusions," and "mere conclusory statements" are insufficient. *Id*.

## ARGUMENT

California's motion fails at every level, and it is not a close call. *First*, Congress very clearly barred judicial review of the two actions California seeks to challenge: EPA's determination that its preemption waivers are rules under the CRA, and EPA's submission of the waivers to Congress under the CRA. 5 U.S.C. § 805. The text of section 805 is plain, broad, and dispositive. The Court can and should reject the motion and dismiss the complaint on that ground

9

alone. *Second*, California lacks standing because neither EPA's determination that preemption waivers are rules nor its report to Congress under the CRA has caused California any cognizable injury, much less any injury that is redressable here. *Third*, the claims fail on the merits because neither action challenged is final agency action reviewable under the APA. *Fourth*, just as California has not established standing, it has not demonstrated irreparable harm. And the balance of harms weighs entirely in EPA's favor here.

## I.    Plaintiff is not likely to prevail on the merits of its claims.

In order to demonstrate a likelihood of success on the merits, a plaintiff must first satisfy the "threshold" issue of establishing that this Court has subject-matter jurisdiction over its claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998); s*ee also Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 104 (D.C. Cir. 2019). Here, California fails to establish this threshold in at least two ways: the Congressional Review Act expressly precludes review of the issues California raises, and California lacks Article III standing. If more were needed (and it is not), California has failed to identify a final agency action reviewable under the APA.

### A.  The jurisdiction-stripping provision in 5 U.S.C. § 805 expressly bars California's claims.

In the CRA, Congress expressly limited the jurisdiction of federal courts, providing that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. The jurisdiction-stripping language in § 805 is both broad and clear, and it should be enforced under its plain terms. *See Mullin v. Doe*, No. 25-1083, 2026 WL 1825840, at *9 (U.S. June 25, 2026) ("Statutory interpretation proceeds on the assumption that those who draft and enact a provision generally intend its terms to mean what they mean in ordinary usage."). "Limits on subject-matter jurisdiction keep the federal courts within the

10

bounds the Constitution and Congress have prescribed, and those limits must be policed by the courts on their own initiative." *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (cleaned up). The jurisdiction-stripping provision in § 805 is thus fatal to this suit.

**1.** Plaintiffs purport to challenge (1) EPA's determination that the waivers are rules for purposes of the CRA, which Plaintiffs studiously label a "reclassification," and (2) EPA's submission of these waivers to Congress as "rules" subject to the CRA. Compl. ¶¶ 73, 77, 117-118, 126, 139. Section 805 squarely forecloses both of those challenges.

*First*, EPA's determination that the waivers are rules under the CRA is a "determination … under" the CRA. 5 U.S.C. § 805. EPA applied a CRA provision—the definition of a "rule"—to specific facts for purposes of the CRA. *Id.* § 804(3) (defining "rule" under the CRA); *see Mullin*, 2026 WL 1825840, at *7 (finding that the term "determination" includes each "discrete decision" and "all those steps [that] were part of the process"). Simply put, an agency's determination that an action either is or is not a rule that must be reported to Congress is a determination under the CRA. That is exactly what California seeks to challenge here. And that claim is barred because "[n]o" such "determination … shall be subject to judicial review." 5 U.S.C. § 805.

*Second*, EPA's submission of these CRA reports to Congress is an "action … under" the CRA. It is indisputably an "action," and it is an action "under" the CRA because EPA expressly sent the report to comply with the CRA's requirement that each agency must send a "report" to "each House of the Congress" containing "a copy of the rule." *Id.* § 801(a)(1). Simply put, when an agency sends a report to Congress stating that it is submitting a rule under the CRA, that is an "action … under" the CRA. California's challenge to that action is barred because "[n]o … action" taken under the CRA "shall be subject to judicial review." *Id.* § 805.

11

**2.**  The courts of appeals for the D.C. Circuit, Ninth Circuit and Tenth Circuit, and many district courts have enforced § 805 as written, to broadly foreclose judicial review of all claims asserting a violation of the CRA—including claims alleging agency noncompliance with the CRA. For example, in *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009) (Kavanaugh, J.), the D.C. Circuit declined to review a claim that agency amendments to a forest plan were invalid because the agency allegedly failed to comply with CRA reporting requirements. As then-Judge Kavanaugh explained, "[t]he language of § 805 is unequivocal and precludes review of this claim" because it "denies courts the power to void rules on the basis of agency noncompliance with the Act." *Id.* The D.C. Circuit later reaffirmed that holding, concluding that § 805 forecloses review of a claim that an agency violated the CRA by publishing a rule fewer than sixty days before it took effect. *Wash. All. of Tech. Workers v. DHS*, 892 F.3d 332, 346 (D.C. Cir. 2018). This D.C. Circuit precedent alone is fatal to this suit.

The Tenth Circuit has likewise repeatedly declined to review claims that an agency violated the CRA, noting that the statute "specifically precludes judicial review of an agency's compliance with its terms." *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007); *see also Kan. Nat'l Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1235-36 (10th Cir. 2020) (holding that the CRA "unambiguously prohibits judicial review" of an omission on the part of agencies, Congress, and other specified actors). The same reasoning applies here to the determination, findings, and actions by EPA under the CRA.

The Ninth Circuit has likewise enforced § 805 as written, where Congress used the CRA "to rescind a regulation that prevented Alaska from applying certain state hunting regulations on federal wildlife refuges." *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 556 (9th Cir. 2019). In *Bernhardt*, the plaintiff sued "to compel" the Department of the Interior "to reinstate

12

the rule," on the theory that the rule at issue was "not eligible for disapproval in the new session of Congress" due to certain statutory timing requirements that appear in the CRA—requirements that plaintiff argued had been violated. *Id.* at 556, 563. The plaintiff argued that because of those violations of the CRA, "the Joint Resolution was invalid and it did not authorize Interior to rescind" the rule—even though it had been disapproved through a CRA resolution that passed both Houses of Congress and was signed into law by the President. *Id.* at 563.

The Ninth Circuit refused to exercise jurisdiction: "Because enacting a joint resolution of disapproval is an action under the CRA," the federal courts "lack jurisdiction to consider this claim." *Id.* And in doing so, the Ninth Circuit rejected the argument that a plaintiff could get around the CRA's review bar by restyling its claims as a challenge to some agency action (rather than a congressional action) under the APA. In particular, the plaintiff in *Bernhardt* argued that, because it was "challenging *Interior*'s rescission of the Refuges Rule and not any action under CRA," "its claim is not barred." *Id.* at 564 (emphasis added). But because the suit ultimately depended on the theory that "Congress did not validly enact the Joint Resolution," the Ninth Circuit held that plaintiff's "claim necessarily involve[d] a challenge to a congressional 'determination, finding, action or omission' under the CRA, and as such is subject to" § 805. *Id.*

On top of this, the Supreme Court's recent decision in *Mullin* leaves no room for doubt that California's claims are beyond the statutory subject-matter jurisdiction of this Court. There the Court reviewed an immigration statute barring "judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." 8 U.S.C. § 1254a(b)(5)(A). The Court held that the ordinary meaning of "determination," whether understood as "a decision" or "the chain of events" leading up to a decision, "bars respondents' non-constitutional claims." *Mullin*,

13

2026 WL 1825840, at *7. Each claim "concern[ed] a discrete decision made by the Secretary," and "all those steps were part of the process that led to her final decision…." *Id.* Moreover, the Court specifically rejected respondents' attempts to evade the judicial review bar by framing challenges as procedural, holding that "a 'determination' may concern procedural or substantive questions." *Id.* at *8.

Here, the CRA's judicial review bar is even broader than the provision at issue in *Mullin*—it applies to any "determination, finding, action, or omission" taken under the CRA, not just a "determination," and it bars judicial review regardless of which entity took the action or made the termination, whether Congress, the GAO, or any agency. *Kan. Nat'l Res.*, 971 F.3d at 1235-36. California has not, and cannot, offer any principled reason to evade the plain-language holding in *Mullin*.

**3.** California's argument for avoiding § 805 is baseless. To claim that EPA's determination is not a determination under the CRA, and that sending a CRA report to Congress is not an action under the CRA, California relies on its own assessment of the merits and its own determination that waivers are not in fact rules under the CRA. Compl. ¶¶ 110, 121; Pl.'s Mem. Prelim. Inj., Dkt. No. 13-1 at 25-27. According to California (Dkt. No. 13-1 at 26-27), this Court should first adopt its view of the merits and conclude that preemption waivers are not rules and then use that merits determination to decide whether the jurisdiction-stripping provision applies. And the State argues (*id.* at 27) that if EPA incorrectly determined that its preemption waivers are rules for purposes of the CRA, or if they made that determination too late, then that is not a determination "pursuant to" the CRA. This is jurisdictional sophistry.

 California's inside-out argument effectively reads § 805 out of the U.S. Code and renders the jurisdiction-stripping provision meaningless. After all, *every* CRA plaintiff has some

merits theory about how the CRA has been improperly invoked, or misinterpreted, or otherwise violated. The purpose of a jurisdiction-stripping provision is to prohibit judicial review of those very questions. California's circular argument assumes the validity of its position on the merits as the basis for concluding that § 805 does not bar review of the merits. If the statute worked that way, all claims that a plaintiff asserts are meritorious would proceed—just as if the preclusion provision did not exist. This Court "should not lightly conclude that Congress enacted a self-defeating statute." *Pugin v. Garland*, 599 U.S. 600, 607 (2023). What's more, if California were correct, every case applying § 805 would have been analyzed very differently. In *Montanans*, for example, the court would have examined the merits of whether the agency action was a rule and, if so, whether the agency failed to submit it to Congress under the CRA. In *Bernhardt*, the Ninth Circuit put to rest the argument that an action isn't "under" the CRA unless the agency or Congress or GAO was correct on the merits. 946 F.3d at 565.

    **4.** Separately, California's APA claims here are at a minimum "inextricably intertwined with" their allegations regarding EPA's actions taken under the CRA and thus are equally "barred" by the CRA's preclusion provision. *Heckler v. Ringer*, 466 U.S. 602, 624 (1984); *see also, e.g.*, *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 507 (D.C. Cir. 2019) (citing cases and explaining, in the context of the Medicare statute, that when Congress precludes judicial review of a decision, it also precludes review of any preceding issues that are "inextricably intertwined" with the final decision). In *Bernhardt*, for example, the plaintiff challenged an agency's subsequent recission of a rule in response to Congress's invalidation of that rule under the CRA, and the court held that the challenge was barred because the plaintiffs challenged it "solely on the ground that Congress did not validly enact the Joint Resolution" under the CRA. 946 F.3d at 564. In other words, the claim was inextricably bound up with an attack on an action under the

15

CRA and was therefore barred. *Id.* In short, because California cannot prevail on any of its APA claims without first persuading the Court that EPA violated the CRA, at a minimum, the State's claims are "inextricably intertwined" with precluded determinations and thus covered by preclusion provision in 5 U.S.C. § 805.

**5.** Dismissal of this action accords with the CRA's jurisdiction-stripping provision for two additional reasons.

*First*, the CRA's function is to provide Congressional oversight, not judicial oversight. It creates a process for Congress to review agency rules and assess whether those rules are consistent with Congress's policy goals. And at its core, it contains a set of legislative procedures for expedited debate to enact joint resolutions disapproving of agency rules through bicameralism and presentment. These provisions were expressly enacted under Congress's exclusive constitutional authority to "determine the Rules of its Proceedings." U.S. Const. art. I, § 5, cl. 2; 5 U.S.C. § 802(g)(1). Because the CRA is ultimately a tool for Congress, Congress appropriately decided that it—not the courts—should resolve disputes about whether an agency action is a rule subject to CRA review.

And Congress has a system for doing just that. The GAO frequently provides reports to Congress when issues arise as to whether an agency action is a rule or an order under the CRA. *See supra* p.3. But Congress is the ultimate arbiter. If Congress disagrees with an agency's determination, or if Congress disagrees with the GAO's determination, then Congress ultimately decides whether an action is a rule and whether the action is subject to the CRA's expedited legislative debate procedures.[5] Given this context, the broad jurisdiction-stripping provision that

---

[5] *See* 171 Cong. Rec. S3099, S3102 (daily ed. May 22, 2025) (statement of Sen. Fischer) ("GAO's role is just an advisory one and … it is up to us—it is up to Congress—to determine what constitutes a rule …. We are reclaiming our congressional authority under the

Congress enacted makes perfect sense. It prevents improper judicial interference in an area where there is "a textually demonstrable commitment of the issue to a coordinate political department." *Nixon v. United States*, 506 U.S. 224, 228 (1993). It puts control where it belongs: with Congress. The CRA is simply not within the provenance of the courts.

*Second*, recognizing that the CRA is in Congress's wheelhouse is all the more compelling here because Congress already made the relevant determination at issue in this case, i.e., whether to treat EPA Clean Air Act waivers as rules for purposes of the CRA. As California recognizes in its complaint, and as discussed above, EPA previously sent three different Clean Air Act waivers to Congress in February 2025. Compl. ¶ 13. After vigorous debate in Congress about whether waivers are properly subject to the CRA, the House and Senate passed three disapproval resolutions under the CRA, each targeting one of the three preemption waivers (the Resolutions).[6] The President signed the Resolutions into law on June 12, 2025. For purposes of the CRA, the waivers EPA submitted to Congress in June 2025 are indistinguishable from the waivers previously sent to Congress under the CRA, and Congress has already determined— through full votes in the House and Senate—that EPA's preemption waivers were properly submitted to Congress and properly subject to CRA review and disapproval. It would be improper for this Court to second-guess these Congressional determinations about Congress's

---

Congressional Review Act,."); 171 Cong. Rec. S3017, S3088 (daily ed. May 21, 2025) (statement of Sen. Capito) ("Delegating to the unelected GAO staff the authority to determine if Members of Congress can use the CRA against Agency-submitted rules turns the statute completely on its head.").

[6] *See* Pub. L. No. 119-15, 139 Stat. 65 (2025); Pub. L. No. 119-16, 139 Stat. 66 (2025); Pub. L. No. 119-17, 139 Stat. 67 (2025); *see also* 171 Cong. Rec. S3047 (daily ed. May 21, 2025) (statement of Sen. Thune) (The waivers "are clearly rules in substance given their nationwide impact and scope."); *id.* S3048 (recording the Senate's "vote on what qualifies for th[e] fast-track procedure" under the CRA).

own legislative rules. All of this is to say that it is hard to imagine a stronger set of circumstances for following a plainly worded jurisdiction-stripping provision.

In sum, because "federal courts do not have jurisdiction over statutory claims that arise under the CRA," *Bernhardt*, 946 F.3d at 563, California's claims are precluded. This case can and should be dismissed immediately on this basis alone.

## B. California lacks Article III standing.

To establish standing, a plaintiff must show they have suffered (1) an injury that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is "fairly traceable to the challenged action" of the defendant and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560 (citation modified); *Sierra Club v. EPA,* 292 F.3d 895, 898 (D.C. Cir. 2002). Here, California asserts that EPA's "attempts to reclassify" the four waivers and its "implementation of that 'determination'" injure it by "set[ting] up a two-pronged attack" on the State's ability to enforce its own regulations. Compl. ¶ 16. California alleges that EPA's sending reports to Congress (1) "invit[ed] Congress to disapprove" the waivers or (2) alternatively "pav[ed] the way for streamlined agency actions to revoke those waivers." *Id.* In so alleging, California fails to establish an injury in fact that is traceable to any EPA action and how the relief requested would redress any such injury.

*Injury in fact.* California asks the Court to "restore the status quo" to the parties' positions before EPA "attempted to reclassify into 'rules' four Clean Air Act preemption waivers that were granted to California." Dkt. No. 13 at 1. But the actions California seeks to challenge

18

did not change the status quo of the waivers. California's request that the Court order EPA to "restore the status quo," Dkt. No. 13-30, is thus meaningless.

Because California cannot dispute that the waivers it seeks to continue enforcing are legally effective at this time, the State alleges an injury based on what it calls an "increased threat to these four waivers." Compl. ¶ 90; *see also id.* ¶¶ 78, 82, 86, 91, 93 (describing EPA's actions as "facilitat[ing]" future invalidation of the waivers and increasing the risk of future invalidation of the waivers). This argument fails as a matter of law.

A plaintiff who plans to satisfy the imminent injury requirement by alleging that the challenged act will increase their risk of harm "must do more than merely assert that there is some conceivable risk that she will be harmed on account of the defendant's actions." *Food & Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174, 189 (D.D.C.), *aff'd*, 808 F.3d 905 (D.C. Cir. 2015). Such plaintiff must demonstrate that due to the challenged conduct there is "*both* (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm [to the plaintiff] with that increase[d risk] taken into account." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Admin.* ("*Pub. Citizen II*")*,* 513 F.3d 234, 237 (D.C. Cir. 2008) (emphasis in original). California has not met its burden to provide such a showing.

*First*, California alleges that sending the reports to Congress injured it by increasing the risk that Congress would enact a joint resolution. This is wrong for at least three reasons. For one, it is doubtful that sending a report to Congress could ever amount to a cognizable Article III injury because it is simply an interbranch communication informing Congress about an agency's activities. Next, California cannot base its claim of injury on speculation that Congress, not a party here, might enact a joint resolution. It is bedrock that "litigants cannot establish an Article III injury based on the independent action[s] of some third party not before th[is] court ...

19

because predictions of future events (especially future actions taken by third parties) are too speculative to support a claim of standing." *Teva Pharms. USA, Inc. v. U.S. Food & Drug Admin.*, 514 F. Supp. 3d 66, 88 (D.D.C. 2020) (cleaned up); *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 25 (D.C. Cir. 2015) (same). An alleged injury from a hypothetical future statute is insufficient to support standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) ("highly attenuated chain of possibilities"). More still, Congress can and indeed has enacted joint resolutions regardless of whether an agency submits a report. *See supra* at 3, 15.

*Second*, equally unavailing is California's gross speculation that EPA "will likely attempt to take administrative action to invalidate these waivers" without providing notice to the State. Compl. ¶¶ 85, 92, 100. California provides no facts to support such a claim. The cited Executive Order does not direct EPA to take action that is inconsistent with law. *See id.* ¶ 85 (citing Exec. Order No. 14154, 90 Fed. Reg. 8353 (Jan. 20, 2025)). The Executive Order expressly directs that it be implemented consistent with applicable law. *See* Exec. Order No. 14154 § 10, 90 Fed. Reg. at 8358-59. The effect of this language under D.C. Circuit precedent is that "if an executive agency … may lawfully implement the Executive Order, then it must do so; if the agency is prohibited, by statute or other law, from implementing the Executive Order, then the Executive Order itself instructs the agency to follow the law." *Bldg. & Constr. Trades Dep't., AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002). Indeed, the example the State provides of an occasion in which EPA did take action to withdraw a portion of a waiver decision demonstrates that EPA provided ample notice to the State, consistent with the process for granting or denying a waiver set forth in Clean Air Act section § 209(b). *See* Compl. ¶ 85; Dkt. No. 13-1 at 4 n.4. In that administrative action, EPA published a proposal on August 24, 2018 (83 Fed. Reg. 42986),

20

held public hearings and took public comment, and issued the final rule more than a year later on September 27, 2019 (84 Fed. Reg. 51310).

The requirement of demonstrating imminent injury is "hard to meet where the [alleged] harm causing event is still 'subject … to regulatory processes and approvals.'" *Pharm. Rsch. & Mfrs. of Am. v. HHS*, 656 F. Supp. 3d 137, 151 (D.D.C. 2023); *see also id.* at 152 (also recognizing that "imminence requires some temporal certainty"). And California asserts no facts to support an allegation that EPA will take administrative action to withdraw part or all of any waiver, or that it will do so without undertaking the same process as was taken before. Any such future action would be independent and separately challengeable if indeed EPA acts in a manner California believes to be improper. *See In re Murray Energy Corp.*, 788 F.3d 330, 335 (D.C. Cir. 2015) (rejecting claims that the court should review a proposed rule because petitioners asserted they were incurring costs in preparing for a final rule and EPA's public statements about its legal authority to regulate carbon dioxide emissions were reviewable).

*Third*, insofar as it is relevant to standing, the irreparable harm California asserts in support of its motion for preliminary relief is founded on vague assertions of needing to plan for the mere possibility of Congressional or administrative action. That is a self-inflicted injury that is not "actual or imminent"—meaning that threat of future injury must be "certainly impending" or there must be a "'substantial risk' that the harm will occur"—rather than just a possibility. *Clapper*, 568 U.S. at 409-14, 414 n.5; *Susan B. Anthony List v. Direhaus*, 573 U.S. 149, 158 (2014).  And, as explained below, *infra* at Argument section II, those claims of harm are not substantiated by specific facts or evidence.

21

California has not shown any injury in fact as a result of the determination that the waivers should have been submitted under the CRA or because of EPA's transmission of the waivers to Congress under the CRA.

***Traceability and Redressability.*** Traceability and redressability often "overlap as two sides of a causation coin." *Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1017 (D.C. Cir. 1997); *see also Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017) ("[I]f a government action causes an injury, enjoining the action usually will redress the injury."). Redressability thus considers whether the "relief sought . . . [would] likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon Soc'y*, 94 F.3d at 663–64.

California cannot meet the traceability prong for standing. California bases its injury on Congress enacting a joint resolution, but that action—if it were to occur—would be attributable to Congress, which has unfettered discretion to pass a statute and is a third party not before the Court. That alone means that any harm from a future joint resolution is not traceable to EPA.

Nor is this alleged injury redressable, because the relief California seeks would not preclude Congress from enacting a joint resolution. Specifically, California asks this Court to order EPA to "withdraw or correct" its reports to Congress, and to enjoin EPA from making determinations and submissions to Congress regarding other preemption waivers. But Congress can enact a joint resolution regardless of whether EPA withdraws the reports, and Congress can enact a joint resolution even if EPA never submitted a report in the first place. *Supra* pp.3-4. Thus, even if EPA's determination and its report were "a substantial contributing factor" in Congress enacting a future joint resolution, ordering EPA to withdraw the report would not "undo the [alleged] harm." *Renal Physicians Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 489 F.3d 1267, 1278 (D.C. Cir. 2007).

Again, Congress can pass laws disapproving of these waivers without *any* involvement from EPA, or Congress can explicitly disagree with EPA's interpretation of the CRA and pass joint resolutions without submissions from EPA. As noted above, Congress sometimes disagrees with the Executive Branch's assessment of whether an agency action is a "rule" subject to CRA procedures and takes action consistent with its determination as to whether an action is reviewable under the CRA. Congress can and has taken action regardless of whether an agency submits a report under the CRA. *Supra* p.4.

Thus, for purposes of this case, it would not matter if EPA's actions, as California alleges, are an attempt to "invit[e] Congress to disapprove" the waivers. Compl. ¶ 16; *see also id.* ¶¶ 83-84. This Court cannot look behind the curtain of a coordinate branch to second-guess the procedures (much less the motivations) of legislators exercising independent constitutional roles. Congress has plenary power to conduct inquiries and receive reports "concerning the administration of existing laws as well as proposed or possibly needed statutes." *Watkins v. United States*, 354 U.S. 178, 187 (1957). And like EPA's action taken under the CRA, any actions or omissions by Congress would be precluded from review under § 805.

Separately, traceability is plainly not met as to the allegation that EPA might administratively rescind the waiver without notice. California has no plausible explanation for why EPA's rule-determination and its reports to Congress could cause EPA to be more likely to rescind a wavier administratively. None of the EPA's actions challenged here are a prerequisite for future administrative action. There is simply no traceable connection between the challenged conduct and the supposed injury from an administrative reconsideration. Neither is this redressable. Ordering EPA to withdraw its report and its determination will make no difference as to whether EPA might or might not rescind the waivers administratively, much less whether

23

they will do so without giving California notice. EPA has long understood that issuing or rescinding a waiver requires notice and comment, and the previous time EPA rescinded a waiver, it did so after providing notice and an opportunity to comment. *See, e.g.*, 84 Fed. Reg. 51310 (withdrawal of preemption waiver).

Finally, some of the relief California seeks in its motion goes beyond the claims alleged and would redress potential injuries as to actions not challenged here. California requests that the Court enjoin EPA from making determinations that other preemption waivers not challenged here are rules that should be reported to Congress under the CRA. *See* Dkt. No. 13-30 at 2. But neither Rule 65 nor the APA authorizes this Court to issue forward-looking relief against potential future agency action. That is consistent with the judicial review provisions of the APA, which allow for review of final agency action. 5 U.S.C. § 704.

California cannot meet its burden to establish standing, and its claims should be dismissed.

### C. Neither EPA's determination that it needed to send the reports to Congress, nor its reports to Congress, constitute final agency action reviewable under the APA.

Judicial review under the APA is limited to "final agency action," 5 U.S.C. § 704, and California has not identified a "final" agency action on the part of EPA. Agency action is "final" only if it (1) "consummat[es] … the agency's decisionmaking process," and (2) determines legal "rights or obligations" or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation modified). The touchstone of the second prong is whether the action has "direct and appreciable legal consequences." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016).

California invents two "actions" it alleges are subject to review under the APA, but neither determines any rights or obligations, nor do legal consequences flow from either. First,

24

Plaintiffs allege that EPA "purported[ly] reclassifi[ed]" the waivers from orders to rules. Compl. ¶ 97. Second, Plaintiffs claim that EPA's submission of the waivers in a report to Congress qualifies as final agency action. *Id.*

EPA's alleged "reclassification" and submission of a report to Congress are not "final" agency actions under *Bennett* and *Dalton v. Specter*, 511 U.S. 462 (1994). In *Dalton*, a statute required the Secretary of Defense to submit recommendations for the closure of military bases to a commission, which would submit a report to the President, who could approve or disapprove those recommendations. 511 U.S. at 465. The plaintiffs challenged these recommendations under the APA, but the Court held that they were not final agency actions. *Id.* at 469. While the recommendations were necessary steps in the process, the *final* action was taken by the President: "Without the President's approval, no bases are closed under the Act …." *Id.* at 470. The Court acknowledged that the President's authority was constrained by the earlier action in that he could not "pick and choose among bases" to close, but this limitation was "immaterial." *Id.* "What is crucial is the fact that the President, not the Commission, takes the final action that affects the military installations." *Id.* (alterations and quotation marks omitted).

So too here. EPA's determination and submission of the waivers to Congress "carr[y] no direct consequences" for Plaintiffs. *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992) (necessary step by agency not final action when only subsequent presidential action has direct legal consequences); *see also Sierra Club v. EPA*, 955 F.3d 56, 63 (D.C. Cir. 2020) (citing *Hawkes'* focus on "how agency pronouncements actually affect" entities); *Racing Enthusiasts & Suppliers Coal. v. EPA*, 45 F.4th 353, 358 (D.C. Cir. 2022) (stating that there are no concrete consequences "where an agency action has no independent legal force"). Even if EPA's purported "reclassification" and submission here could lead to disapproval resolutions by

25

Congress, they still do not qualify as reviewable final agency actions. The commission in *Dalton* played a critical role in identifying what bases to close but because its recommendations did not, without more, close a single base, they were not final agency actions. *See* 511 U.S. at 470. And California recognizes that further administrative action is necessary if EPA intends to withdraw part or all of the waivers. Thus, EPA's "reclassification" and submission, without more, have no legal consequences for the waivers at issue in this case.

California's assertion that the determination deprives the State of the right to notice before EPA takes any administrative action, Dkt. No. 13-1 at 17-18, is unavailing for two reasons. First, it assumes that California is correct on the merits of the State's claim that EPA was wrong in determining that the preemption waivers should have been submitted to Congress under the CRA. As stated above, that claim is precluded under the CRA. *Second*, California provides no support for the position that the State would not be afforded notice in compliance with § 209(b) of the Clean Air Act or the APA in the event EPA initiated any action to withdraw any of the preemption waivers at issue here.

Equally meritless is California's assertion that EPA's determination and submissions to Congress "deprive[s]" it of a "'safe harbor' afforded to waivers as orders by their exclusion from the CRA." Dkt. No. 13-1 at 18. Congress's freedom to do as it pleased before or after EPA acted stands in sharp contrast with agency actions deemed to be final. In *Hawkes*, certain Clean Water Act determinations about particular pieces of property were held to be final agency actions because they imposed legal consequences. 578 U.S. at 598-600. That was because the Corps of Engineers and EPA agreed to be bound by the determination, and because those determinations either provide or deny property owners a safe harbor from civil Clean Water Act suits brought by the government. *See id*. No such effects followed from the disputed EPA actions here. And

26

unlike the determinations in *Hawkes*, 578 U.S. at 598-99, EPA's alleged "reclassification" did

not limit or expand California's liability in any way. Thus, California's attempt to shoehorn this

case into the framework of *Hawkes* fails: EPA's actions neither created nor denied California a

"safe harbor."

In sum, even if the lack of standing or § 805 of the CRA did not warrant dismissal,

California's APA claims would have to be dismissed for lack of final agency action.

## II.    Plaintiff has not demonstrated irreparable injury absent the requested relief.

As this Court has noted, "[t]he D.C. Circuit 'has set a high standard for irreparable injury'

to warrant preliminary injunctions." *Hisp. Affs. Project v. Perez*, 141 F. Supp. 3d 60, 68 (D.D.C.

2015) (citing *Mexichem Specialty Resins, Inc. v. E.P.A.,* 787 F.3d 544, 555 (D.C. Cir.

2015) (internal citation omitted). In order to be considered "irreparable," the asserted injury

"must be 'both certain and great,' 'actual and not theoretical,' 'beyond remediation,' and 'of

such *imminence* that there is a clear and present need for equitable relief to prevent irreparable

harm.'" *Id.* (citing *Mexichem Specialty Resins*, 787 F.3d at 555). The plaintiff must show "the

alleged harm will directly result from the action which the [plaintiff] seeks to enjoin," as "the

court must decide whether the harm will *in fact* occur." *Wis. Gas Co. v. Fed. Energy Regul.

Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam); *see also Winter*, 555 U.S. at 22

(rejecting a standard based on the "possibility" of irreparable harm as "too lenient").

Moreover, the D.C. Circuit has made clear that preliminary relief generally "should not

work to give a party essentially the full relief [it] seeks on the merits." *Dorfmann v. Boozer*, 414

F.2d 1168, 1173 n.13 (D.C. Cir. 1969). But California's motion would do just that, by asking that

the Court order that EPA (1) "withdraw or correct" its determination that the waivers were

reportable as rules under the CRA, (2) "withdraw or correct" its submissions to Congress under

the CRA, and (3) is enjoined from making any determination as to agency actions not at issue in this case. *See* Dkt. No. 13-30 at 1-2.

California's claims as to irreparable harm fall far short of the standard. The State's first argument merely repeats its assertions that EPA's actions are designed to "smooth two pathways" of either congressional action or administrative action, and that this is a "grave matter." Dkt. No. 13-1 at 28-29. In making this argument, the State offers no facts to show certain, great, or irreparable harm. And California's reliance on this District Court's decision in *Akiachak Native Community v. Jewell*, 995 F. Supp. 2d 7, 17 (D.D.C. 2014), is misplaced. There, the court recognized that the Secretary of Interior could *immediately* take land into trust in Alaska pursuant to the governing trust regulations. *Id.* No such claim can be made here, as California recognizes that the waivers at issue will become invalid only through either future legislation or administrative action.

California's second argument as to irreparable harm is that the State "must now prepare *for the possibility* that the underlying regulations *may become* unenforceable." Dkt. No. 13-1 at 30 (emphasis added). Setting aside whether the mere possibility that one or more of the waivers could be invalidated at some point in the future requires the State to take any particular action now, neither California's memorandum nor its single declarant provides *any* facts to show what it or will be doing and why that would show irreparable harm. The State vaguely alludes to years-long "processes" and "monetary costs," *id.* at 31, but provides no specifics whatsoever to support these assertions. *See also* Dkt. No. 13-2 (Hicks Decl.) at ¶¶ 20-22 (asserting the State must begin now on work that will take three years to develop but providing no facts or detail as to what work would be performed or how it would be unusable for future purposes). As for California's vague reference to "sanctions, such as the loss of highway funds," *see* Dkt. No. 13-1

28

at 31; Hicks Decl. ¶ 14, the State makes no effort to explain or quantify such losses. *Cf. FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 390-91 (2024) (finding lack of record support for claims of injuries doctors asserted they would suffer as a result of regulations). The State's speculation that these self-inflicted costs are necessary to protect against the hypothetical conduct by EPA or a third party (Congress) only underscores that the State cannot show that its claimed injury is both "certainly impending" and fairly traceable to the challenged rule. *See Clapper,* 568 U.S. at 410.

The State last asserts harm in the form of EPA's actions "making it more difficult" for the State's air agency to reduce pollution and protect the State's citizens and natural resources. Dkt. No. 13-1 at 31. The D.C. Circuit has recognized that an organization can be harmed if the "actions taken by [the defendant] have 'perceptibly impaired' the [organization's] programs." *League of Women Voters v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016) (internal citations omitted). But as the Supreme Court has recognized, an organizational plaintiff asserting such an impairment must show "far more than simply a setback" to the organization's interests. *All. for Hippocratic Med.*, 602 U.S. at 394 (internal quotation and citation omitted). California's declarant broadly asserts that "[l]eft unchecked," EPA's actions will decrease confidence in the State air agency and result in an increase in some communications with some stakeholders and a decrease in communications with other stakeholders. Hicks Decl. ¶¶ 23-24. These statements provide no details to support these predictions and do not show "perceptible impairment" in the State agency's ability to carry out its mission. *League of Women Voters*, 838 F.3d at 8. In asserting that EPA's action "smooths … two pathways" to invalidation of the preemption waivers, Dkt. No. 13-2 at 2, California acknowledges that additional actions would have to occur before the waivers are legally impacted.

29

In sum, California fails to adequately demonstrate *irreparable* harm to the State as a result of the challenged EPA actions and is not entitled to preliminary relief.

## III.      The remaining factors weigh against the requested preliminary relief.

Because the State has not shown imminent irreparable harm or a likelihood of success on the merits, the Court need not address the final two *Winter* factors. Even so, the balance of equities and public interest tip decisively in EPA's favor. In assessing these factors, courts "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). Where a "movant seeks to enjoin the government, the final two factors merge 'because the government's interest is the public interest.'" *N. Am.'s Bldg. Trades Unions v. Dep't of Def.*, 783 F. Supp. 3d 290, 314 (D.D.C. 2025) (quoting *Pursuing Am.'s Greatness*, 831 F.3d at 511).

As one court has explained, "governmental action pursuant to a statutory scheme is 'taken in the public interest.'" *Aid for Women v. Foulston*, 441 F.3d 1101, 1115 n.15 (10th Cir. 2006); *see also K.G. ex rel. Garrido v. Dudek*, 839 F. Supp. 2d 1254, 1279 (S.D. Fla. 2011). Here, California is asking the Court to enjoin EPA from complying with a statute meant to facilitate review of administrative actions by the democratically elected Congress. Thus, any judicial order to circumscribe EPA's actions under the CRA run contrary to the public interest. Indeed, as the D.C. Circuit recently reiterated, the United States is always "irreparably harmed by an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *Kingdom v. Trump*, No. 26-5181, 2026 WL 1905418, at *2 (D.C. Cir. June 17, 2026) (per curiam) (citations omitted).

It is also in the public interest for the Court to observe jurisdictional limits on courts, including the doctrine of standing and preclusion of review under the CRA. As the D.C. Circuit has noted, the public interest favors limiting federal courts to the jurisdiction and remedies

provided by Congress. *See Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) ("When a court concludes that the Executive Branch has acted unlawfully, the answer is not for the court to exceed its power, too.").

For these reasons, the balance of the harms and the public interest also weigh against preliminary injunctive relief.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the complaint and deny Plaintiff's motion for preliminary relief.

Dated: July 10, 2026                                    Respectfully submitted,

|  |  |
|---|---|
|  | ADAM R.F. GUSTAFSON |
|  | *Principal Deputy Assistant Attorney General* |
| BRETT A. SHUMATE | ROBERT N. STANDER (DC Bar #1028454) |
| Assistant Attorney General | *Deputy Assistant Attorney General* |
| Civil Division |  |
|  |  |
| STEPHEN M. PEZZI (DC Bar #995500) |  /s/ Martha C. Mann |
| Chief Litigation Counsel | MARTHA C. MANN (FL Bar #155950) |
| United States Department of Justice | United States Department of Justice |
| Civil Division, Federal Programs Branch | Environment and Natural Resources |
| 1100 L Street NW | Division |
| Washington, DC 20005 | P.O. Box 7611 |
| stephen.pezzi@usdoj.gov | Washington, D.C. 20044 |
| (202) 305-8576 | (202) 717-7067 (Stander) |
|  | (202) 353-5900 (Mann) |
|  | robert.stander@usdoj.gov |
|  | martha.mann@usdoj.gov |
|  |  |
|  | *Attorneys for Defendants* |

31