**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| STATE OF CALIFORNIA,<br><br>        *Plaintiff*,<br><br>   v.<br><br>LEE ZELDIN, in his official capacity as U.S. Environmental Protection Agency Administrator, and U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>        *Defendants*. | Case No. 26-2185 |

**MEMORANDUM OF LAW IN SUPPORT OF AMERICAN FUEL &
PETROCHEMICAL MANUFACTURERS AND AMERICAN PETROLEUM
INSTITUTE'S MOTION TO INTERVENE AS DEFENDANTS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 2

ARGUMENT............................................................................................................................... 5

    A. AFPM and API are entitled to intervene as of right....................................................... 5

    B. In the alternative, AFPM and API should be granted permissive intervention. ............. 9

CONCLUSION........................................................................................................................... 10

i

**INTRODUCTION**

This case concerns California's effort to stop Congress from reviewing EPA actions that authorize state vehicle-emissions programs with nationwide consequences for fuel markets. EPA has already transmitted to Congress for review under the Congressional Review Act ("CRA"), 5 U.S.C. §§ 801–808, four waivers. Those waivers authorized California and other States that opt into California's standards under Clean Air Act ("CAA") § 177 to adopt and enforce increasingly stringent greenhouse gas and zero-tailpipe emission vehicle sales requirements. *See* 74 Fed. Reg. 32744 (July 8, 2009); 78 Fed. Reg. 2112 (Jan. 9, 2013); 87 Fed. Reg. 14332 (Mar. 14, 2022); 90 Fed. Reg. 640 (Jan. 6, 2025).[1] Those standards reduce nationwide demand for gasoline and diesel fuel, harming fuel producers, refiners, distributors, and retailers.

The resulting economic consequences of California's desired acceleration from new internal-combustion-engine vehicles to zero-tailpipe emission vehicles fall directly on American Fuel & Petrochemical Manufacturers ("AFPM") and American Petroleum Institute's ("API") (jointly, "Proposed Intervenors") members.

Proposed Intervenors and their members represent fuel producers, refiners, distributors, and retailers that operate throughout the United States. Their members invest billions of dollars in infrastructure, supply transportation fuels nationwide, and rely on a stable and durable federal regulatory framework governing vehicle emissions. The Supreme Court recently recognized that California's vehicle-emissions programs inflict a "classic monetary injury" on fuel producers by reducing demand for their products. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 117–20 (2025). Those same economic interests are implicated here because California seeks to prevent

---

[1] The Small Off-Road Engine rules impose increasingly stringent emissions restrictions on small gasoline-powered engines. Unlike the vehicle rules, California maintains that the Small Off-Road Engine regulation cannot be adopted and enforced by other states.

1

Congress from reviewing EPA actions that authorize regulations designed to reduce demand for liquid fuels.

Defendants cannot be expected to represent the distinct commercial interests of Proposed Intervenors' and their members. Defendants speak for the United States as a whole and must balance institutional and policy considerations. Proposed Intervenors speak for their members whose businesses are directly affected by the continued applicability of California's regulations. Proposed Intervenors seek to protect their members' concrete economic interests in ensuring that Congress may complete its review of agency actions that authorize state regulatory programs injuring their members, and to preserve the uniform national framework established by the CAA.[2]

Rule 24 exists precisely for this circumstance. Because this Motion is timely, Proposed Intervenors possess a substantial legally protectable interest that will be impaired by the disposition of this action, and no existing party adequately represents that interest, intervention as of right should be granted. Alternatively, Proposed Intervenors should be granted permissive intervention.

## BACKGROUND

Decades ago, Congress established a uniform federal framework for regulating motor vehicle emissions under the CAA, reserving authority over new motor vehicle standards to the federal government. *See* 42 U.S.C. § 7543(a). The CAA is the nation's primary law for controlling air pollution. It charges EPA with setting national air quality standards to protect public health and welfare, *see id.* § 7409, and directs EPA to regulate emissions of pollutants from both stationary sources, like power plants and factories, and mobile sources, like cars and trucks. *See id.* §§ 7411, 7521. Congress explicitly directed EPA to set the standards for new vehicles and engines and

---

[2] Counsel for Proposed Intervenors conferred with counsel for the Parties on this motion. California takes no position, and reserves the right to oppose or otherwise respond. EPA takes no position the proposed Motion to Intervene.

prohibited states from creating their own, with one narrow exception. *See id.* §§ 7410, 7543(a). Congress allowed California, the only state with vehicle emissions standards that predated the CAA, to apply for a waiver to enforce its standards if certain conditions are met. *See id.* § 7543(b). And if California receives a waiver for its standards, other states may adopt the California standards in lieu of EPA's, but such standards must be identical to the California standards for which a waiver has been granted for such model year. *Id.* § 7507.

Although California can request a waiver of this federal preemption under the CAA, such waivers remain exceptions to the statutory rule and must be explicitly approved by EPA; waivers are only approved when strict statutory criteria are met, such as confirmation the standards are needed to "meet compelling and extraordinary conditions." *Id.* § 7543(b). Between July 2009 and January 2025, EPA issued multiple waivers exempting California from federal preemption and permitting it to enforce sweeping new regulatory programs. *See* 74 Fed. Reg. 32744 (July 8, 2009); 78 Fed. Reg. 2112 (Jan. 9, 2013); 87 Fed. Reg. 14332 (Mar. 14, 2022); 90 Fed. Reg. 640 (Jan. 6, 2025).

These waivers, and the state regulations they authorize, have in many cases established de facto national standards: Several other states have adopted many of California's waivers, exporting California's policies beyond its borders and coercing nationwide compliance in the absence of federal legislation or uniform federal rulemaking. *See* Dkt. 1 ¶ 32 n.8. Nonetheless, until now, EPA has not submitted its rules authorizing the waivers to Congress for CRA review.

On June 12, 2026, EPA determined that it should submit four California waivers to Congress under the CRA. *See* Press Release, EPA, *EPA Fulfills Statutory Obligation by Transmitting Four California Waiver Rules to Congress* at 1 (June 12, 2026), https://perma.cc/8FAP-4H2R. Congress enacted the CRA in 1996 to strengthen its control over

federal agency rulemaking. The CRA empowers Congress to review and overturn new federal regulations by passing a joint resolution of disapproval. *See* 5 U.S.C. §§ 801, 802 (allowing Congress to review rules within 60 days and to disapprove of those rules by a simple majority vote). Once Congress passes such a resolution and the President signs it, the rule has no legal effect and cannot be "reissued in substantially the same form" without new statutory authority. *See id.* § 801(b)(2).

The CRA requires federal agencies to submit covered rules to both Congress and the Government Accountability Office. *See id.* § 801(a). Once received, Congress then has 60 session days to pass a "joint resolution of disapproval" for the President's signature. *Id.* §§ 801(a)(3), (d), 802(a). This allows Congress to check regulations it views as unlawful or inconsistent with public policy. If Congress takes no action, the CRA does not impose the statutory consequences that follow from enactment of a joint resolution of disapproval. *See id.* §§ 801(a)(3), (b)(1) (conditioning disapproval on affirmative action by Congress). But if Congress passes a joint resolution and the President signs it, then the rule "shall not take effect (or continue)," and "may not be reissued in substantially the same form . . . unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule." *Id.* § 801(b)(1)–(2).

California now seeks an injunction requiring EPA to somehow retract waiver submissions that EPA has already transmitted to Congress for CRA review. *See* Dkt. 1. California alleges that EPA violated the Administrative Procedure Act and acted in contravention or in "excess" of its authority. *See generally id.*

Proposed Intervenors move to intervene in this case to protect their members' interests.

**ARGUMENT**

**A.  AFPM and API are entitled to intervene as of right.**

Proposed Intervenors easily satisfy all four requirements under Rule 24(a). AFPM and API have a sufficient interest in this litigation that would be directly impaired if excluded, have timely sought intervention, and cannot rely on existing parties to adequately represent their distinct economic and regulatory interests.

First, the motion is timely. In determining whether a motion to intervene is timely, courts consider the length of time since the case was filed, the potential prejudice to existing parties, the purpose of the proposed intervention, and whether intervention is necessary to protect the proposed intervenor's rights. *See WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 3 (D.D.C. 2017). Timeliness is not measured by any fixed deadline. Rather, it "'is to be judged in consideration of all the circumstances'" as related to the proceedings in which an applicant seeks to intervene. *See Love v. Vilsack*, 304 F.R.D. 85, 91 (D.D.C. 2014) (quoting *Smoke v. Norton,* 252 F.3d 468, 471 (D.C. Cir. 2001)). Consistent with that flexible standard, courts in this Circuit have found motions to intervene timely even when filed months after the complaint. *See, e.g.*, *Campaign Legal Ctr. v. Fed. Election Comm'n*, 334 F.R.D. 1, 6 (D.D.C. 2019) ("The application is certainly timely, since Intervenors moved to intervene less than two months after the plaintiffs filed their complaint." (citation modified)).

This motion comes just a few weeks after the complaint was filed, at an early stage of the case, and no party will be prejudiced. In fact, Proposed Intervenors submit this Motion along with a Proposed Opposition to the Motion for Preliminary Injunction on the same day the Opposition of the Defendants is due. [3]

---

[3] Although Federal Rule of Civil Procedure 24(c) contemplates that a motion to intervene be accompanied by a pleading, courts in this Circuit apply that requirement flexibly. Where the

Second, Proposed Intervenors have a significantly protectable interest. The outcome of this lawsuit may directly affect Proposed Intervenors' members, who manufacture fuels, operate refineries, and distribute and sell fuel nationwide. EPA has transmitted to Congress waivers that authorize California regulatory programs with substantial nationwide market consequences for liquid fuels. Ultimately, California seeks to prevent Congress from reviewing these waivers. That remedy would impair Proposed Intervenors' members' concrete economic interest in congressional review of agency actions that authorize regulatory programs designed to reduce demand for gasoline and diesel fuel.

The Supreme Court recently confirmed that these are precisely the types of interests protected under Article III. In *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 110 (2025), the Court held that fuel producers challenging California's vehicle emissions regulations alleged a "classic monetary injury" because those regulations are designed to reduce demand for liquid fuels. *Id.* at 117–20; *see id.* at 117 ("[T]he fuel producers persuasively contend that invalidating California's regulations would likely mean more gasoline-powered automobiles, which would in turn likely mean more sales of gasoline and other liquid fuels by the fuel producers."). The Court explained that "commonsense economic inferences" establish that regulations requiring greater sales of electric vehicles predictably reduce gasoline-powered vehicle sales and, in turn, reduce sales of gasoline and other liquid fuels. *Id.* at 120. The Court further recognized that these types of

intervenor's position is apparent and no party is prejudiced, courts have permitted intervenors to file a substantive motion, including opposition to a preliminary injunction, rather than an answer, or to defer filing a responsive pleading altogether. *See Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1236 n.19 (D.C. Cir. 2004); *McCarthy v. Kleindienst*, 741 F.2d 1406, 1409 (D.C. Cir. 1984); *Oceans v. DOI*, 2024 WL 1556005, at *4–5 (D.D.C. Apr. 10, 2024); *MGM Glob. Resorts Dev., LLC v. DOI*, 2020 WL 5545496, at *6 (D.D.C. Sept. 16, 2020). Because the parties are presently briefing Plaintiff's Motion for Preliminary Injunction, Proposed Intervenors submit an Opposition to Plaintiff's Motion for Preliminary Injunction with their Motion to Intervene.

regulatory schemes are designed precisely to reduce liquid fuel sales, creating a direct and concrete economic injury to fuel producers. *See id.* at 118 (noting that it was "an odd argument" for California to advance that the regulations would not affect fuel producers and observing that the "whole point of the regulations is to increase the number of electric vehicles in the new automobile market beyond what consumers would otherwise demand and what automakers would otherwise manufacture and sell").[4] That injury explains why Proposed Intervenors have a concrete stake in opposing a remedy that seeks to prevent Congress from reviewing the agency actions that authorize similar electric vehicle mandates.

These classic monetary injuries, sufficient to satisfy standing, go a long way to show satisfaction of Rule 24(a)'s protectable interest requirement. The D.C. Circuit has held that a proposed intervenor "need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a)." *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998). Because Proposed Intervenors' members have concrete economic interests affected by the waiver actions submitted to Congress, Proposed Intervenors have a significantly protectable interest in opposing relief that seeks to prevent Congress from reviewing those actions.

Third, the outcome of this litigation threatens to impair Proposed Intervenors' interests. California asks this Court to require EPA to somehow withdraw submissions already made to Congress under the CRA. Stated differently, California seeks to prevent Congress from reviewing agency actions that authorize California's regulatory programs that are designed to reduce demand

---

[4] Proposed Intervenors likewise have associational standing because at least one member would have standing in its own right, the interests asserted are germane to Proposed Intervenors' organizational purposes, and neither the claims nor the requested relief require participation by individual members. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also* Moody Decl. ¶¶ 3-6, 10-11; Hupman Decl. ¶¶ 3-5, 9-10.

for gasoline and diesel fuel by requiring increased sales of electric vehicles. As the Supreme Court explained in *Diamond Alternative Energy*, those programs predictably reduce sales of liquid fuels and thereby inflict concrete economic injury on fuel producers. 606 U.S. at 117–20. The requested injunction would therefore impair Proposed Intervenors' interest in preserving Congress's opportunity to disapprove agency actions that authorize regulatory programs injuring Proposed Intervenors' members.

Fourth, the current Defendants do not adequately represent Proposed Intervenors' members' narrow and concrete business interests. As an initial matter, the burden of demonstrating that there is no adequate representation of a party seeking intervention is "not onerous." *Earthworks v. DOI*, 2010 WL 3063143, at \*2 (D.D.C. Aug. 3, 2010) (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986)). Inadequacy of representation "is satisfied if the [party] shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

Defendants' representation is inadequate because, as courts in this Circuit and around the country have recognized, the Government must represent the broad public interest, including institutional interests, while Proposed Intervenors represent the more narrow, parochial economic and legal interests of their members. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) ("[G]overnmental entities do not adequately represent the interests of aspiring intervenors."); *County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 48 (D.D.C. 2007) (same); *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973–74 (3d Cir. 1998); *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (collecting cases), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011);

*Sierra Club v. Espy*, 18 F.3d 1202, 1207–08 (5th Cir. 1994). EPA must balance a broad range of policy considerations and may adopt litigation positions designed to preserve administrative discretion rather than prioritizing the interests of Proposed Intervenors' members or the broader regulated community. *See Dimond*, 792 F.2d at 192–93 (EPA cannot advance the "narrower interest" of individual companies or facilities "at the expense of its representation of the general public interest.").

In addition, there is a significant risk that Defendants may reverse their position in this particular case, making them adverse to Proposed Intervenors. Defendants have a documented history of reversing their position regarding EPA waivers across different administrations. *See Diamond Alt. Energy*, 606 U.S. at 106–07 ("EPA has repeatedly altered its legal position on whether the Clean Air Act authorizes California regulations targeting greenhouse-gas emissions from new motor vehicles."). Given the intensely political nature of environmental policy and the specific history of these waivers, there is a distinct and non-speculative risk that Defendants could in the future decline to defend EPA's authority to transmit the waivers to Congress under the CRA.

AFPM and API are entitled to intervene as of right because they easily satisfy all four requirements under Rule 24(a).

**B.      In the alternative, AFPM and API should be granted permissive intervention.**

Proposed Intervenors also qualify for permissive intervention under Rule 24(b). First, Proposed Intervenors have a claim or defense that shares with the main action a common question of law or fact. Proposed Intervenors seek to assert defenses aligned with Defendants regarding EPA's authority to submit the waiver actions to Congress for review under the CRA and the impropriety of California's requested injunction requiring EPA to retract those submissions. Second, the motion here is timely for the reasons explained above. *See supra* at 5. Third, all relevant discretionary considerations strongly support permissive intervention. Granting

9

intervention here will promote fairness, avoid future duplicative litigation, and ensure that Proposed Intervenors' specialized economic and technical expertise is presented to the Court. Moreover, Proposed Intervenors' prompt application ensures that intervention will not delay the proceedings or prejudice any party. *See McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970) (permissive intervention should be granted "where no one would be hurt and greater justice would be attained" (citation omitted)).

Thus, if the Court declines to grant intervention as of right, it should at minimum permit AFPM and API to intervene permissively to defend EPA's submission of the waivers to Congress and to protect Proposed Intervenors' members' concrete interests.

## CONCLUSION

The Motion to Intervene should be granted.

Dated: July 10, 2026

Respectfully submitted,

*/s/ Michael B. Schon*
Michael B. Schon
mike@lehotskycohn.com
LEHOTSKY COHN LLP
200 Massachusetts Avenue, NW
 Suite 700
Washington, DC 20001
Tel.: (512) 693-8350
Fax: (512) 727-4755

Katherine C. Yarger* (CO 40387)
LEHOTSKY COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Email: katie@lehotskycohn.com
Tel.: (512) 693-8350
Fax: (512) 727-4755

*Counsel for American Fuel & Petrochemical Manufacturers and American Petroleum Institute*

* Application for admission to D.D.C. forthcoming.

10

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with Local Civil Rule 7(e) because it does not exceed 45 pages.

Dated: July 10, 2026                                Respectfully submitted,

                                                    */s/ Michael B. Schon*
                                                    Michael B. Schon

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2026, I electronically filed the foregoing document using the CM/ECF system. Service was accomplished by the CM/ECF system.


Dated: July 10, 2026                              Respectfully submitted,

                                                  */s/ Michael B. Schon*
                                                  Michael B. Schon