**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| STATE OF CALIFORNIA,<br><br>       *Plaintiff,*<br><br>  v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, *and* LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency,<br><br>       *Defendants.* | Case No. 1:26-cv-02185-BAH |

**PLAINTIFF'S REPLY IN SUPPORT OF PRELIMINARY INJUNCTION MOTION
AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................2

    I.     The CRA Does Not Bar Judicial Review of California's Claims............................2

    A.    This Court Must Exercise Its Own Judgment to Interpret the CRA .......................3

    B.    The Reclassifications and Submissions Are Not Conduct Under the CRA.............4

        1.    None of EPA's Conduct Is "Under the CRA" .............................................5

        2.    EPA's Bootstrapping Argument Is Preposterous........................................5

    C.    EPA's Remaining Arguments Fail to Show that Section 805 Applies Here ...........8

        1.    Judicial Review of EPA's Reclassifications and Submissions Is
            Not "Inextricably Intertwined" With Unreviewable Subject Matter ...........8

        2.    Congress Did Not Preclude Review of EPA's Reclassifications and
            Submissions When It Enacted Resolutions in 2025 ................................10

    II.    California Has Stated an APA Claim on Which It Is Likely to Succeed...............12

    A.    The Reclassifications Are Final Agency Actions ....................................................12

    B.    The Submissions Are Also Final Agency Actions ..................................................14

    III.   California Has Stated an *Ultra Vires* Claim on Which It Is Likely to
        Succeed ...................................................................................................................15

    IV.   California Is Already Being Irreparably Injured by EPA's Actions and Has
        Alleged Facts More than Sufficient for Standing ..................................................16

    A.    California Has Demonstrated Irreparable Injury .....................................................17

    B.    California Has Alleged Facts Sufficient to Support Article III Standing ..............20

    V.    The Balancing of the Equities Supports Granting the Requested
        Preliminary Injunction ...........................................................................................24

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

**Page**

CASES

*A.L.A. Schechter Poultry Corp. v. United States*
295 U.S. 495 (1935)........................................................................................................6

*AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*
766 F. Supp. 3d 74 (D.D.C. 2025)................................................................................19

*Akiachak Native Cmty. v. Jewell*
995 F. Supp. 2d 7 (D.D.C 2014)...................................................................................18

*Am. Wild Horse Campaign v. Bernhardt*
442 F. Supp. 3d 127 (D.D.C. 2020)..............................................................................12

*Amgen, Inc. v. Smith*
357 F.3d 103 (D.C. Cir. 2004)........................................................................................8

*Ardelyx, Inc. v. Becerra*
757 F. Supp. 3d 37 (D.D.C. 2024)..................................................................................5

*Ardelyx, Inc. v. Kennedy*
No. 24-5290, 2026 WL 1839261 (D.C. Cir. June 26, 2026) ...........................4, 5, 8

*Bennett v. Spear*
520 U.S. 154 (1997)................................................................................................12, 14

*Brownback v. King*
592 U.S. 209 (2021)......................................................................................................3, 9

*Chamber of Com. v. Reich*
74 F.3d 1322 (D.C. Cir. 1996)......................................................................................16

*Chaplaincy of Full Gospel Churches v. England*
454 F.3d 290 (D.C. Cir. 2006)......................................................................................17

*Ciox Health, LLC v. Azar*
435 F. Supp. 3d 30 (D.D.C. 2020)................................................................................23

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983)..........................................................................................................23

*COMSAT Corp. v. FCC*
114 F.3d 223 (D.C. Cir. 1997)........................................................................................5

**TABLE OF AUTHORITIES**
(continued)

Page

*Ctr. for Biological Diversity v. Bernhardt*
  946 F.3d 553 (9th Cir. 2019) ...................................................................................7

*Ctr. for Regul. Reasonableness v. EPA* (*CRR*)
  849 F.3d 453 (2017)...................................................................................................7

*Dalton v. Specter*
  511 U.S. 462 (1994)..................................................................................................14

*DCH Reg'l Med. Ctr. v. Azar*
  925 F.3d 503 (D.C. Cir. 2019) ...................................................................................9

*Diamond Alt. Energy, LLC v. EPA*
  606 U.S. 100 (2025)..................................................................................................21

*District of Columbia v. Heller*
  554 U.S. 570 (2008)..................................................................................................10

*Dorfmann v. Boozer*
  414 F.2d 1168 (D.C. Cir. 1969)...............................................................................16

*Elec. Priv. Info. Ctr. v. Dep't of Just.*
  15 F. Supp. 3d 32 (D.D.C. 2014) .............................................................................24

*FCC v. Fox Television Stations, Inc.*
  556 U.S. 502 (2009)..................................................................................................16

*FDA v. All. for Hippocratic Med.*
  602 U.S. 367 (2024)..................................................................................................21

*Food & Water Watch, Inc. v. Vilsack*
  79 F. Supp. 3d 174 (D.D.C. 2015)............................................................................22

*Franklin v. Massachusetts*
  505 U.S. 788 (1992)..................................................................................................14

*Garcia v. San Antonio Metro. Transit Auth.*
  469 U.S. 528 (1985)..................................................................................................17

*Griffith v. Fed. Lab. Relations Auth.*
  842 F.2d 487 (D.C. Cir. 1988)..................................................................................16

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Heckler v. Ringer*
    466 U.S. 602 (1984)............................................................................................9

*In re Navy Chaplaincy*
    697 F.3d 1171 (D.C. Cir. 2012)..................................................................22, 24

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*
    928 F.3d 42 (D.C. Cir. 2019)......................................................................17, 20

*Kan. Nat. Res. Coal. v. DOI*
    971 F.3d 1222 (10th Cir. 2020) ........................................................................6

*League of Women Voters of U.S. v. Newby*
    838 F.3d 1 (D.C. Cir. 2016).............................................................18, 20, 25

*Loper Bright Enters. v. Raimondo*
    603 U.S. 369 (2024)...........................................................................................4

*McIntosh v. United States*
    601 U.S. 330 (2024)...........................................................................................7

*Miot v. Trump*
    No. 26-5050, 2026 WL 659420 (D.C. Cir. Mar. 6, 2026) .......................................25

*Montanans for Multiple Use v. Barbouletos*
    568 F.3d 225 (D.C. Cir. 2009)........................................................................6, 7

*Mullin v. Doe*
    Nos. 25-1083 and 25-1084, 2026 WL 1825840 (U.S. June 25, 2026) ........................... *passim*

*Narragansett Indian Tribe v. McMaster*
    176 F.4th 671 (D.C. Cir. 2026)........................................................................13

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*
    583 U.S. 109 (2018).....................................................................................3, 5, 6

*Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*
    26 F.4th 960 (D.C. Cir. 2022).........................................................................16

*NB ex rel. Peacock v. District of Columbia*
    682 F.3d 77 (D.C. Cir. 2012).....................................................................17, 24

**TABLE OF AUTHORITIES**
(continued)

Page

*New Jersey v EPA*
  989 F.3d 1038 (D.C. Cir. 2021)..............................................................................20, 23

*Nippon Shinyaku Co., Ltd. v. Iancu*
  369 F. Supp. 3d 226 (D.D.C. 2019)...............................................................................15

*Nuclear Regul. Comm'n v. Texas*
  605 U.S. 665 (2025).......................................................................................................16

*Nw. Immigrant Rts. Project v. United States Citizenship & Immigr. Servs.*
  496 F. Supp. 3d 31 (D.D.C. 2020)...........................................................................19, 20

*Nyunt v. Chairman, Broad. Bd. of Governors*
  589 F.3d 445 (D.C. Cir. 2009)......................................................................................15

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*
  513 F.3d 234 (D.C. Cir. 2008)......................................................................................21

*Racing Enthusiasts & Suppliers Coal. v. EPA*
  45 F.4th 353 (D.C. Cir. 2022).......................................................................................14

*Ramey v. Bowsher*
  9 F.3d 133 (D.C. Cir. 1993)............................................................................................3

*Sierra Club v. EPA*
  955 F.3d 56 (D.C. Cir. 2020).........................................................................................14

*Singh v. Carter*
  185 F. Supp. 3d 11 (D.D.C. 2016).................................................................................24

*Trump v. Cook*
  No. 25A312, 2026 WL 1855613 (Jun. 29, 2026) .........................................................15

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*
  578 U.S. 590 (2016)..........................................................................................13, 14, 15

*Union of Concerned Scientists v. NHTSA*
  No. 19-1230, 2024 WL 3544045 (D.C. Cir. 2024)........................................................13

*Wash. All. of Tech. Workers v. DHS*
  892 F.3d 332 (D.C. Cir. 2018)........................................................................................7

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Whitman-Walker Clinic, Inc. v. DHHS*
    485 F. Supp. 3d 1 (D.D.C. 2020)........................................................................23

*Winter v. Nat. Res. Def. Council*
    555 U.S. 7 (2008)......................................................................................24, 25

**FEDERAL STATUTES**

1 U.S.C.
    § 102–03..............................................................................................10

5 U.S.C.
    § 558(c) ...............................................................................12, 13, 18, 21
    § 706(2)(C)............................................................................................8
    § 801(c)(2) ............................................................................................6
    § 802(g)(1) ............................................................................................4
    § 804(3)..............................................................................................5, 9
    § 804(3)(A) ..........................................................................................11
    § 805...................................................................................... *passim*
    § 806(a) ..............................................................................................10

8 U.S.C.
    § 1254a(b)(5)(A) .....................................................................................3

33 U.S.C.
    § 1369(b)(1)(E) ......................................................................................3

42 U.S.C.
    § 5911(b)............................................................................................10
    § 7509(b)............................................................................................19

139 Stat. 65, 66, 67 (June 12, 2025) ........................................................................10

**CONGRESSIONAL RECORD**

171 Cong. Rec. S3087 ........................................................................................13

**OTHER AUTHORITIES**

A. Scalia & B. Garner, READING LAW 127 (2012) .......................................................10

**INTRODUCTION**

The United States Environmental Protection Agency (EPA) granted four preemption waivers to California—as adjudicatory licensing *orders*—between 2009 and 2024. Now, in 2026, EPA says it has reclassified those orders into *rules*, without any process or explanation. The agency cannot, and does not, defend these actions as lawful. And these actions have resulted in irreparable injury. As EPA intended, its Reclassifications have escalated the federal government's threats to California's authority to enforce its own laws, requiring the State to expend and divert resources and hampering the California Air Resources Board's mission to protect public health and meet state and federal air pollution requirements. The Reclassifications also deprive the State of procedural rights to which it was entitled as a licensee.

In opposing California's preliminary injunction motion and moving to dismiss the State's complaint, EPA argues that each and every issue in this case is off-limits for judicial review: that this Court must turn a blind eye because Section 805 of the Congressional Review Act (CRA) provides that "[n]o determination, finding, action, or omission under [the CRA] shall be subject to judicial review." 5 U.S.C. § 805. EPA goes so far as to say this Court lacks jurisdiction to determine whether Section 805 applies. That astoundingly sweeping position runs afoul of not just one, but three, countervailing principles of black letter law: (1) courts always have jurisdiction to determine their own jurisdiction; (2) it is the provenance of the Judicial Branch, not the Executive, to interpret statutes, including those that define the Court's jurisdiction; and (3) courts interpret such statutes with a strong presumption in favor of judicial review of agency action.

This Court can, and indeed must, determine whether Section 805 applies here. It does not. Nothing whatsoever happens "under" the CRA without an agency "rule," and these waivers of Clean Air Act preemption are not rules. Moreover, the CRA does not contemplate, much less authorize, EPA to transform long-settled orders into rules simply by issuing a press release claiming it has done so. Even if EPA's bald assertions qualify as "determinations," they are not "under" the CRA. EPA's primary defense crumbles.

1

As a fallback, EPA argues there is nothing to see here—that reclassifying years-old final orders into rules actually *changes nothing*—so there is neither final agency action nor injury to California. That assertion is simply not credible. EPA did not take these extraordinary actions simply to leave the status quo in place. EPA's own announcement asserts these Reclassifications gave rise to *new obligations* to submit these waivers to Congress. Ex. 22 at 1. And EPA offers no response—other than telling the Court it cannot look behind the curtain—to California's demonstration of the other legal consequences and injuries EPA's actions have wrought. Finally, EPA cannot identify an iota of harm that would befall it or the public interest from restoring the status quo—the conditions that prevailed for years before EPA's Reclassifications.

California respectfully asks this Court to grant the requested preliminary injunction and deny EPA's motion to dismiss.

## ARGUMENT

### I.     THE CRA DOES NOT BAR JUDICIAL REVIEW OF CALIFORNIA'S CLAIMS

EPA's primary response to California's complaint and preliminary injunction motion is an argument that CRA Section 805 bars judicial review of anything and everything at stake in this case. But Congress chose to preclude review only of government conduct "under this chapter"— i.e., "under" the CRA. 5 U.S.C. § 805. A faithful construction and application of that limitation compels the conclusion that Section 805 does not bar California's claims. Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. or Stay (ECF No. 13-1) 25–28 ("CA Mem.").

EPA responds with the remarkable assertion that "[t]he purpose of a jurisdiction-stripping provision is to prohibit judicial review of" whether the provision applies. EPA Mem. in Opp'n to Pl.'s Mot. for Prelim. Inj. & in Supp. of EPA's Mot. to Dismiss (ECF No. 21) 15 ("EPA Mem."); *see also id.* at 11 (arguing that agency "stating that it is [acting] under the CRA" suffices). That is not the law. As EPA's own cases confirm, statutory limits on subject-matter jurisdiction "must be policed *by the courts . . . .*" *Id.* at 11 (emphasis added) (quoting *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007)). It does not "effectively read[] § 805 out of the U.S. Code" for a court to *interpret* the words Congress enacted to see if the predicate elements that trigger the jurisdiction-

2

stripping provision—here, for instance, the presence of a federal agency's "rule"—exist in the first place. *Contra id.* at 14. That is all California asks from this Court. And the best reading of the statute is that Section 805 does not apply to bar California's claims.

**A.    This Court Must Exercise Its Own Judgment to Interpret the CRA**

This Court "always has jurisdiction to determine its own jurisdiction." *Brownback v. King*, 592 U.S. 209, 218 (2021) (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002)). The task of interpreting and applying the statutes that define federal jurisdiction "is exclusively the province of the courts." *Ramey v. Bowsher*, 9 F.3d 133, 136 n.7 (D.C. Cir. 1993); *contra* EPA Mem. 17 ("The CRA is simply not within the provenance of the courts.").

The Supreme Court lit the path in *National Association of Manufacturers v. Department of Defense* (*NAM*), by interpreting a statute that divested the district courts of jurisdiction to review actions that agencies took "under" one of a list of statutory provisions. 583 U.S. 109, 124 (2018) (discussing 33 U.S.C. § 1369(b)(1)(E)). When they took the action under review, "the agencies cited [one listed provision as] among the provisions under which they purported to have" acted. *Id.* at 125 n.8. The Court was unpersuaded. Exercising independent judgment, the Court decided that "[n]owhere d[id] that provision direct or authorize" the action taken by the agencies. *Id.* at 124. Their "invocation" of the provision specified in the jurisdictional statute "d[id] not control [the] interpretive inquiry," because the court retained power to decide whether that jurisdictional statute even applied. *Id.* at 125 n.8.

The Supreme Court's decision in *Mullin v. Doe*, handed down on the day California moved for relief, is to the same effect. 609 U.S. ---, 2026 WL 1825840 (June 25, 2026). The Court there used its independent judgment to interpret a statute that barred judicial review of "determination[s] of the Attorney General with respect to the . . . termination . . . of a designation[] of a foreign state under this subsection." 8 U.S.C. § 1254a(b)(5)(A). The parties agreed that the agency had proceeded "under" the relevant statutory subsection, but disagreed on the meaning of "determination." *See* 2026 WL 1825840, at *7–10. Rather than defer to the agency's view that the thing plaintiffs were challenging was a qualifying "determination," the

Court used the traditional tools of construction, interpreting the jurisdiction-stripping statute to decide the threshold issue of whether that statute applied at all. *Id.* Although the Court ultimately concluded that judicial review was barred, it did not put a thumb on the scale for the agency's interpretation or for application of the jurisdiction-stripping statute. Quite the opposite: the Court "recognize[d] that when a statutory provision is reasonably susceptible to divergent interpretation, we adopt the reading that accords with the traditional and basic principle that executive determinations generally are subject to judicial review." *Id.* at *8 (citation modified).

EPA argues for a different approach in this case, claiming "the CRA is ultimately a tool for Congress," "not judicial oversight." EPA Mem. 16. That is simply not true of the jurisdiction-stripping language in Section 805, the definition of "rule" in Section 804, or the reporting mandate in Section 801, none of which was "enacted under Congress's exclusive constitutional authority to 'determine the Rules of its Proceedings.'" *Id.* (quoting U.S. Const. art. I, § 5, cl. 2); *cf.* 5 U.S.C. § 802(g)(1) ("*This section* is enacted by Congress . . . as an exercise of the rulemaking power of the Senate and House." (emphasis added)). Congress did not enact the CRA only for itself. "[T]he whole point of having written statutes" is that their "meaning is fixed at the time of enactment," not subject to change by one or the other of the political branches. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (quotation omitted). "[I]nterpretation of the meaning of statutes" is "exclusively a judicial function." *Id.* at 387 (citation modified).

**B.     The Reclassifications and Submissions Are Not Conduct Under the CRA**

CRA Section 805 provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. Without question, this provision bars review of a host of government conduct. But "the judicial inquiry does not end" merely because the statute precludes review of *some* agency actions. *Ardelyx, Inc. v. Kennedy*, --- F.4th ---, 2026 WL 1839261 at *5 (D.C. Cir. June 26, 2026). "To determine whether the judicial-review bar applies," the Court must "decide whether the challenged agency actions are the sort of actions shielded from review." *Id.* (citation modified). That decision "turns on how *Congress*, not the

4

*agency*" defined the scope of judicial review. *Ardelyx, Inc. v. Becerra*, 757 F. Supp. 3d 37, 49 (D.D.C. 2024), *aff'd sub nom. Kennedy*, 2026 WL 1839261; *see also NAM*, 583 U.S. at 123–24.

### 1. None of EPA's Conduct Is "Under the CRA"

Because Section 805's breadth is limited to government conduct "under this chapter," 5 U.S.C. § 805, this Court must "expand [its] aperture" beyond 805 itself to interpret other CRA provisions. *Mullin*, 2026 WL 1825840 at *10; *see also NAM*, 583 U.S. at 123–24. Examining the entire CRA yields two conclusions. First, each "determination, finding, action, or omission under this chapter," 5 U.S.C. § 805, is predicated on the presence of a "rule," *id.* § 804(3). CA Mem. 26. Second, the CRA does not contemplate, much less condone, an agency reclassifying its past action as a rule and submitting the action as such. *Id.* at 28. EPA does not try to rebut either of those conclusions. Further, with one exception discussed below, *infra*, Sec. I.C.2, EPA does not refute California's arguments that these waivers are not rules—under the Administrative Procedure Act (APA), or the CRA. *See* CA Mem. 26–27.[1] Section 805 has no application here.

### 2. EPA's Bootstrapping Argument Is Preposterous

EPA says that when it concludes its Reclassifications and Submissions are actions "under the CRA," that conclusion is itself a "determination" that Section 805 shields from review. EPA Mem. 15 (arguing that Section 805 "prohibit[s] judicial review of th[e] very questions" whether "the CRA has been improperly invoked, or misinterpreted"). On this view of Section 805, EPA's conclusion that it acted under the CRA is unassailable; and so is EPA's resulting action, even if a court, exercising independent judgment, would conclude that this action was not in truth a CRA action.[2] "This is a preposterous position, one [the D.C. Circuit] will not countenance." *COMSAT Corp. v. FCC*, 114 F.3d 223, 227 (D.C. Cir. 1997); *accord Kennedy*, 2026 WL 1839261 at *6.

---

[1] EPA's factual background refers to a document prepared by the White House Office of Management and Budget (OMB) well after EPA reported three waivers to Congress in 2025. EPA Mem. 6. There, OMB purported to explain why those three waivers were CRA rules. The litigation choice of the Department of Justice not to advance OMB's post hoc explanation speaks volumes.

[2] This leap is how EPA squares the circle of arguing that the CRA precludes review even of the agency's final decision to rescind the pre-proceeding notice opportunity the APA affords a licensee before a license is terminated. EPA Mem. 26; *see infra*, II.A.

EPA argues that its "determination of whether an agency action is a rule or an order under the CRA … is never subject to judicial review." EPA Mem. 4. But the CRA applies only to rules, not orders. CA Mem. 26–27; EPA Mem. 3. What EPA is really saying, then, is that courts cannot review the agency's conclusion that its action is of the type that is governed by the CRA—and its jurisdiction-stripping provision—in the first place. But whether EPA seeks to shield from judicial review its characterization of the four waivers as rules, or its characterization of the Reclassifications and Submissions as actions under the CRA, its argument fails just the same.

Even if Congress *could* write the bootstrapping jurisdiction-stripping provision of EPA's dreams, *but cf. A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 537–38 (1935), Section 805 is not it. Reading "determination" in Section 805 to exclude an agency's conclusion that its action is under the CRA (or that a waiver is a rule) does not leave that word meaningless, *contra* EPA Mem. 14–15, since "[t]he CRA does contemplate agencies making determinations" of various kinds, *Kan. Nat. Res. Coal. v. DOI*, 971 F.3d 1222, 1236 n.8 (10th Cir. 2020); *see* CA Mem. 25–26.[3] Judicial review of *those* determinations, or a failure to make them, remains barred by Section 805.[4] At the least, the CRA "is reasonably susceptible to" a reading that allows review of EPA's conclusions that its old waivers are rules, and its assertions that it has acted under the CRA. *Mullin*, 2026 WL 1825840 at *8 (citation modified). Consequently, the Court must "adopt th[at] reading." *Id.*

EPA's cases lend no support to its position. In *Montanans for Multiple Use v. Barbouletos*, plaintiffs alleged that actions taken by the U.S. Forest Service were rules that the agency had not submitted to Congress as the CRA required. 568 F.3d 225, 229 (D.C. Cir. 2009) (Kavanaugh, J.). To determine its jurisdiction, the D.C. Circuit "assum[ed]" plaintiffs were correct that the actions "qualify as rules subject to the [CRA]." *Id.*[5] On that assumption, it was clear that plaintiffs were

---

[3] Certainly, "in its ordinary sense," the word *determination* "mean[s] a discrete decision or a process leading up to a final decision." *Mullin*, 2026 WL 1825840 at *10. But the limiting word here is "under" (as in *NAM*), not "determination" (as in *Mullin*).

[4] For example, no court can review the determination that a major rule should take effect sooner than otherwise allowed, for national-security or other reasons. *See* 5 U.S.C. § 801(c)(2).

[5] "In determining jurisdiction, this Court generally will assume the merits as the plaintiff
(continued…)

6

alleging an "omission under [the CRA]," 5 U.S.C. § 805, and the court found no jurisdiction because Section 805 "denies courts the power to void rules on the basis of agency noncompliance with the [CRA]," *Montanans for Multiple Use*, 568 F.3d at 229; *see also Wash. All. of Tech. Workers v. DHS*, 892 F.3d 332, 346 (D.C. Cir. 2018) ("taking [plaintiff's] factual allegation[s] as true" in holding that Section 805 barred review of alleged violation of CRA's 60-day waiting period for major rule to take effect). California, by contrast, raises a threshold issue—that the CRA is not triggered in the first place because there is no "rule"— and it seeks to void the Reclassifications and Submissions on the basis of agency noncompliance with the *APA*. CA Mem. 18–25.

EPA's sojourn out of circuit fares no better. In particular, the agency misreads the Ninth Circuit's opinion in *Center for Biological Diversity v. Bernhardt*, 946 F.3d 553 (9th Cir. 2019). That court held that Section 805 precluded review of a claim challenging an agency's "rescission of [a rule] solely on the ground that Congress did not validly enact" a resolution that disapproved of the agency's original rule. *Id.* at 564. The court reasoned that "enacting a joint resolution of disapproval is an action under the CRA," review of which was barred by Section 805. *Id.* at 563. The plaintiff contended that the disapproval legislation—and thus the agency's rescission rule— was invalid because the agency failed to report the original rule to Congress before it took effect; and, the plaintiff continued, the receipt of a report before the effective date is a precondition for Congress to act under the CRA. *Id.* at 562–63; *but see McIntosh v. United States*, 601 U.S. 330, 339 (2024) (reciting "a line of cases recognizing that certain deadlines, if missed, do not deprive a public official of the power to take the action to which the deadline applies"). The court found that the plaintiff's claim, which undisputedly involved a "rule," and alleged a "violation" of the CRA itself, did not survive Section 805. *Ctr. for Biological Diversity*, 946 F.3d at 564. The court did not decide that Section 805 forbids courts from interpreting Section 805, from deciding

---

… pleads them." *Ctr. for Regul. Reasonableness v. EPA* (*CRR*), 849 F.3d 453, 454 n.1 (2017) (Kavanaugh, J.)). Here, the Court should not do so where "the merits of the APA challenge are inextricably linked to … jurisdiction to hear that challenge." *Id.* (quotation omitted). California does not need the help, though. It has shown a likelihood of success on the merits, including demonstrating that these waivers are not rules. CA Mem. 18–20.

whether there is a "rule" at issue, or from reaching claims that rest on basic administrative-law precepts, rather than alleged violations of the CRA.

### C.     EPA's Remaining Arguments Fail to Show that Section 805 Applies Here

#### 1.     Judicial Review of EPA's Reclassifications and Submissions Is Not "Inextricably Intertwined" With Unreviewable Subject Matter

EPA maintains that if Section 805 does not directly preclude review of its Reclassifications and Submissions, it does so indirectly. The agency thinks "California cannot prevail on any of its APA claims without first persuading the Court that EPA violated the CRA." EPA Mem. 16. That is a wrongheaded view of the Complaint; but even if EPA were right, review would be permitted.

For starters, EPA misapprehends California's claims. Count I, the APA claim, alleges that EPA acted without statutory authority, Compl. for Declaratory and Injunctive Relief (ECF 1) ¶ 107 ("Compl."); wrongly interpreted the APA's definition of "rule," *id.* ¶ 111; did not observe proper procedures, *id.* ¶ 106; did not adequately explain its actions, *id.* ¶ 105; and did not consider its actions' effects on California, *id.* Count II, the *ultra vires* claim, likewise alleges that EPA acted without statutory authority. *Id.* ¶¶ 120–24. California can prevail on each of these arguments without first establishing some violation of the CRA.

To be sure, there are relationships between the CRA and California's claims. For instance, implicit in California's argument that EPA acted without *any* statutory authority is the argument that the requisite authority cannot be found in the CRA. If that alone sufficed to preclude review, however, the presumption of judicial review of agency action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," would be reversed in *every* case. 5 U.S.C. § 706(2)(C). Yet, as the D.C. Circuit just reaffirmed, the presumption of review "is particularly strong where … a party claims an agency has acted in excess of its delegated authority" because "Congress rarely intends to foreclose review of action exceeding agency authority." *Kennedy*, 2026 WL 1839261 at *5 (quotation omitted). In Section 805, as in comparable provisions, "the preclusion on review of" actions taken under the CRA must "extend[] no further than [agencies'] statutory authority to [t]ake them." *Amgen, Inc. v. Smith*, 357 F.3d 103, 112 (D.C. Cir. 2004).

8

Jurisdiction-stripping provisions often make the inquiry into jurisdiction overlap partially or fully with the merits inquiry. CA Mem. 27 n.14; *see also Brownback*, 592 U.S. at 217–19. In that case, "[t]he same agency error … simultaneously ma[kes] the jurisdictional bar inapplicable and compel[s] setting aside the challenged agency action." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 510 (D.C. Cir. 2019) (citation modified).[6] Far from "jurisdictional sophistry," that result is the straightforward consequence of the words Congress enacted into law. EPA Mem. 14.

EPA cites *Heckler v. Ringer*, which "sort[ed] out the thorny jurisdictional problems" posed by mandamus claims pleaded by three surgical patients and a prospective one. 466 U.S. 602, 605 (1984). A provision of the Medicare Act required claimants to exhaust administrative remedies before suing the Department of Health and Human Services (HHS) to recover surgical costs. *Id.* Without exhausting those remedies, plaintiffs challenged HHS's generic reimbursement policies. *Id.* at 608–09. Finding this claim to be "at bottom, a claim that [plaintiffs] should be paid for their … surgery," *id.* at 614, the Court construed the Act to allow only the "adequate remedy" of post-exhaustion judicial review, *id.* at 617, "because any other construction would allow claimants substantially to undercut Congress' carefully crafted scheme for administ[ration]," *id.* at 621. Here, by contrast, applying Section 805 to preclude California's claims would leave the State without a remedy, and for claims that do not "in essence" arise under the CRA. *Id.* at 624.

Relatedly, in *DCH Regional Medical Center v. Azar*, the D.C. Circuit construed a statutory bar on review of estimates used by the HHS Secretary to calculate hospital payments to equally quelch claims challenging the methodology for preparing those estimates. 925 F.3d at 506–07. Allowing such claims "would eviscerate the statutory bar, for almost any challenge to an estimate could be recast as a challenge to its underlying methodology." *Id.* at 506. In this case, however, there is an obvious "textual basis for separating" EPA's Reclassifications and Submissions from its conduct under the CRA. *Id.* at 507. The classifications of actions into rules

---

[6] Because the CRA's definition of "rule" is narrower than the APA's definition of "rule," *see* 5 U.S.C. § 804(3), the jurisdictional issue whether review is barred is not "*coextensive* with the merits" issue whether EPA's Reclassifications and Submissions violated the APA. *DCH*, 925 F.3d at 510 (emphasis added). Still, because the universe of CRA rules includes only actions that are also APA rules, the lack of an APA rule is dispositive of both jurisdictional and merits issues.

and non-rules, and the various requirements applicable to each, are set out in provisions of the *APA*, not the *CRA*. CA Mem. 20–21. Furthermore, the general principle that "[i]f the final agency action is unreviewable, then so too are subsidiary determinations," *Mullin*, 2026 WL 1825840 at *10 (citing *DCH*, 925 F.3d at 506), does no work here because each Reclassification and each Submission is an independent and reviewable final action. Indeed, EPA does not dispute that each Reclassification and Submission is the consummation of a distinct decisionmaking process. EPA Mem. 24.

### 2.   Congress Did Not Preclude Review of EPA's Reclassifications and Submissions When It Enacted Resolutions in 2025

In its final swing, EPA contends that, one year ago, "Congress already made the relevant determination …, i.e., whether to treat EPA Clean Air Act waivers as rules for purposes of the CRA," when it enacted resolutions purporting to disapprove of three waivers not at issue here. EPA Mem. 17. The very press release at issue says otherwise. Ex. 22 at 1 ("*EPA has determined that each of these waivers is a rule under the CRA*" (emphasis added)). EPA's contention that Congress amended the CRA in 2025 is a roundabout way for the agency to *argue* (for the first and only time here), and not just *say*, that waivers are rules under the CRA. It is a feeble effort.

Section 804's enacted definition of *rule* "appl[ies] notwithstanding any other provision of law," 5 U.S.C. § 806(a), which means it "absolutely, positively prevail[s]" over all but the most crystalline statements in other legislation, A. Scalia & B. Garner, READING LAW 127 (2012). The 2025 resolutions do not mention, much less purport to broaden, Section 804's definition of a rule to cover even the three disapproved waivers, much less *other* waivers like the ones at issue here.[7] Congress knows how to subject new actions to CRA process. *E.g.*, 42 U.S.C. § 5911(b) (defining specific Presidential rules and orders as "major rules"). But the 2025 resolutions did not do so.

---

[7] While the prefatory clauses of the joint resolutions purport to "[p]rovid[e] congressional disapproval under chapter 8 of title 5, [U.S.] Code," 139 Stat. 65, 66, 67 (June 12, 2025), those clauses have no legal effect, *see* 1 U.S.C. §§ 102–03, and they cannot "expand the scope of the operative clause[s]" of the resolutions, *District of Columbia v. Heller*, 554 U.S. 570, 578 (2008). Plus, the prefatory clauses precede resolutions disapproving only *three* waivers, not *all* waivers.

EPA contends that all waivers "are indistinguishable" "[f]or purposes of the CRA." EPA Mem. 17. This ignores, for example, the different status of the Small Off-Road Engine (SORE) regulation, which no other State can adopt or enforce. CA Mem. 14 n.10; *see* 5 U.S.C. § 804(3)(A) (exempting "any rule of particular applicability" from the CRA's reach). And, if waivers are indistinguishable for CRA purposes, it begs the question why EPA submitted only these four waivers to Congress, when the agency has granted at least fifteen others since the CRA took effect. Compl. ¶ 6.[8]

Apart from there being no statutory text evincing a broader definition of "rule," the history of the 2025 resolutions' passage through Congress refutes EPA's narrative. *See* Compl. ¶¶ 55–71. In brief, Senators opposed to three EPA waivers executed an extraordinary procedural maneuver that keyed the internal Senate rules of legislative procedure to an agency's decision to reclassify an order as a rule and submit it as such to Congress. *Id.* ¶¶ 67–68. The "vigorous debate in Congress" was not "about whether waivers are properly subject to the CRA," EPA Mem. 17, but whether, for purposes of Senate process, EPA's word would control, *see* Compl. ¶ 67. That the Senate answered "yes" to that internal question—and violated the Constitution in the process, *see id.* ¶ 71—does not mean it answered the external question whether waivers are Section 804 rules. On the contrary, the very reason for the extraordinary maneuver was that the Senate lacked the filibuster-proof super-majority to pass ordinary legislation superseding the three waivers; and that Senators opposed to the three waivers *did not want to overrule* the Senate Parliamentarian's decision that EPA's waivers are not rules as that term is defined in the CRA. *See id.* ¶¶ 63–66. The result of Congress's procedural machinations was anything but a change in the CRA's statutory definition of "rule."

Section 805 of the CRA does not preclude review of California's claims.

---

[8] *See also* https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations, last visited July 15, 2026.

## II.   CALIFORNIA HAS STATED AN APA CLAIM ON WHICH IT IS LIKELY TO SUCCEED

California demonstrated it is likely to succeed on its APA claim, CA Mem. 15–24, and for the same reasons it has stated a claim, Compl. ¶¶ 94–117. EPA disputes the point *only* as to the second prong of the final-agency-action test articulated in *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). EPA Mem. 24. EPA's Reclassifications easily satisfy that second prong, CA Mem. 17–18, as do the Submissions to Congress, *id.* at 23–24. The Reclassifications and Submissions also violate the APA, CA Mem. 18–24, and EPA has forfeited any contrary argument.

### A.   The Reclassifications Are Final Agency Actions

By EPA's own account, its Reclassifications created legal consequences for EPA—namely the "statutory obligation" to submit the actions to Congress. CA Mem. 17; *see also* Ex. 22. EPA does not dispute the point, claiming instead that EPA's actions carried no consequences "*for Plaintiffs* [sic]." EPA Mem. 25 (emphasis added). But "*Bennett*'s second prong is satisfied by legal consequences that affect only the agency itself." *Am. Wild Horse Campaign v. Bernhardt*, 442 F. Supp. 3d 127, 149 (D.D.C. 2020), *aff'd sub nom. W. Watersheds Project v. Haaland*, 850 F. App'x 14 (D.C. Cir. 2021). The Reclassifications are final agency action because they "alter[ed] the legal regime to which [EPA] [wa]s subject" as to these waivers. *See Bennett*, 520 U.S. at 178. EPA has waived any contrary argument.

Moreover, even if legal consequences *for California* were required (and they are not), EPA's reclassification of these waivers from licensing orders to rules has changed California's rights under the APA. Specifically, before the Reclassifications, California was entitled to "notice … of the facts or conduct" upon which EPA would rely to withdraw any of these licenses *and* to the "opportunity to demonstrate or achieve compliance with all lawful requirements"— both "*before the institution of agency [withdrawal] proceedings*." 5 U.S.C. § 558(c) (emphasis added); *see* CA Mem 17–18. EPA responds by arguing that this Court cannot determine whether California ever had licensee rights under the APA because Section 805 of the CRA bars consideration of the question. EPA Mem. 26. That only underscores the dramatic scope EPA

12

seeks to give Section 805. That section has no application here whatsoever, *supra* Sec. I, but it certainly cannot preclude a judicial determination of a waiver-holder's rights *under the APA*.

Perhaps recognizing its overreach, EPA offers a backup argument, claiming it would provide public "notice … in the event EPA initiated any action to withdraw any of the preemption waivers at issue here." EPA Mem. 26. That argument confirms the deprivation of California's rights under 5 U.S.C. § 558(c) by making clear EPA will not afford California those *pre-proceeding* rights for these four waivers. EPA Mem. 26.[9]

EPA also denies that its Reclassifications have deprived California of the "safe harbor" the waivers previously had from the CRA. EPA Mem. 26 (quoting CA Mem. 18 (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 600 (2016)). EPA attempts to distinguish *Hawkes* on the ground that the final action there bound the agencies involved, EPA Mem. 26, which only underscores that the Reclassifications are final because they bound EPA, *supra* at 12. The rest of EPA's attempt to distinguish *Hawkes* is difficult to follow and seems to amount to the bald assertion that no "effects" analogous to reduced litigation risk "followed from" the Reclassifications. EPA Mem. 26. But, before those actions, California faced minimal risk that Congress would attempt to invoke the CRA to disapprove these waivers. Indeed, in the thirty years since the CRA was enacted, Congress has *only* taken such steps *after* EPA reclassified three other waivers last year. *See also* 171 Cong. Rec. S3087 (Sen. Capito) ("submission by the Trump EPA triggered my right as a Senator to introduce this resolution"). After the Reclassifications, these four waivers are thus at enhanced risk of disapproval purportedly under the CRA. That suffices. *Hawkes*, 578 U.S. at 599 (actions that reduced, but did not eliminate,

---

[9] EPA cannot argue in reply that California waived these rights in connection with EPA's 2019 effort to withdraw parts of the 2013 waiver. California's challenge to that 2019 action was never decided, because EPA reversed course before oral argument was held. *See* Order, *Union of Concerned Scientists v. NHTSA*, Case No. 19-1230 (D.C. Cir. July 25, 2024), Dkt. 2066357. EPA therefore cannot argue estoppel. *E.g.*, *Narragansett Indian Tribe v. McMaster*, 176 F.4th 671, 681 (D.C. Cir. 2026). Moreover, any such forfeiture would not extend to future withdrawal proceedings concerning these four waivers. And it is California's rights *as to those proceedings* that EPA attempts to alter with these Reclassifications.

13

legal risk by "narrow[ing] the field of potential plaintiffs and limit[ing] the potential liability" had "'legal consequence[ ]' satisfying the second *Bennett* prong").

Unable to refute even one of these bases for *Bennett*'s second prong (much less all three), EPA resorts to invoking *Dalton v. Specter*, 511 U.S. 462, 469 (1994), in which the Supreme Court held that "tentative recommendations" to close certain military bases were not "final and binding determinations." *See* EPA Mem. 25. *Dalton* does not help EPA. The Reclassifications are not tentative recommendations to someone else who is empowered to conclude that waivers are rules. To the contrary, EPA announced *it* had completed its determination of that question, Ex. 22 at 1, and has not disputed that was the end of that mater. *See* CA Mem. 16; EPA Mem. 24 (disputing only *Bennett*'s second prong). Moreover, unlike the base-closure consequences that would not occur unless the President took further action, *Dalton*, 511 U.S. at 469, the consequences California identifies (and EPA does not refute) *have already occurred*.[10]

### B.    The Submissions Are Also Final Agency Actions

As California demonstrated, the Submissions also satisfy the second finality prong (the only one EPA disputes). CA Mem. 23. As with the Reclassifications, these actions "deprive[d]" California of "safe harbor" from the CRA as to these four waivers, *Hawkes*, 578 U.S. at 600, and "alter[ed] the legal regime to which [each waiver] is subject," *Bennett*, 520 U.S. at 178. EPA's only real response is its analogy to *Dalton*. EPA Mem. 25. But there is no analogy because in *Dalton*, the agency did not attempt to change the applicable legal regime through reclassification—for example, by declaring that a post office or other federal facility was suddenly a military base and thus subject to potential closure. *That* is what EPA's Submissions purport to do—change the legal regime from one where the CRA does not apply (as EPA originally concluded in its final actions) to one where the CRA does (purportedly) apply. And it

---

[10] EPA's other cases are distinguishable on the same ground. *See* Mem. 25. The guidance in *Sierra Club v. EPA*, 955 F.3d 56, 64 (D.C. Cir. 2020) was not final because it did not "compel[] action by" anyone, including "the agency." The action in *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992) had "no direct consequences," and the actions in *Racing Enthusiasts & Suppliers Coal. v. EPA*, 45 F.4th 353, 358 (D.C. Cir. 2022) had no "independent legal force." Here, EPA has itself asserted that the Reclassifications compelled transmission to Congress, and those actions have already had direct consequences on both the agency and California.

does not matter how likely it is that Congress will (or will not) enact disapproval resolutions based on EPA's Submissions, any more than it mattered, for finality purposes, whether the landowner in *Hawkes* would be sued. The agency's action had "narrow[ed] the field of potential plaintiffs and limit[ed] the potential liability," and that reduction in legal risk sufficed. *Hawkes*, 578 U.S. at 599. "It follows that" the opposite consequence—i.e., an *increase* in legal risk— likewise suffices for finality. *See id.* EPA's Submissions have unquestionably brought about that legal consequence for these waivers.

## III. CALIFORNIA HAS STATED AN *ULTRA VIRES* CLAIM ON WHICH IT IS LIKELY TO SUCCEED

In the alternative, California has stated an *ultra vires* claim and is likely to succeed on the merits. Indeed, EPA does not contest—and has thus conceded—that California has alleged the required elements of the claim and that California is likely to succeed on the merits of this claim, if Section 805 does not bar it. It does not. *Supra* Sec. I. EPA's motion to dismiss should be denied (and California's motion for preliminary injunction granted) as to this claim.[11]

*Ultra vires* review is available where an agency "plainly acts 'in excess of its delegated powers and contrary to a specific prohibition in [a]' statute," and there is no alternative procedure available for review. *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (quoting *Leedom v. Kyne*, 358 U.S. 184, 188 (1958)). As the Supreme Court recently noted, it has "often held that plaintiffs may sue in equity without a congressionally-provided cause of action to prevent an injurious act by a public officer." *Trump v. Cook*, 609 U.S. ---, 2026 WL 1855613, at *11 n.2 (Jun. 29, 2026) (citation modified).

Here, if APA review is unavailable, California has no alternative procedure to seek review of EPA's Reclassifications and Submissions. EPA has plainly acted in excess of its delegated powers, as no statute delegates authority to EPA to engage in post-hoc reclassifications of adjudicatory orders. To the contrary, EPA's Reclassifications are specifically prohibited by the

---

[11] EPA has certainly conceded this argument for California's preliminary injunction motion, and waived this argument for its motion to dismiss. *See, e.g.*, *Nippon Shinyaku Co., Ltd. v. Iancu*, 369 F. Supp. 3d 226, 239 n. 8 (D.D.C. 2019), *aff'd*, 796 F. App'x 1032 (Fed. Cir. 2020) ("Arguments raised for the first time in a reply brief are waived.").

APA in several ways. CA Mem. 25. For example, the APA prohibits an agency from "depart[ing] from a prior policy *sub silentio*." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).[12] EPA's actions were "entirely in excess of its delegated powers and contrary to a specific prohibition in a statute." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (citation modified). The markedly unusual acts of declaring long-settled orders to be rules by press release fiat are no "garden-variety errors of law or fact," but rather serious errors that are "patently a misconstruction of" the APA. *Griffith v. Fed. Lab. Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988) (citation modified); *see* Compl. ¶¶ 118–127.

## IV. CALIFORNIA IS ALREADY BEING IRREPARABLY INJURED BY EPA'S ACTIONS AND HAS ALLEGED FACTS MORE THAN SUFFICIENT FOR STANDING

California demonstrated it is being irreparably injured by both the Reclassifications and the Submissions. CA Mem. 28–32. California also demonstrated these injuries would be redressed—some in whole, some at least in part—by a preliminary injunction restoring the pre-Reclassification status quo. That suffices to satisfy the irreparable injury prong of the preliminary injunction test and unquestionably satisfies the pleading requirement for Article III standing. EPA's arguments to the contrary are without merit. [13]

As a threshold point, this Court should not credit EPA's bewildering assertion that its actions "did not change the status quo of the waivers." EPA Mem. 19. These are hardly run-of-the-mill agency actions, and EPA did not take them to leave the status quo intact. EPA's claim is demonstrably false. *Supra* Sec. II; CA Mem. 1, 8, 21. Regardless, courts presume success on the

---

[12] Cases interpreting the APA's requirements are relevant to the specific prohibition inquiry. *See Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 970–971 (D.C. Cir. 2022) (relying on precedent interpreting statutory provisions to find agency had acted contrary to a specific statutory prohibition); *Chamber of Com. v. Reich*, 74 F.3d 1322, 1330 (D.C. Cir. 1996) ("Nor do we think it can possibly matter for purposes of [*ultra vires*] reviewability whether the alleged statutory right or mandate is found in the statute in so many words or has been so interpreted by the Supreme Court as appellants claim in this case.").

[13] EPA's contention that California seeks relief equivalent to "the full relief [it] seeks on the merits" is specious. *See* EPA Mem. 27 (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969). California seeks *preliminary* relief in its motion, *see* CA Mem. 33, and *permanent* and broader relief (including declaratory relief) in its Complaint, Compl. at 28–29. This case does not even involve monetary relief, much less funds that might become unrecoverable at judgment. *Dorfmann*, 414 F.2d at 1173.

merits when determining irreparable harm. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006). And similarly, for purposes of a motion to dismiss, the allegations in California's complaint must be accepted as true and all reasonable inferences drawn in California's favor. *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019); Compl. ¶¶ 77, 82–86.

### A.   California Has Demonstrated Irreparable Injury

EPA's other efforts to undercut California's irreparable injuries are no more availing than its bald assertion that it has effectuated no change to the status quo.

1. EPA first argues that the harm the State experiences from EPA's intentional elevation of risk to these waivers is unsupported by evidence and insufficient to support a preliminary injunction. EPA Mem. 28. California does not need *evidence* to establish that efforts by the federal government to threaten the State's authority to enforce its own laws present a "grave matter." CA Mem. 29 (quoting *Maine v. Taylor*, 477 U.S. 131, 135 (1986)). The Framers designed the Federal Government "to be disinclined to invade the rights of the individual States, or the prerogatives of their governments.'" *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 551 (1985) (quoting The Federalist No. 46, at 332 (James Madison) (B. Wright ed. 1961)). EPA's sole intention here is to invade California's rights and upend its emission-regulation prerogatives. This elevated threat is no de minimis harm.

To the extent EPA intends to suggest that California provided no evidence that EPA's actions have significantly increased this threat, EPA is simply wrong. California established that, over a period of sixty years, Congress has only *once* passed resolutions targeting waivers: when EPA reclassified three other waivers last year. CA. Mem. 28; *see also id.* at 3–4, 10–12. EPA does not refute those facts (nor could it do so). *See* Exh. 22 at 2. Thus, history suggests the probability of disapproval before EPA's Reclassifications was near zero. That probability is now plainly significantly higher, as EPA intended. *See* Ex. 22. at 1–2. *See NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 84 (D.C. Cir. 2012) (history "may serve as evidence bearing on whether there is a real and immediate threat of repeated injury") (citation modified).

California also established that EPA is likely considering administrative withdrawal and that its Reclassifications streamline that process, significantly increasing that threat as well. *Contra* EPA Mem. 23. California demonstrated (1) that EPA was directed, by Presidential Executive Order, to develop an action plan to administratively rescind previous EPA actions that allegedly interfere with consumer choice; (2) that EPA has characterized these four waivers as interfering with consumer choice; and (3) that, before the Reclassifications, EPA informed courts that it was considering taking action that would moot petitions for review of at least two of these waivers. CA Mem. 28–29; *see also id.* at 14. These facts all point in one direction: EPA has an undisclosed plan to rescind these waivers, and it is executing that plan. EPA could have, of course, established that it has no such plan (e.g., with a declaration). It did not do so. Instead, EPA asserts the agency "must" take the actions directed by the Executive Order (i.e., administrative actions to rescind), if it can do so lawfully. EPA Mem. 20. EPA then claims it can act lawfully by simply providing public notice. *Id.* In other words, EPA itself argues, it not only can, but must, take administrative withdrawal action. EPA's Reclassifications streamlined that process, thereby escalating the risk, because without them EPA would be required to provide California with notice and an opportunity to correct *before initiating* any withdrawal proceeding. *See* 5 U.S.C. § 558(c).

Preliminary injunctions do and should issue to prevent such risks from materializing. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) ("Damocles's sword does not have to actually fall on all appellants before the court will issue an injunction."). For example, when this Court recognized that Alaska would be injured by the federal government taking certain lands into trust, Alaska did not have to wait for the federal government to "begin the process" for doing so. *Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 17 (D.D.C 2014). Rather, the State sought, and this Court granted, a preliminary injunction preventing the Secretary of the Interior from taking even that initial step. *Id.* at 18–19. Here, California seeks narrower relief—not to stop EPA from initiating a withdrawal proceeding, *contra* EPA Mem. 21 (citing *In re Murray Energy Corp.*, 788 F.3d 330, 335 (D.C. Cir. 2015)), but to restore the status

18

quo so that EPA must afford California the *pre-initiation* protections to which the State was entitled before the Reclassifications.

2. EPA next tries to undercut California's evidence that it must expend—and is already expending—state funds and divert agency resources to plan for the possibility that these waivers, upon which some of the State's air pollution reduction plans rest, will be invalidated. EPA Mem. 28; *see* CA Mem. 30–31. EPA's contention that California's factual showing is somehow inadequate is without merit. California's declaration:

- establishes the severe air pollution challenges the State continues to face, Declaration of Austin Hicks (ECF No. 13-2) ¶¶ 10–13 ("Hicks Decl.");

- explains that California is relying on the state regulations underlying these waivers as part of plans to meet those challenges, *id.* ¶¶ 18–19;

- explains that it takes years of intensive staff time to identify, design, and promulgate emission reduction measures, *id.* ¶¶ 13, 16, 20–22; and

- identifies the consequences—for the State and its residents and natural resources—of failing to start *now* the work to replace the regulations at issue, explaining why the State must do so, *id.* ¶¶ 14, 16.

EPA provides *no* contrary evidence, so "the Court must accept Plaintiffs' unanswered averments as true." *Nw. Immigrant Rts. Project v. United States Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 80 (D.D.C. 2020); *see also AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, 766 F. Supp. 3d 74, 81 (D.D.C. 2025) (accepting evidence defendant "did not rebut"). All the more so where EPA was well-positioned to submit contravening evidence, if it had any—i.e., evidence that air pollution reduction measures do not take years to develop and put in place or evidence that California faces no loss of highway funds if it fails to meet the federal air quality standards *EPA administers*. *See* 42 U.S.C. § 7509(b) (describing "sanctions available to the Administrator"). The unrebutted evidence demonstrates not just an impending injury, EPA Mem. 29, but a significant injury that is already occurring because of EPA's actions, Hicks Decl. ¶ 21.

19

3. Finally, EPA seeks to minimize the harm EPA's actions have caused the California Air Resources Board (CARB) by making that agency's mission more difficult to achieve. EPA Mem. 29. But California demonstrated that EPA's actions have "perceptibly impaired" CARB's ability to carry out its mission. *Newby*, 838 F.3d at 8. A CARB official explained, based on his experience from EPA's prior reclassifications and his sixteen years of work at CARB, that communications with manufacturers and other stakeholders will be impaired by the uncertainty about CARB's authority that EPA has (intentionally) created. Hicks Decl. ¶ 23–24. He also testified that those impaired communications undermine program implementation, regulatory development and amendment, and other long-term planning. *Id.* In other words, EPA's actions have made the State's "task of complying with the Clean Air Act"—i.e., meeting federal air quality standards—and the task of meeting the State's own air pollution goals "more difficult and onerous." *New Jersey v EPA*, 989 F.3d 1038, 1047 (D.C. Cir. 2021) (citation modified). California's "uncontested declaration[]" establishes an impairment injury warranting preliminary injunctive relief. *See Nw. Immigrant Rts.*, 496 F. Supp. 3d at 49.

## B.    California Has Alleged Facts Sufficient to Support Article III Standing

As shown above, California has *established* the injuries it alleges in the Complaint sufficiently to support preliminary relief. EPA's motion to dismiss on standing grounds fails for those reasons alone. *E.g.*, *Data Sec. Breach Litig.*, 928 F.3d at 54 ("Where, as here, defendants challenge standing at the pleading stage without disputing the facts alleged in the complaint, we accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor." (citation modified)). EPA's additional arguments against California's standing fail.

1. EPA cannot defeat California's standing by mischaracterizing the injuries alleged and the relief sought. California does not "base[] its injury on Congress enacting a joint resolution," EPA Mem. 22, or allege "injury from a hypothetical future statute," *id.* at 20; *see also id.* at 19. The Complaint clearly alleges injuries already occurring *as a result of* EPA's June 12, 2026 actions and redressable by vacatur and other relief from those actions. Compl. ¶¶ 83–93.

20

California does not seek an order from this Court that would require "second-guess[ing]" procedures or motivations "of legislators," EPA Mem. 23, or that would instruct Congress in any way, *id*. at 22, 23. As EPA points out, Congress can pass legislation "regardless of whether EPA withdraws the reports." *Id*. at 22. The relief California seeks would not therefore alter Congress's constitutionally assigned powers.[14] Rather, the requested relief would reverse *EPA's actions* and end the injuries *those actions* are causing California, Compl. at 28–29 (Prayer for Relief)—by restoring the protections due California under 5 U.S.C. § 558(c) and by removing the elevated risk that is causing California sovereign, institutional, and monetary harm, Compl. ¶¶ 86–93.

2. EPA argues that California must show "(i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 513 F.3d 234, 237 (D.C. Cir. 2008) (emphasis in original); *see* EPA Mem. 19. EPA misunderstands the applicable law and the allegations in the Complaint. California alleges several harms that have already occurred and are continuing, including the loss of licensee rights to which it was entitled before EPA's Reclassifications, Compl. ¶¶ 86, 92, and classic pocketbook injuries, *id.* ¶¶ 90–91. Those injuries are not probabilistic at all.

As to the increased threat that California will be unable to enforce its own laws, EPA's test is inapplicable here. *Public Citizen* applied this test in a context where the plaintiff's "asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*." 513 F.3d at 237 (emphasis in original) (citation modified). Here, California alleges injury directly from EPA's actions. Indeed, if anyone is the "object" of those actions, it is California, so standing should present "little question" here. *See Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 114 (2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Moreover, the Supreme Court has recently stated simply that "a plaintiff must show that he or she has suffered or *likely* will suffer an injury in fact." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (emphasis added). Finally, as one of its own cases observes, EPA's test "is

---

[14] That Congress would be *less likely* to pass resolutions purporting to disapprove these waivers if EPA returned the waivers to the pre-Reclassification status quo does not change Congress's powers.

particularly relevant in cases where a plaintiff seeks to challenge a new agency action that has not yet been implemented." *Food & Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174, 189 n.10 (D.D.C. 2015), *aff'd*, 808 F.3d 905 (D.C. Cir. 2015). But EPA has already implemented its Reclassifications by issuing its press release and carrying out the Submissions.

In any event, California has alleged facts that meet EPA's test, if it applies. The Complaint alleges facts sufficient to show the increased risk is far from "hypothetical." *Food & Water Watch*, 79 F. Supp. 3d at 189. EPA's actions serve no other purpose but to threaten the validity of these waivers. Compl. ¶ 76; *see also id.* ¶¶ 78–81, 85–86; Ex. 22 at 1. In fact, EPA targeted three other waivers last year with similar reclassifications and submissions which led to the only congressional resolutions of disapproval of waivers in the sixty-year history of the waiver provision, Compl. ¶¶ 55–70. *See In re Navy Chaplaincy*, 697 F.3d 1171, 1176–77 (D.C. Cir. 2012) ("The prospect of future injury becomes significantly less speculative where, as here, plaintiffs have identified concrete and consistently-implemented policies claimed to produce such injury."). Moreover, EPA was directed to develop a plan to upend certain waivers and describes these waivers as fitting that bill. CA Mem. 14.[15] EPA has also repeatedly informed courts that it is considering actions that would moot petitions for review of some these waivers— i.e., that EPA is considering invalidating the waivers. Compl. ¶¶ 78–79. EPA cannot contend that challenges to these waivers are likely to become moot, take actions that serve no other purpose but to produce that result, and then claim it has not substantially increased the risk and probability that its desired result will come to pass.[16]

---

[15] That California could seek redress in a separate proceeding as to *further* injuries EPA would cause it if administratively withdrew one or more of these waivers does nothing to establish that California lacks standing to seek redress for the distinct injuries it is suffering from EPA's Reclassifications and Submissions. *Contra* EPA Mem. 21

[16] EPA cannot avoid the obvious intent behind its own actions by characterizing them as "simply an interbranch communication informing Congress about an agency's activities." EPA Mem. 19. Neither the Reclassifications nor the press release in which they were announced are communications to Congress. Moreover, if EPA's 2025 submissions are indicative, these 2026 Submissions likely did *not* inform Congress about any recent EPA activities—i.e., the *change* in status EPA claims to have manufactured or the reason(s) for the change. Compl. ¶ 57 (EPA's 2025 submissions did not acknowledge or explain EPA's change in position). Congress is also already well aware of EPA's waiver activities generally. *Id.* ¶¶ 23–30, 43–44, 55–70.

3. EPA then resorts to claiming California is choosing to injure itself by expending state funds and diverting resources to start planning now for the heightened possibility that certain state regulations may become unenforceable. EPA Mem. 21. This is simply a rehash of EPA's unavailing argument that EPA's actions have had no effect—i.e., have not increased risk in a way to which California must respond. Thus, EPA repeats its argument that these "claims of harm are not substantiated by specific facts or evidence." EPA Mem. 21. But California does not need *evidence* to defeat a motion to dismiss, and the allegations in the Complaint are more than specific enough. Compl. ¶¶ 90–91. Moreover, "[s]tanding doctrine . . . does not require a plaintiff to show that it made no choice that put it at risk of injury." *Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30, 51 (D.D.C. 2020). Injuries are only "self-inflicted" for standing purposes when they are "so completely due to the complainant's own fault as to break the causal chain." *Id.* "As long as the organization will expend resources to counteract the effects of the defendant's challenged conduct, that diversion can suffice for Article III purposes." *Whitman-Walker Clinic, Inc. v. DHHS*, 485 F. Supp. 3d 1, 19 (D.D.C. 2020) (citation modified) (rejecting self-inflicted argument). California alleges precisely that. Compl. ¶¶ 90, 91. That more than suffices to defeat EPA's motion to dismiss. *See also New Jersey*, 989 F.3d at 1047 (recognizing injury from EPA action that "makes petitioner's task of complying with the Clean Air Act more difficult and onerous" (citation modified)).

4. Finally, EPA claims that California seeks relief to redress "potential injuries as to actions not challenged here" by asking this Court to enjoin EPA from reclassifying other Clean Air Act preemption waivers from orders into rules, going so far as to claim that this Court is not authorized to enjoin future agency actions. EPA Mem. 24. To the contrary, it is well established that courts are authorized to enjoin a defendant from committing similar violations in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). In order to establish standing to seek such an injunction, plaintiffs must show a "real or immediate threat that the plaintiff will be wronged again." *Id.* at 111. "[A]bsolute certainty is not required"—it is sufficient to establish "a

23

likelihood of injury that rises above the level of unadorned speculation." *NB ex rel. Peacock*, 682 F.3d at 85–86 (citation modified).

Here, California alleges that EPA has granted California more than seventy-five preemption waivers as adjudicatory orders (Compl. ¶¶ 6, 31); that EPA reclassified three of these waivers into "rules" in 2025 (*id.* ¶¶ 13, 56); that EPA then reclassified the additional four waivers at issue in this litigation (*id.* ¶ 7–9); and that EPA's actions are part of a continued campaign of hostility towards California's preemption waivers (*id.* ¶¶ 10, 78–86). These allegations—when viewed in the light most favorable to California, as they must be at the motion to dismiss stage—are more than sufficient to establish a likelihood that California will be injured by reclassification of other preemption waivers, and that California has standing to seek an injunction against future reclassifications. *See NB ex rel. Peacock*, 682 F.3d at 84 (agency's past denials of plaintiff's Medicaid claims was sufficient to show denials are likely in the future); *In re Navy Chaplaincy*, 697 F.3d at 1176–77 (allegations of "consistently-implemented policies" claimed to produce injury are sufficient).

## V.    THE BALANCING OF THE EQUITIES SUPPORTS GRANTING THE REQUESTED PRELIMINARY INJUNCTION

Lastly, EPA makes no credible arguments for why the balance of the equities or the public interest weigh against a preliminary injunction that would restore a decades-long status quo. [17] *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Tellingly, EPA starts by informing the Court that it need not even reach these factors. EPA Mem. 30. EPA then fails to identify any concrete harm it would suffer from the requested preliminary injunction. Nor does EPA point to

---

[17] EPA argues that this preliminary injunction "would alter, rather than preserve, the status quo," and therefore should be held to a higher legal standard. *See* EPA Mem. 9. Yet at the same time, EPA claims that "the actions California seeks to challenge did not change the status quo." EPA Mem. 18–19. These positions are not only irreconcilable, they are also incorrect. EPA's actions did change the status quo, *supra* Sec. II, and California's motion seeks to restore it, CA Mem. 32–33. In contrast, the cases EPA cites involve requests for preliminary injunctions that would create entirely new statuses between the parties, rather than restoring previously existing conditions. *See Singh v. Carter*, 185 F. Supp. 3d 11, 14, 17 (D.D.C. 2016) (requiring the Army to grant a religious accommodation it had never before granted); *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (compelling U.S. DOJ to release documents that it had never before released).

any specific evidence that could support harm. Instead, EPA reiterates its merits arguments. But as explained above, EPA's actions were not "pursuant to a statutory scheme." EPA Mem. 30. Nor would a preliminary injunction require this Court to "exceed its power," *id.* at 30–31, or improperly intrude "into the workings of a coordinate branch of the Government," *id.* at 30. Rather, the requested injunction would follow the ordinary course of judicial proceedings and serve the public interest by enjoining "the perpetuation of unlawful agency action." *Newby*, 838 F.3d at 12; *see also* CA Mem. 32. The D.C. Circuit has consistently been "appropriately skeptical of the idea that the government is irreparably injured 'any time' it is enjoined by a court, particularly when the order at issue 'maintains the status quo,'" and that is exactly what California asks for here. *Miot v. Trump*, No. 26-5050, 2026 WL 659420, at \*2 (D.C. Cir. Mar. 6, 2026).

Moreover, even if EPA's actions were validly "pursuant to a statutory scheme," EPA Mem. 30, and therefore in the public interest, EPA still fails to articulate why a temporary delay in those actions would cause any harm now. These waivers were "orders," and unsubmitted to Congress, for *years* (up to seventeen). *See* CA Mem. 33. EPA reclassified and submitted three other waivers more than a year ago. *See id.* at 10–13. EPA cannot claim, and certainly has not established, that there is a suddenly great public interest in these Reclassifications and Submissions now. *See Miot*, 2026 WL 659420, at \*4 ("The government has not explained why its inability to [take action] . . . was for many months tolerable but now constitutes a 'certain,' 'great,' and 'imminen[t]' harm"). All the more so because, in EPA's own view, its actions have no consequence for Congress's ability to legislate or the agency's ability to take administrative action. *See* EPA Mem. 20–24. The final two *Winter* factors therefore strongly favor a preliminary injunction.

## CONCLUSION

California respectfully requests the Court grant the requested preliminary injunction requiring EPA to restore the status quo that existed before its actions. California also respectfully requests the Court deny EPA's motion to dismiss and order the agency to answer the Complaint.

Dated:  July 17, 2026

Respectfully Submitted,

ROB BONTA
Attorney General of California
MYUNG PARK
DAVID ZAFT
Supervising Deputy Attorneys General


*/s/M. Elaine Meckenstock*
M. ELAINE MECKENSTOCK
NATALIE COLLINS
KATHERINE GAUMOND
*Deputy Attorneys General*
Office of the Attorney General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA  94612-0550
Telephone: (510) 879-0299
Email: Elaine.Meckenstock@doj.ca.gov

*Counsel for Plaintiff State of California*

26