**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

STATE OF CALIFORNIA,

        *Plaintiff,*

  v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, *and* LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency,

        *Defendants.*

CA No.: 1:26-cv-02185-BAH

**PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE BY AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS AND AMERICAN PETROLEUM INSTITUTE**

**TABLE OF CONTENTS**

**Page**

Introduction........................................................................................................................1

Background.........................................................................................................................2

Legal Standard ..................................................................................................................4

Argument ...........................................................................................................................5

I.      Proposed Intervenors Do Not Meet the Standard for Intervention as of
Right.......................................................................................................................5

         A.     Proposed Intervenors lack a protectable interest in the underlying
case that would be impeded by disposition of this case..............................5

         B.     Proposed Intervenors' interests are adequately represented by
Defendants. .................................................................................................8

II.     Proposed Intervenors Do Not Meet the Standard for Permissive
Intervention .........................................................................................................10

III.    If the Court Grants Intervention, It Should Impose Reasonable Case
Management Conditions ......................................................................................11

Conclusion .......................................................................................................................12

i

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Fuel & Petrochemical Mfrs. v. EPA*
No. 22-1084 (D.C. Cir. filed May 13, 2022) ........................................................................3, 8

*Am. Fuel & Petrochemical Mfrs. v. U.S. EPA*
No. 25-1481 (9th Cir. filed March 7, 2025)...........................................................................3, 8

*Am. Trucking Ass'ns, Inc. v. EPA*
600 F.3d 624 (D.C. Cir. 2010) ....................................................................................................7

*County of San Miguel, Colo. v. MacDonald*
244 F.R.D. 36 (D.D.C. 2007) (ESA) ..........................................................................................9

*Ctr. for Biological Diversity v. U.S. EPA*
274 F.R.D. 305 (D.D.C. 2011).................................................................................................10

*Defenders of Wildlife v. Jackson*
284 F.R.D. 1 (D.D.C. 2012)....................................................................................................5, 6

*Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*
No. 19-cv-746, 2020 WL 12967765 (D.D.C. Apr. 17, 2020)...................................................12

*Diamond Alternative Energy, LLC v. EPA*
606 U.S. 100 (2025)....................................................................................................................7

*DSMC, Inc. v. Convera Corp.*
273 F. Supp. 2d 14 (D.D.C. 2002) ..............................................................................................9

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*
146 F.3d 1042 (D.C. Cir. 1998).................................................................................................4

*Engine Mfrs. Ass'n v. U.S. EPA*
88 F.3d 1075 (D.C. Cir. 1996)....................................................................................................7

*Forest Cnty. Potawatomi Cmty. v. United States*
317 F.R.D. 6.............................................................................................................................11

*Forest Conservation Council v. U.S. Forest Serv.*
66 F.3d 1489 (9th Cir. 1995) ......................................................................................................9

*Fund for Animals, Inc. v. Norton*
322 F.3d 728 (D.C. Cir. 2003) (ESA)........................................................................................9

# TABLE OF AUTHORITIES
## (continued)

**Page**

*HRH Servs. LLC v. Travelers Indem. Co.*
  No. 23-cv-02300, 2024 WL 4699925 (D.D.C. Nov. 6, 2024) ....................................................9

*Inst. Shareholder Servs., Inc. v. Sec. & Exchange Comm'n*
  142 F.4th 757 (D.C. Cir. 2025) ...............................................................................................9

*Jones v. Prince George's Cnty., Maryland*
  348 F.3d 1014 (D.C. Cir. 2003) .............................................................................................6

*Kleissler v. U.S. Forest Serv.*
  157 F.3d 964 (3d Cir. 1998) ...................................................................................................9

*Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009) .........................................6

*Roane v. Gonzales*
  269 F.R.D. 1 (D.D.C. 2010) ....................................................................................................5

*SEC v. Prudential Secs. Inc.*
  136 F.3d 153 (D.C. Cir. 1998) ...............................................................................................4

*Sierra Club v. Espy*
  18 F.3d 1202 (5th Cir. 1994) .................................................................................................9

*Sierra Club v. McCarthy*
  308 F.R.D. 9 (D.D.C. 2015) ...................................................................................................6

*United Mexican States v. Lion Mexico Consolidated L.P.*
  172 F.4th 1 (D.C. Cir. 2026) .............................................................................................4, 10

*Wildearth Guardians v. Salazar*
  272 F.R.D. 4 (D.D.C. 2010) .................................................................................................11

**STATUTES**

United States Code, Title 42
  § 7401(a)(3) ...........................................................................................................................7
  § 7507.....................................................................................................................................7
  § 7543.....................................................................................................................................7
  § 7543(b)(1) ...........................................................................................................................2
  § 7543(e)(2)(A).......................................................................................................................3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

OTHER AUTHORITIES

74 Fed. Reg. 32,744 (July 8, 2009).............................................................................2, 3, 8

78 Fed. Reg. 2112 (Jan. 9, 2013) ....................................................................................2, 3

87 Fed. Reg. 14,332 (Mar. 14, 2022)..............................................................................2, 3

90 Fed. Reg. 640 (Jan. 6, 2025) ......................................................................................2, 3

7C Wright & Miller's Federal Practice and Procedure
   § 1904............................................................................................................................5
   § 1920..........................................................................................................................11

California Code of Regulations, Title 13
   § 1962.2(b)(1)(A) (2022) ..............................................................................................3

**INTRODUCTION**

California seeks through this case prompt judicial review of EPA's decision to reclassify four longstanding Clean Air Act preemption waivers from adjudicatory orders into "rules" without any administrative process or explanation. American Fuel & Petrochemical Manufacturers (AFPM) and American Petroleum Institute (API) (together, Proposed Intervenors) fail to identify an interest in this question sufficient to justify intervention as of right or even permissive intervention, instead introducing attenuated economic concerns and threatening to delay the resolution of California's claims.

Proposed Intervenors assert economic interests arising from the purported impact on the fuel industry of the California regulations made enforceable by these waivers. But even if they could identify any law protecting this alleged interest—which they notably fail to do here—that alleged interest relates to the lawfulness of EPA's decision to grant the waivers under the Clean Air Act. Whether EPA lawfully granted the waivers is not an issue in this case. Proposed Intervenors had an opportunity to protect their rights by filing a petition for review when the waivers were issued by EPA. The outcome of the present litigation will not impair their ability to challenge the validity of the waivers in those separate actions. This litigation is about EPA's reclassification of those waivers after they had been granted, including the corresponding change in California's rights as a licensee. Proposed Intervenors' motion fails to identify any protectable interest in those issues—the ones actually at stake in this case.  Nor does the motion provide any plausible reason that EPA cannot adequately represent such an interest. Accordingly, intervention as of right should be denied.

Permissive intervention is also unavailable because Proposed Intervenors' interest in the lawfulness of the waiver grants, if any, simply does not bear on the legal or factual questions posed by this case. Including Proposed Intervenors in this case thus risks importing new issues that are not properly raised by California's complaint, prejudicing California and delaying resolution of its case. Accordingly, the Court should deny Proposed Intervenors' motion.

Alternatively, if the Court is inclined to grant intervention, California respectfully requests that the Court deny Proposed Intervenors' request to file an opposition to the preliminary injunction and to have that filing treated as a motion to dismiss. California's preliminary injunction motion is fully briefed, and Proposed Intervenors have provided no reason that relief on California's motion should be delayed. It should not. Moreover, EPA's motion to dismiss will be fully briefed in a matter of days, and deciding that motion on the papers already filed would serve California's and the Court's interest in efficiency and would cause no prejudice to Proposed Intervenors. Finally, California also respectfully requests that, if intervention is granted, the Court place reasonable conditions on Proposed Intervenors' participation to ensure that the case is not delayed or waylaid.

## BACKGROUND

In June 2026, EPA purported to reclassify four Clean Air Act preemption waivers granted to California between 2009 and 2024 from adjudicatory orders into "rule[s]," and then claimed that this determination obligated the agency to submit the waivers to Congress for review under the Congressional Review Act (CRA). Compl. (ECF 1) ¶ 9. This reclassification was an unexplained reversal of EPA's conclusion, maintained and reiterated for decades, that these waivers are *not* rules. Compl. ¶ 8. Indeed, this conclusion is reflected in the waiver grant documents themselves. 74 Fed. Reg. 32,744, 32,784 (July 8, 2009) ("The Congressional Review Act, 5 U.S.C. 801 et seq., . . . does not apply because this action is not a rule . . . ."); 78 Fed. Reg. 2112, 2145 (Jan. 9, 2013) (similar); 87 Fed. Reg. 14,332, 14,379 (Mar. 14, 2022) (similar); 90 Fed. Reg. 640, 642 (Jan. 6, 2025) (similar). EPA followed through on its unjustified and procedurally inadequate actions by transmitting the waivers to Congress. Compl. ¶ 9.

The four waivers at issue allow California to enforce certain emission standards for new motor vehicles and off-road vehicles sold in California. *Id.* ¶ 32. In 1967, Congress determined that although other States are preempted from regulating emissions from new motor vehicles, EPA *must* waive that preemption for California unless certain narrow conditions are met. *Id.* ¶ 24; *see* 42 U.S.C. § 7543(b)(1). In 1990, Congress enacted a provision that similarly requires

2

waiver of preemption for California's regulation of emissions from off-road sources. Compl. ¶ 30; *see* 42 U.S.C. § 7543(e)(2)(A). Since 1967, EPA has granted California over seventy-five Clean Air Act preemption waivers. Compl. ¶ 31.

The first waiver at issue in this case was granted in 2009 and authorizes enforcement of California's first greenhouse gas (GHG) emission standards for new motor vehicles. Compl. ¶ 32; 74 Fed. Reg. at 32,744. The second waiver, granted in 2013, authorizes enforcement of California's Advanced Clean Cars I regulation, strengthening emission standards for certain vehicles and increasing requirements for sales of zero-emission vehicles. Compl. ¶ 32; 78 Fed. Reg. at 2112.[1] In 2019, EPA purported to withdraw the portions of the 2013 waiver authorizing the Advanced Clean Cars I GHG standards and zero-emission vehicle requirements. Compl. ¶ 32. The third waiver at issue in this case, granted in 2022, reinstated the portions of the 2013 waiver that had been withdrawn. 87 Fed. Reg. at 14,332. Finally, the fourth waiver at issue was granted in 2024 and authorizes enforcement of certain amendments to the Small Off-Road Engine (SORE) regulations requiring the transition of small equipment, like leaf blowers, to zero-emission. Compl. ¶ 32; 90 Fed. Reg. at 640. Tens of millions of Californians still live, work, study, and play in regions with some of the worst air quality in the nation. These regulations are part of the State's comprehensive plans to improve air quality and protect the public health and welfare. Compl. ¶¶ 33–37.[2]

EPA's reclassification and transmission to Congress of these four waivers is the second time EPA has purported to treat California's Clean Air Act preemption waivers as rules under the CRA. The first time was in February 2025, when EPA announced, with a similar lack of reasoning or justification, that it had determined that three waiver decisions were rules. Compl.

---

[1] These zero-emission vehicle sales requirements ended with model year 2025. Cal. Code Regs. tit. 13, § 1962.2(b)(1)(A) (2022); *see also* 78 Fed. Reg. at 2112.

[2] Neither AFPM nor API challenged EPA's waiver grants in 2009 and 2013. AFPM did challenge the 2022 waiver reinstatement, and the waiver grant allowing enforcement of the SORE amendments. *Am. Fuel & Petrochemical Mfrs. v. EPA*, No. 22-1084 (D.C. Cir. filed May 13, 2022); *Am. Fuel & Petrochemical Mfrs. v. U.S. EPA*, No. 25-1481 (9th Cir. filed March 7, 2025). AFPM has subsequently asked those courts to hold both of these challenges in abeyance. *See id.*

¶ 56. Although both the Government Accountability Office and the Senate Parliamentarian issued independent decisions concluding that waiver actions are not rules, Congress changed its own procedures in order to enact a resolution of disapproval for each waiver. *Id.* ¶¶ 60–69. EPA's reclassification and submission of these four waivers is a new attempt to overturn additional waivers and prevent California from enforcing its laws. *Id.* ¶¶ 78, 82. This suit seeks a declaration that EPA's acts are unlawful and orders vacating and enjoining the reclassification and submission. *Id.* ¶¶ 94–127.

## LEGAL STANDARD

To intervene as a matter of right under Federal Rule of Civil Procedure 24(a), a party must "meet four requirements: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *SEC v. Prudential Secs. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998).

Alternatively, "[a] court 'may' allow intervention under Rule 24(b)(1) if the would-be intervenor presents '(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action.'" *United Mexican States v. Lion Mexico Consolidated L.P.*, 172 F.4th 1, 11 (D.C. Cir. 2026) (quoting *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)). However, "[e]ven when a movant meets those criteria, a court retains discretion to deny intervention." *Id.*; *see also E.E.O.C.*, 146 F.3d at 1046 (referring to the "wide latitude afforded to district courts under the rule"). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

4

**ARGUMENT**

I.   **PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR INTERVENTION AS OF RIGHT**

A.   **Proposed Intervenors lack a protectable interest in the underlying case that would be impeded by disposition of this case**

Proposed Intervenors are not entitled to intervene as of right because their alleged interests relate to the lawfulness of EPA's prior decisions to grant the waivers—at issue in separate litigation—and not the loss of protections *for California* stemming from the reclassification of these waivers. This action challenges EPA's reclassification and submission of the four waivers, which violates the law and deprives California of administrative protections to which it is entitled. In order to claim that they too have a stake in the reclassification and submission actions, Proposed Intervenors purport an interest in "congressional review of agency actions that authorize regulatory programs designed to reduce demand for gasoline and diesel fuel." Mem. in Supp. of Mot. to Intervene (ECF 22-1) 6 ("Mem. to Intervene"). But Proposed Intervenors do not explain why they have a particularized or legally protected right to congressional review. Rather, their only particularized argument is that the enforcement of these state emission standards (as authorized by EPA's waivers) allegedly impacts their members' ability to sell petroleum products. Decl. of Geoff Moody (ECF 22-2) ¶¶ 6, 10; Decl. of Will Hupman (ECF 22-3) ¶ 10. For several reasons, this is too attenuated an interest to establish Proposed Intervenors' entitlement to intervention as of right. 7C Wright & Miller's Federal Practice & Procedure § 1904 (3d ed. April 2026 Update) (while Federal Rule of Civil Procedure 24 is applied liberally, it also "set[s] bounds that must be observed").

At the outset, Proposed Intervenors fail to demonstrate that their desire to avoid the alleged economic effects of California's standards provides a legally protectable interest in congressional review. Mem. to Intervene 6-7. The interest requirement under Rule 24(a) "is satisfied 'not [by] *any* interest the applicant can put forward, but only [by] a legally protectable one.'" *Defenders of Wildlife v. Jackson*, 284 F.R.D. 1, 6 (D.D.C. 2012) (alterations and emphasis in original) (quoting *Roane v. Gonzales*, 269 F.R.D. 1, 3 (D.D.C. 2010), *rev'd on other grounds*, *Roane v.*

*Leonhart*, 741 F.3d 147 (D.C. Cir. 2014)). Proposed Intervenors have identified no law protecting their alleged interest, and this alone is fatal to intervention as of right. *Jones v. Prince George's Cnty., Maryland*, 348 F.3d 1014, 1019 (D.C. Cir. 2003) (intervenor "must satisfy all four elements of the Rule in order to intervene as of right").

Moreover, the economic interests identified by Proposed Intervenors are far removed from the actual subject matter of this case. A legally protected interest must be "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *Jackson*, 284 F.R.D. at 6 (citation modified); *see also Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009) ("A court must carefully analyze whether the … asserted interest really is bound up with the subject matter of the litigation."); *Sierra Club v. McCarthy*, 308 F.R.D. 9, 12 n.1 (D.D.C. 2015) (finding that proposed intervenor with interest in substance of agency decision lacked an interest in the procedural challenge to the agency decision that was the subject of the lawsuit). Indeed, in a case concerning the 2025 congressional resolutions disapproving of three California preemption waivers, the Ninth Circuit recently issued an order finding that these Proposed Intervenors' economic interests—the same as those asserted here—were insufficient to support intervention as of right because they were too attenuated to the issues being litigated. Memorandum, No. 25-8013 (9th Cir. July 21, 2026) Dkt. 47.1 at 11 (unpublished summary disposition) (the "economic interests" AFPM, API, and others rely on to support their claim for intervention as of right "are 'several degrees removed' from the 'backbone of this litigation'"). The "attenuated chain of causality" that was insufficient to support intervention in the Ninth Circuit—where Congress had voted to disapprove the waivers—is even more attenuated here. EPA's actions have not made the waivers ineffective— the only action that would purportedly affect Proposed Intervenors—and this Court's judgment will not change that.[3]

---

[3] This is not the case for California, which faces immediate economic harm from the threat to these waivers and the loss of concrete procedural rights under the APA as a licensee. *See* CA PI Mot. (EFC No. 13-1) 17–18, 28–32. And Proposed Intervenors do not explain how, by their own account, they have a protectable interest in this case but California—which has

(continued…)

Proposed Intervenors rely on *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100 (2025), to establish their interest in the case. *See* Mem. to Intervene 6–7. But that case is inapposite. In *Diamond*, the Supreme Court found that fuel producers had standing to bring a challenge under the Clean Air Act to EPA's decision granting a California preemption waiver. *Diamond*, 606 U.S. at 104–05. No Clean Air Act claims are at stake in this case. *See* Compl. ¶¶ 94–127 (alleging violations of the Administrative Procedure Act and *ultra vires* agency action). Proposed Intervenors' own formulation of their interest demonstrates the mismatch with *Diamond Alternative Energy*: the Clean Air Act has nothing to say about "*congressional review* of agency actions that authorize regulatory programs designed to reduce demand for gasoline and diesel fuel" or "*Congress's opportunity to disapprove* agency actions that authorize regulatory programs injuring Proposed Intervenors' members." Mem. to Intervene 6, 8 (emphasis added).

Proposed Intervenors also vaguely claim an interest in "preserv[ing] the uniform national framework established by" the Clean Air Act, but the Clean Air Act has nothing to say about such a framework. Mem. to Intervene 2. The Act, which begins with a recognition that "air pollution prevention . . . and air pollution control at its source is the primary responsibility of States and local governments," 42 U.S.C. § 7401(a)(3), reflects an intentional blend of federal and state authority. With respect to regulating mobile emission sources, "EPA and the States . . . share responsibility." *Am. Trucking Ass'ns, Inc. v. EPA*, 600 F.3d 624, 626 (D.C. Cir. 2010). Instead of a uniform national framework, Congress explicitly and deliberately created a system under which California may set its own emission standards and other States may opt in. *See* 42 U.S.C. §§ 7543, 7507; *see Engine Mfrs. Ass'n v. U.S. EPA*, 88 F.3d 1075, 1080 (D.C. Cir. 1996) ("[M]otor vehicles must be either 'federal cars' designed to meet the EPA's standards or 'California cars' designed to meet California's standards.").

Even if Proposed Intervenors had asserted a legally protected interest under the Clean Air Act, they have not shown how this action could impair that legal interest. To the extent Proposed

---

significant interests in the case that Proposed Intervenors do not—somehow lacks standing. *See* Opp'n to Pl.'s Mot. for Prelim. Inj. (ECF 22-5) 13–14.

7

Intervenors have an interest in the lawfulness of any waiver at issue in this case, they could have asserted that interest by filing a timely petition for review. *See, e.g.*, 74 Fed. Reg. at 32,783–84 (describing how judicial review of waiver decision may be sought and explaining that judicial review "may not be obtained in subsequent enforcement proceedings"). Indeed, as to two of the waiver decisions at issue, Proposed Intervenors filed such a petition. *See* Petition for Review, *Am. Fuel & Petrochemical Mfrs. v. EPA*, No. 22-1084 (D.C. Cir. filed May 13, 2022) (AFPM's petition for review of 2022 waiver); Petition for Review, *Am. Fuel & Petrochemical Mfrs. v. U.S. EPA*, No. 25-1481 (9th Cir. filed March 7, 2025) (AFPM's petition for review of 2024 waiver). Proposed Intervenors' motion contains a conclusory reference to the need to avoid "future duplicative litigation," Mem. to Intervene 10, but their cases under the Clean Air Act are not duplicative of this litigation, as they consist of entirely different claims brought under an entirely different statute challenging entirely different agency action. That the outcome of this case could relate to the relief Proposed Intervenors seek in their Clean Air Act cases does not render the cases "duplicative," nor is Proposed Intervenors' preference to litigate this case rather than their own cases a protectable interest supporting intervention. A decision in this case does not foreclose, impair, or otherwise adversely affect Proposed Intervenors' Clean Air Act rights or other legal rights in these other proceedings.

**B.    Proposed Intervenors' interests are adequately represented by Defendants.**

Moreover, Proposed Intervenors cannot show that Defendants will not adequately represent their interests. Proposed Intervenors argue that the federal government cannot protect their members' "narrow, parochial economic and legal interests." Mem. to Intervene 8–9. But Proposed Intervenors do not have any interest in the subject of this litigation—EPA's decision to reclassify a waiver as a rule and submit that waiver to Congress—much less a "parochial" one. While every American surely has an interest in seeing agencies follow the law and in the interpretation of federal statutes like the APA, that is the exact opposite of a narrow or parochial interest that cannot be represented by the federal government. The cases cited by Proposed

Intervenors are not to the contrary—all involve intervention in Endangered Species Act (ESA) or National Environmental Policy Act (NEPA) cases, and not reclassification decisions made in contravention to the APA. In each case, the court articulated the specific interests directly implicated by the litigation—such as the Natural Resources Department of Mongolia's interest in "Mongolia's people and natural resources," as applied to a sheep within Mongolia's borders—that the federal government had not or was unlikely to adequately represent. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (ESA), *abrogation recognized on other grounds*, *Inst. Shareholder Servs., Inc. v. Sec. & Exchange Comm'n*, 142 F.4th 757 (D.C. Cir. 2025); *County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36 (D.D.C. 2007) (ESA); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) (NEPA); *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995) (NEPA), *abrogated on other grounds*, *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) (ESA and NEPA); Mem. to Intervene 8–9. The fact that the federal government cannot represent all parties' parochial interests in the protection of an animal species or the direct impacts of a given project on third parties, does not show that the federal government is inadequate to represent Proposed Intervenors' interest in EPA's actions here reclassifying certain waivers without process or explanation.

And Proposed Intervenors fail to identify any specific areas in which their interests or arguments diverge from Defendants', instead relying on vague references to "the broad public interest" versus "more narrow, parochial interests," and the possibility that the federal government may at some point in the future change its position. *See DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 26 (D.D.C. 2002) ("Conclusory, unsupported arguments are insufficient to meet [Rule 24(a)] burden."). Such nonspecific references are insufficient to defeat the "presumption of adequate representation" that exists where "both the intervenor and existing party have the same ultimate objective." *HRH Servs. LLC v. Travelers Indem. Co.*, No. 23-cv-02300, 2024 WL 4699925, at *9 (D.D.C. Nov. 6, 2024) (quoting *Cobell v. Jewell*, No. 96-01285, 2016 WL 10704595, at *2 (D.D.C. Mar. 30, 2016)).

Because Proposed Intervenors have failed to show that Defendants cannot represent their interests, the Court should deny intervention as of right.

## II.    PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR PERMISSIVE INTERVENTION

Proposed Intervenors should also be denied permissive intervention. As discussed above, Proposed Intervenors' asserted economic interest is not directly relevant to the issues at stake in this litigation, and thus allowing Proposed Intervenors to intervene would risk importing irrelevant issues—such as the waivers' propriety under the Clean Air Act—and unnecessarily complicating the case. Further, their intervention would prejudice California by requiring otherwise unnecessary work that does not advance California's case and delaying adjudication. *See Lion Mex. Consol. L.P.*, 172 F.4th at 12 (denying permissive intervention that would have caused delay by requiring the parties to expend time and resources to brief irrelevant arguments). These risks are illustrated by Proposed Intervenors' proposed separate opposition to the motion for preliminary injunction. *See* Opp'n to Pl.'s Mot. for Prelim. Inj. (ECF 22-5). If California were required to respond to Proposed Intervenors' opposition, the State would face delay in resolving its urgent motion. *Id.* And six days after filing their intervention motion, Intervenor Defendants filed a motion to treat their proposed opposition as a motion to dismiss, which, if granted, would extend the briefing schedule on that motion still further. Mot. to Treat Opp'n as Mot. to Dismiss (ECF 25) ("Mot. to Convert"). Such delay prejudices California while adding nothing to the case.[4]

Nor is Proposed Intervenors' claim that they would contribute "specialized economic and technical expertise" to the case persuasive, as it is unclear why or how they would have economic or technical expertise relevant to EPA's authority to reclassify the waivers as it did. Mem. to Intervene 10; *see Ctr. for Biological Diversity v. U.S. EPA*, 274 F.R.D. 305, 313 (D.D.C. 2011) (denying intervention where proposed intervenors' technical expertise was irrelevant to legal questions and proposed intervenors offered "no more than conclusory

---

[4] *See* Notice of Supplemental Authority (ECF 30) (notifying the Court that EPA has reclassified additional waivers and submitted them to Congress since this action was filed).

assertions that their participation will be helpful" as to relevant issues). This Court should deny Proposed Intervenors' motion and allow them to participate, if at all, by filing an amicus brief at the merits stage.

## III.    IF THE COURT GRANTS INTERVENTION, IT SHOULD IMPOSE REASONABLE CASE MANAGEMENT CONDITIONS

If the Court nonetheless intends to grant Proposed Intervenors' motion, California respectfully requests that the Court decline to file the proposed opposition to California's preliminary injunction motion and deny Proposed Intervenors Motion to Convert. Both the preliminary injunction motion and motion to dismiss are now fully briefed. California requests that the Court resolve those motions expeditiously, rather than permitting Proposed Intervenors to file additional briefs to which California would be entitled to, and would indeed need to, respond. Whatever this Court's decisions on the fully briefed motions, declining to allow further filings on those motions will not prejudice Proposed Intervenors' participation in the case going forward. *See* 7C Wright & Miller's Federal Practice and Procedure § 1920 (3d ed. April 2026 Update) (intervenors join a suit "subject to the proceedings that have occurred prior to [their] intervention").

In addition, California respectfully requests the Court impose the following reasonable limitations on Proposed Intervenors' participation for the reasons discussed above:

(1) Proposed Intervenors shall not initiate discovery; and

(2) Proposed Intervenors' arguments and defenses shall be limited to those claims and issues raised in any operative complaint(s).

Such conditions are authorized under Federal Rule of Procedure 24(a) and 24(b), are routinely applied, and will help promote judicial efficiency. *See Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 20 (D.D.C. 2010) ("[E]ven where the Court concludes that intervention as a matter of right is appropriate, its inquiry is not necessarily at an end: district courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action."); *see, e.g.*, *Forest Cnty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 15–16 (requiring intervenors

11

to "confine their arguments to the existing claims in this action" and collecting cases imposing conditions on intervenors); *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, No. 19-cv-746, 2020 WL 12967765, at *2 (D.D.C. Apr. 17, 2020) (imposing conditions on intervenors including prohibiting intervenors from seeking discovery without leave of court).

## CONCLUSION

For the foregoing reasons, California respectfully requests that the Court deny the motion to intervene. In the alternative, California respectfully requests that the Court impose the case management conditions described above to avoid prejudice to California.

Dated: July 24, 2026

Respectfully Submitted,

ROB BONTA
Attorney General of California
MYUNG PARK
Supervising Deputy Attorney General

By: */s/Natalie Collins*
NATALIE COLLINS
*Deputy Attorney General*
Office of the Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 738-9140
Email: Natalie.Collins@doj.ca.gov

*Counsel for Plaintiff State of California*

12

# CERTIFICATE OF SERVICE

Case Name:    California v. U.S. EPA, et al.
Case No.        1:26-cv-02185-BAH

I hereby certify that on <u>July 24, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE BY AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS AND AMERICAN PETROLEUM INSTITUTE

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>July 24, 2026</u>, at San Diego, California.

|  |  |
|---|---|
| Juan Llorens | */s/ Juan Llorens* |
| Declarant | Signature |