**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF CALIFORNIA, <br><br>       *Plaintiff,* <br><br>   v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency, <br><br>       *Defendants*, <br><br> and <br><br> AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, and AMERICAN PETROLEUM INSTITUTE, <br><br>       *Defendant-Intervenors*. | CA No.: 1:26-cv-02185-BAH |

**PLAINTIFF CALIFORNIA'S OPPOSITION TO**
**INTERVENORS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT..........................................................................................................................1

    I.    California's Claims Are Justiciable ........................................................................2

        A.    Section 805 Does Not Bar California's Claims ..........................................2

        B.    California Has Standing...............................................................................7

            1.    California Has Sufficiently Alleged It Is Injured by EPA's Actions ......................................................................................7

            2.    The Requested Relief Is Available and Would Provide Redress ......................................................................................9

        C.    California's Claims Present No Political Questions ..................................12

    II.    California Has Stated Claims Against the Reclassifications ..............................133

        A.    EPA's Reclassifications Are Final Agency Action ..................................13

        B.    EPA's Reclassifications Are Unlawful.....................................................15

    III.    California Has Also Stated Claims against EPA's Submissions ..........................15

CONCLUSION.....................................................................................................................17

# TABLE OF AUTHORITIES

**Page**

CASES

*American Wild Horse Campaign v. Bernhardt*
  442 F.Supp.3d 127 (D.D.C. 2020)........................................................................................14

*Ansara v. Eastland*
  442 F.2d 751 (D.C. Cir. 1971)..............................................................................................10

*Arizona Dream Act Coalition v. Brewer*
  75 F.3d 1053 (9th Cir. 2014)................................................................................................11

*Bean LLC v. John Doe Bank*
  291 F. Supp. 3d 34 (D.D.C. 2018)........................................................................................10

*Bennett v. Spear*
  520 U.S. 154 (1997)..............................................................................................................14

*COMSAT Corp. v. FCC*
  114 F.3d 223 (D.C. Cir. 1997)................................................................................................2

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*
  452 F.3d 798 (D.C. Cir. 2006)..............................................................................................16

*Engine Mfrs. Ass'n v. EPA*
  88 F.3d 1075 (D.C. Cir. 1996)................................................................................................5

*Equal Rights Ctr. v. Post Props., Inc.*
  633 F.3d 1136 (D.C. Cir. 2011)..............................................................................................8

*Escobar Molina v. DHS*
  811 F.Supp.3d 1 (D.D.C. 2025)..............................................................................................9

*Ford Motor Co. v. EPA*
  606 F.2d 1293 (D.C. Cir. 1979)..............................................................................................4

*Hecht Co. v. Bowles*
  321 U.S. 321 (1944)................................................................................................................9

*Huisha-Huisha v. Mayorkas*
  27 F.4th 718 (D.C. Cir. 2022)..............................................................................................11

*In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*
  928 F.3d 42 (D.C. Cir. 2019)..................................................................................................7

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Indep. Equip. Dealers Ass'n v. EPA*
  372 F.3d 420 (D.C. Cir. 2004) ...........................................................................16

*Jibril v. Mayorkas*
  20 F.4th 804 (D.C. Cir. 2021) ..............................................................................8

*Lee v. Garland*
  120 F.4th 880 (D.C. Cir. 2024) ..........................................................................12

*Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*
  627 F.2d 1095 (D.C. Cir. 1979) ...........................................................................3

*Nat. Res. Def. Council v. EPA*
  643 F.3d 311 (D.C. Cir. 2011) ...........................................................................14

*Nat. Res. Def. Council, Inc. v. Hodel*
  865 F.2d 288 (D.C. Cir. 1988) .............................................................................3

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*
  583 U.S. 109 (2018) ..............................................................................................3

*Nat'l Mining Ass'n v. McCarthy*
  758 F.3d 243 (D.C. Cir. 2014) ...........................................................................16

*Norton v. Southern Utah Wilderness Alliance*
  542 U.S. 55 (2004) ..............................................................................................11

*NRG Power Mktg., LLC v. FERC*
  862 F.3d 108 (D.C. Cir. 2017) .............................................................................4

*Nuclear Regulatory Commission v. EPA*
  643 F.3d 311 (D.C. Cir. 2011) ...........................................................................14

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*
  324 F.3d 726 (D.C. Cir. 2003) ...........................................................................17

*Safari Club Int'l v. Zinke*
  878 F.3d 316 (D.C. Cir. 2017) .....................................................................4, 5, 6

*United States Army Corp of Engineers v. Hawkes*
  578 U.S. 590 (2016) .................................................................................14, 15, 16

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Whitman-Walker Clinic, Inc. v. DHHS*
   485 F.Supp.3d 1 (D.D.C. 2020)......................................................................................9

*Yesler Terrace Community Council v. Cisneros*
   37 F.3d 442 (9th Cir. 1994) ......................................................................................6, 7

**STATUTES**

5 U.S.C.
   § 551(8)........................................................................................................................3
   § 558(c) ..................................................................................................1, 10, 11, 14
   § 704...........................................................................................................................12
   § 705...........................................................................................................................11
   § 706(2)......................................................................................................................10
   § 805..................................................................................................................2, 3, 7

42 U.S.C.
   § 7507......................................................................................................................4, 5
   § 7543(a) ......................................................................................................................5
   § 7543(b)(1) .......................................................................................................3, 4, 5, 6
   § 7543(b)(3) ................................................................................................................5
   § 7543(e)(2)(B) ..........................................................................................................4

47 U.S.C. § 301............................................................................................................4

**FEDERAL REGISTER**

74 Fed. Reg. 32,744 (July 8, 2009).................................................................................5

78 Fed. Reg. 2112 (Jan. 9, 2013) ...................................................................................5

87 Fed. Reg. 14,332 (Mar. 14, 2022)..............................................................................5

90 Fed. Reg. 640 (Jan. 6, 2025) .....................................................................................5

**OTHER AUTHORITIES**

U.S. Dep't of Justice, *Attorney General's Manual on the Administrative
   Procedure Act* (1947)................................................................................................14

**INTRODUCTION**

Intervenors American Fuel and Petrochemical Manufacturers and American Petroleum Institute (collectively, AFPM) move to dismiss California's challenges to the United States Environmental Protection Agency's (EPA's) actions (1) reclassifying four Clean Air Act preemption waivers from orders into rules (Reclassifications); and (2) submitting those same waivers to Congress as though they are rules (Submissions). AFPM's motion should be denied.

To start, Section 805 of the Congressional Review Act (CRA) does not withdraw this Court's jurisdiction over any claim here. AFPM mounts only the barest of arguments that Section 805 bars review of EPA's Reclassifications, highlighting that there is no textual hook to bring those post-hoc relabeling actions under the CRA. In fact, *none* of California's claims are barred by Section 805 because no part of the CRA is triggered absent a federal agency rule, and Clean Air Act preemption waivers are not rules. These waivers afford a single party (California) an exemption from statutory preemption and thus fall squarely within the definition of a licensing order. EPA's Reclassifications cannot change that, and the agency's invocation of the CRA cannot prevent this Court from determining its own jurisdiction. Here, that requires interpreting Section 805 in its statutory context to determine whether that section (or any part of the CRA) applies. It does not.

The rest of AFPM's motion largely targets a strawman of its own making. Starting from the false premise that California's complaint seeks to "direct or unwind Congress's legislative process," ECF 22-5 ("AFPM Mem.") at 1, AFPM argues that California cannot allege any injury because Congress has yet to enact legislation; that the Complaint presents nonjusticiable political questions; and that California challenges non-final agency action. But the Complaint does not ask this Court to direct Congress to do (or not do) anything at all. Rather, California asks this Court to require EPA to stay within the bounds of the powers Congress has given it—which do not include the power to reclassify long settled adjudicatory orders into rules without process or explanation. It is those *EPA actions* that are already injuring the State, and those injuries can be

1

redressed by relief directed at EPA, not Congress. AFPM's critiques of an imaginary complaint cannot support dismissal of the real Complaint California brought.

Even when AFPM does engage with the actual Complaint in this case, the motion remains fatally flawed. AFPM only references California's claims against EPA's Reclassifications occasionally, mostly in the context of arguing those actions are inconsequential and thus lack finality. These arguments rest on the theory that the only consequence that could support finality is invalidation of the waivers—which, as all parties agree, has not occurred. But this theory ignores the consequences that have already resulted from EPA's actions, including the transmittal obligation AFPM itself attributes to EPA's Reclassifications and the termination of California's licensee rights under 5 U.S.C. § 558(c). AFPM cannot establish the absence of finality by turning a blind eye to consequences it elsewhere acknowledges.

California's challenges to EPA's Submissions likewise easily survive AFPM's attacks. AFPM invokes the political question doctrine but then fails to identify the factors that implicate that doctrine, much less establish that *any* of them is present here. And AFPM's arguments that EPA's Submissions are of no consequence are belied by EPA's decision to take those actions— many years after finalizing these waivers—for the sole purpose of altering the applicable legal regime.

AFPM's motion should be denied.

## ARGUMENT

### I. CALIFORNIA'S CLAIMS ARE JUSTICIABLE

#### A. Section 805 Does Not Bar California's Claims

CRA Section 805 does not preclude judicial review of California's claims. ECF 13-1 ("CA Mem.") at 25–28; ECF 27 ("CA Reply") at 2–11. Like EPA, AFPM does not dispute "that the CRA is triggered only by a 'rule.'" AFPM Mem. 7. If the CRA is not triggered, Section 805 is not triggered either because it covers only government conduct "under this chapter." 5 U.S.C. § 805. AFPM advances the same "preposterous" argument as EPA, *COMSAT Corp. v. FCC*, 114 F.3d 223, 227 (D.C. Cir. 1997), namely, that Section 805 bars judicial review of the question

2

whether EPA's waivers are "rules." AFPM Mem. 7. Here, the answer to that question dictates whether Section 805 could apply at all. CA Reply 5–6.[1]

Unlike EPA, AFPM tries to argue that these four waivers are rules; and, thus, that EPA did act "under this chapter" by submitting them to Congress. AFPM Mem. 20–24; *see also id.* at 6–7 (advancing this argument about "EPA's decision to submit"). Even if successful, AFPM's argument addresses only EPA's Submissions and thus still would not bring EPA's Reclassifications of its past orders within the ambit of Section 805. Nothing in the CRA contemplates the extraordinary step of post-hoc reclassification. CA Mem. 28.[2] Indeed, AFPM's sole reference to EPA's Reclassifications in the Section 805 portion of its brief is conclusory and contains no citation to statutory text or other authority. *Compare* AFPM Mem. 7, *with Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 124–29 (2018) (carefully construing text to determine whether agency action was "under" specified statutory provisions).

AFPM's rules argument is wrong anyway. EPA waivers are not rules under the APA, CA Mem. 18–20, 26–27, much less the CRA, *id.* at 27–28. The APA—and, by extension, the CRA—defines "licenses" as orders, not rules. CA Mem. 19, 26–27. Waivers are licenses that grant the recipient (California) a "statutory exemption," 5 U.S.C. § 551(8), from the "application of . . . section [209 of the Clean Air Act]," 42 U.S.C. § 7543(b)(1). And EPA waiver proceedings, whether licensing or not, have the classic hallmarks of adjudication rather than rulemaking. EPA's role in these proceedings is solely to resolve a waiver request from California by assessing "material evidence against a standard of proof to determine whether the parties

---

[1] In none of the Section 805 cases cited by AFPM did the party challenging government conduct dispute the existence of a Section 804 "rule," as California does here. AFPM Mem. 6–7. While it may be that an agency's "failure to submit" a genuine rule, *id.* at 7, is an "omission under" the CRA, 5 U.S.C. § 805, both action and inaction concerning non-rules fall outside the CRA.

[2] Likewise, any weakening of the presumption of reviewability of agency action that may attach to "[e]xecutive responses to congressional reporting requirements," *Nat. Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 318 (D.C. Cir. 1988) (R.B. Ginsburg, J.), cannot attach to EPA's Reclassifications of adjudications into rules. The Reclassifications are presumptively reviewable, and Section 805 is, at minimum, susceptible to an interpretation that preserves their reviewability. CA Reply 6, 8. Even as to EPA's Submissions, the question here is not whether their contents complied with the CRA's reporting requirement, but whether that requirement applies to waivers at all. It does not.

favoring a denial of the waiver have shown that the factual circumstances exist in which Congress intended denial of the waiver." *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1122 (D.C. Cir. 1979); *see also* CA Mem. 19–20. In other words, EPA "adjudicat[es] a particular set of disputed facts." AFPM Mem. 20 (quoting *Safari Club Int'l v. Zinke*, 878 F.3d 316, 320–21 (D.C. Cir. 2017)).

AFPM's claim that waivers "do far more" collapses upon inspection. AFPM Mem. 23. To say waivers "*allow* California's standards *to displace* otherwise applicable federal preemption," *id.* (emphases added), is just another way of saying that waivers *exempt* the recipient's standards from the Clean Air Act's express-preemption provision. An FCC broadcast license, for example, allows its holder to displace the Communications Act's otherwise applicable bar on transmission. *See* 47 U.S.C. § 301. Licenses cannot be transformed into rules by use of the passive voice.[3]

AFPM next asserts that waivers issued to California "permit other States to adopt the same standards." AFPM Mem. 23. That is simply false as to one of the waivers at issue. CA Mem. 14 n.10.[4] As to the remaining three waivers, the freedom of other States to choose standards identical to those for which EPA has granted California a waiver is a direct consequence of the statute, not of any action by EPA. *See* 42 U.S.C. §§ 7507, 7543(e)(2)(B). Indeed, "[t]he statute provides for no determination at all" by EPA "as to the effect of the California standards on other parts of the country." *Ford Motor Co. v. EPA*, 606 F.2d 1293, 1301 n.58 (D.C. Cir. 1979). No other State receives a waiver; each State makes its own decision whether to issue its own emission standards, within the limits *Congress* fixed. *Contra* AFPM Mem. 22 (arguing that waivers "control . . . every adopting state"). And AFPM's suggestion that indirect, downstream effects on third parties are incompatible with adjudication is refuted by example. *E.g.*, *NRG Power Mktg., LLC v. FERC*, 862 F.3d 108, 111–15 (D.C. Cir. 2017) (discussing agency's

---

[3] AFPM's displacement framing also attempts to obfuscate that, like a court in a preemption case, EPA determines whether preemption applies. 42 U.S.C. § 7543(b)(1) (requiring EPA to "waive application" of Section 209(a)). When courts decide that a preemption provision does or does not apply, they do not "prescribe law and policy." *See* AFPM Mem. 21. Nor does EPA when it does the same.

[4] Once again, California uses the term "waiver" here to refer to both waivers granted under Section 209(b) of the Clean Air Act and authorizations granted under Section 209(e).

4

adjudicatory order on tariff for power system affecting utilities, generators, and millions of customers).

AFPM leans on Section 209(b)(3) of the Clean Air Act, which relieves manufacturers from overlapping but different emissions regulation of the same products by California and the federal government. AFPM Mem. 21, 24; *see* 42 U.S.C. § 7543(b)(3). But this legislative choice does not elevate California's "state regulatory program" to the status of "alternative federal-law." AFPM Mem. 21. New vehicles and engines continue to be "certified in California as meeting *California* standards," 42 U.S.C. § 7507 (emphasis added), not alternative federal standards. *See also Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1080 (D.C. Cir. 1996) ("'California cars' [are] designed to meet *California's* standards" (emphasis added)). To the extent there is a rule in Section 209(b)(3), it is a rule imposed on EPA by Congress, not one imposed by EPA on California or anyone else. *Id.* (describing "legislative compromise embodied in § 209(a)").

Notably, waivers fail AFPM's own test for rules, as they are neither "for prospective application only" nor "used in the formulation of basically legislative-type judgment." AFPM Mem. 20 (quoting *Safari Club*, 878 F.3d at 320–21). All four of the waivers here concern California standards addressing products sold before, not just after, EPA took action. 90 Fed. Reg. 640 (Jan. 6, 2025) (standards for products of model years (MY) 2024 and later); 87 Fed. Reg. 14,332 (Mar. 14, 2022) (MY 2017 and later); 78 Fed. Reg. 2112 (Jan. 9, 2013) (MY 2012 and later); 74 Fed. Reg. 32,744 (July 8, 2009) (MY 2009 and later, where MY 2009 began in calendar year 2008). Additionally, in each case, EPA waived preemption for actions California had already taken to adopt its standards. *See* 42 U.S.C. § 7543(a), (b)(1). The only actions that "prescribe[d] law and policy" here were those past *California* rulemakings. *See* AFPM Mem. 21.

For similar reasons, AFPM's reliance on *Safari Club International* is misplaced. There, the United States Fish and Wildlife Service issued generic "negative enhancement findings" that categorically "forbid the importation of elephants" hunted in Zimbabwe. 878 F.3d at 323–24. The D.C. Circuit classified these findings as rules, not adjudications, because they applied on their face "to all potential imports . . . not to any individual parties," *id.* at 333; the Service had

not disposed of "an application for an import permit" or "argued that [its] findings were 'licensing' actions," *id.* at 334; and the findings "established a standard binding on the agency . . . to be applied to future requests to import," *id.*, not to any past conduct. Waivers are different on every score. They are granted to an individual party (California); they resolve a request from that party; they "waive application" of Section 209(a) in full (prospectively and retrospectively); and they establish no standards binding on EPA (or anyone else). 42 U.S.C. § 7543(b)(1).

The out-of-circuit decision in *Yesler Terrace Community Council v. Cisneros*, 37 F.3d 442 (9th Cir. 1994), is also inapposite. AFPM Mem. 22–23. The court there reviewed a discretionary determination by the United States Secretary of Housing and Urban Development (HUD) that the State of Washington's eviction procedures satisfied the elements of due process, as set forth in HUD's regulations. In rejecting the United States' position that HUD's action was an adjudicatory order rather than a rule, the Ninth Circuit stressed that "[n]othing in the statute requires HUD to make a due process determination in the first place." *Id.* at 449. Because HUD did not have "to take any action at all," its very decision to act was a discretionary policy choice, belying the agency's characterization as an adjudication. *Id.* Moreover, HUD's action "had no effect on the State"; its "sole effect . . . was to deprive" tenants in Washington public housing of their right under federal law "to an informal grievance hearing prior to eviction." *Id.* That deprivation of rights operated "only prospectively" upon a "broad category of individuals not yet identified." *Id.* at 448–49. These features rendered HUD's due-process determination a rule.

EPA waivers are different from HUD's determination in *Yesler Terrace* in every material way. EPA has no discretion; it is required to act upon every waiver request California makes. 42 U.S.C. § 7543(b)(1) (EPA "shall . . . waive application of this section . . . ."), (e)(2)(A) (EPA "shall . . . authorize California to adopt and enforce standards and other requirements . . . ."). A waiver also has immediate effect on California and on a narrow, identifiable class of manufacturers that become subject to the State's standards. And, as already explained, the

6

waivers do not announce California rules that are "subsequently applied," *Yesler Terrace*, 37 F.3d at 448; they have immediate retrospective (as well as prospective) effect.

In sum, the four waivers that EPA reclassified and submitted to Congress are not "rules" as defined in Section 804(3) of the CRA, meaning that none of EPA's conduct occurred "under" the CRA as would be required to trigger Section 805. Congress did not strip the Court of jurisdiction to review California's claims.

### B.    California Has Standing

#### 1.    California Has Sufficiently Alleged It Is Injured by EPA's Actions

California has alleged that EPA's actions are injuring the State by threatening its ability to enforce its own laws through facilitating invalidation of these waivers, by depriving California of licensee rights, by causing the State to expend and divert resources, and by hampering state agency work. Compl. ¶¶ 87–92. AFPM acknowledges as much, AFPM Mem. 26, but then fails to demonstrate why those allegations are insufficient to establish standing at the pleading stage.

AFPM first claims that California's asserted injuries rest on the "false premise" that "EPA's June 12 submissions presently threaten the enforceability of California's regulations." AFPM Mem. 27. As a threshold point, this argument does nothing to establish a lack of standing to challenge EPA's Reclassifications. This argument also fails. For starters, AFPM does not explain why it sought to intervene in this case—or how it could have interests sufficient to support intervention—if the EPA actions at issue have no effect on the potential enforceability of California's standards. AFPM similarly fails to explain why EPA took these remarkable actions—submitting waivers granted as far back as 2009—if not to ease the path to invalidation. The facts alleged in the Complaint, which must be accepted as true for purposes of this motion, establish that escalating the threat to the enforceability of the underlying California regulations is the only plausible explanation for EPA's actions. Compl. ¶¶ 78–86; *see also In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019) ("Where, as here, defendants challenge standing at the pleading stage without disputing the facts alleged in the

7

complaint, we accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor." (cleaned up)).

At bottom, AFPM argues that a threat to the enforceability of California's regulations is insufficient because the regulations remain enforceable for now. AFPM Mem. 27. But threats are sufficient to establish standing where "there is a substantial risk" the harm will occur. *Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021) (cleaned up). California has alleged facts sufficient to establish that degree of risk, including the past history of attacks on waivers that began in precisely this way and EPA's own statements in court filings and press releases. Compl. ¶¶ 9–15, 55–56, 67, 69–70, 78–86, 89.[5]

In any event, AFPM's arguments about threats do nothing to undercut several already-occurring injuries California alleges: the loss of its licensee rights, the diversion of its resources, and the impairment of the California Air Resources Board's mission. California is experiencing these harms *now*, notwithstanding that its regulations are still enforceable. AFPM has nothing to say about the first of these injuries, *see* AFPM Mem. 27–28, and that alone defeats AFPM's motion as to standing.

On California's need to expend and divert resources, AFPM appears to argue—in a single sentence buried in a paragraph about a different injury—that this pocketbook injury is self-inflicted. AFPM Mem. 28. The conclusory nature of this assertion and the absence of any supporting authority are both telling. *See id.* In fact, this aspect of "the standing analysis depends not "on the voluntariness or involuntariness of the plaintiffs' expenditures" but rather on "whether they undertook the expenditures in response to, and to counteract, the effects of the defendants'" challenged action. *Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011). California alleges it is doing so here.

---

[5] AFPM's attempt to distinguish cases holding that States suffer sovereign injury when they are unable to enforce their own laws fails for the same reason. AFPM Mem. 27. California cited those cases to establish that the threat here is a grave one—a proposition AFPM does not attempt to refute. *See* CA Mem. 29.

AFPM fares no better trying to distinguish cases holding that impairment of an organization's mission can constitute injury-in-fact. AFPM seeks to limit these cases to contexts where "legal protections" have been altered, AFPM Mem. 28, but the cases do not turn on *how* an organization's mission is being impaired. Rather, they simply hold that "real, concrete obstacles to [Plaintiffs'] work" suffice to establish injury-in-fact. *Whitman-Walker Clinic, Inc. v. DHHS*, 485 F. Supp. 3d 1, 21 (D.D.C. 2020) (modification original, internal quotation marks omitted). *See also Escobar Molina v. DHS*, 811 F. Supp. 3d 1, 51 (D.D.C. 2025) (irreparable "harm is shown if the actions taken by [the defendant] have perceptibly impaired the [organization's] programs" (cleaned up, modifications original)).

California alleges—and, in fact, has shown with unrefuted declarations—that it is being injured now by the EPA actions it seeks to undo. Contrary to AFPM's contentions, these injuries do not "depend[] on a speculative chain of future events," AFPM Mem. 27, and there is no broken "causal chain," *id.* at 13. True, the possible future events that AFPM describes— administrative withdrawal of a waiver or enactment of resolutions of disapproval—would cause California *additional* harms. But the fact that different injuries might occur in the future does not undermine California's allegations of harms occurring now.

### 2. The Requested Relief Is Available and Would Provide Redress

The Complaint establishes redressability as well. California seeks preliminary relief requiring EPA to restore the status quo that preceded the agency's June 12, 2026 actions and preventing EPA from reclassifying other previously granted waivers while the Court reviews EPA's actions. ECF 13-30 (Proposed Order). California seeks permanent relief declaring those actions to be unlawful, vacating those actions, and enjoining EPA from unlawfully reclassifying additional waivers. Compl. at 28–29 (Prayer for Relief). These remedies would redress the injuries California alleges because, as shown above, those injuries are caused by EPA's actions, not some future action of an independent actor. AFPM's arguments to the contrary focus entirely on EPA's Submissions and provide no basis to dismiss claims against the Reclassifications. AFPM's arguments are also meritless.

9

1. The fact that there is no statutory procedure for EPA to withdraw a submission to Congress says nothing about this Court's authority to "set aside agency action," 5 U.S.C. § 706(2), and nothing about this Court's equitable authority, *see Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it."). A court's injunctive powers are not limited to enjoining actions only if a statute dictates how the defendant should withdraw the action. Such a limitation would significantly constrain the equitable powers of the judicial branch, and AFPM provides no citation to support such a proposition.

2. California does not seek an injunction to "bind Congress," as AFPM alleges. AFPM Mem. 17. Nor does California need such an injunction to obtain redress because its injuries are caused by EPA's actions. *Compare* AFPM Mem. 17 *with* CA Reply 20–21 (citing Compl. at 28–29). AFPM does not and cannot credibly dispute the allegations establishing that relief reversing the Reclassifications or Submissions (or both) would reduce state-agency mission impairment and the need to divert state resources and would otherwise redress the harms California alleges.[6]

There is likewise no risk of "institutional friction" with Congress here. *See* AFPM Mem. 19–20. The concerns about "friction" with Congress animating the case AFPM cites are not present here. *See Ansara v. Eastland*, 442 F.2d 751, 752–53 (D.C. Cir. 1971) (affirming denial of emergency relief to void subpoenas issued by a Senate subcommittee in a case naming U.S. Senator as a defendant).[7]

---

[6] AFPM's argument that California's injuries are not redressable by the injunction sought is also contradicted by the position taken in their successful motion to intervene that California's requested injunction would impair AFPM's own interests. ECF 22-1 at 8 ("The requested injunction would therefore impair Proposed Intervenors' interest in preserving Congress's opportunity to disapprove agency actions that authorize regulatory programs injuring Proposed Intervenors' members.").

[7] AFPM's argument that the balance of equities weighs against California similarly rests on characterizing of California's relief as "interrupt[ing] an ongoing process established by Congress" and "inject[ing] the Judiciary into an ongoing Congressional process." AFPM Mem. 28–29. California seeks an injunction against EPA, not Congress. The case cited by AFPM—in which the plaintiff sought an order enjoining the enforcement of a congressional subpoena issued in the service of a legislative investigation—is inapposite. AFPM Mem. 29 (citing *Bean LLC v. John Doe Bank*, 291 F. Supp. 3d 34, 49 n.11 (D.D.C. 2018).

3. AFPM makes a puzzling argument that the requested relief would not redress California's concerns that EPA's actions deprived California of the advance license withdrawal procedures it is entitled to under 5 U.S.C. § 558(c), including notice and opportunity to correct before a withdrawal proceeding is initiated. AFPM argues that any such proceeding will be "subject to whatever procedures the APA requires at that time." AFPM Mem. 18. That is precisely the point: EPA's Reclassifications purported to change the required procedures *now* in a way that injures California. Vacating that action would change them back and redress that injury. Enjoining future similar actions would likewise provide redress by preventing repeated injuries.

4. Similarly puzzling is AFPM's argument that 5 U.S.C. § 705 somehow does not authorize relief. *See* AFPM Mem. 19. Section 705 authorizes reviewing courts to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." To the extent that AFPM is arguing that EPA's actions did not change the status quo, they are incorrect. *See, e.g.*, CA Reply 2. AFPM's allegation that "there is no effective date of a completed transmission to Congress" is of questionable relevance and accuracy, *see* AFPM Mem. 19, and in any event, this Court has authority under section 705 to issue any necessary and appropriate orders to preserve California's rights.

5. Finally, AFPM attempts to characterize California's requested relief as mandatory relief seeking to change the status quo, AFPM Mem. 19, but this misunderstands the relevant status quo. "The status quo is the last uncontested status which preceded the pending controversy," not, as AFPM asserts, the status created by the actions challenged in this litigation. *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022); *see also Arizona Dream Act Coalition v. Brewer*, 75 F.3d 1053, 1061 (9th Cir. 2014) (preliminary injunction prohibiting enforcement of a new policy is prohibitory, not mandatory). EPA similarly attempted to define the status quo as the

11

status created by its challenged actions, ECF 21 ("EPA Mem.") 9, and AFPM's attempts should be rejected for the same reasons, *see* CA Reply 24 n.17.[8]

### C.    California's Claims Present No Political Questions

AFPM's final jurisdictional argument falters out of the gate. None of the factors suggestive of a political question is present as to the Reclassifications and Submissions. *See Lee v. Garland*, 120 F.4th 880, 888 (D.C. Cir. 2024) (distilling the "modern form" of the political-question doctrine). Indeed, AFPM does not even try to argue those factors. Instead, as with its standing argument, AFPM simply misreads California's complaint and the relief it seeks. AFPM Mem. 9–11. The complaint does not challenge any action or inaction by Congress, nor does it ask this Court to prohibit or interfere with legislative action. This is simply not a "dispute[] over legislative action or inaction." *Id.* at 9. It is a challenge to EPA's post-hoc and unexplained Reclassifications and its follow-on Submissions labeling four waivers as (reclassified) "rules." Compl. ¶¶ 95–127.

According to AFPM, Congress is "maintaining" the waivers that are the subject of EPA's Reclassifications and Submissions because it "accept[ed] the waivers for review"—and therefore the political question doctrine precludes review. AFPM Mem. 10; *see also id.* at 9 ("[T]he waivers are presently in the hands of Congress."). But California is not seeking review of the waivers, only the Reclassifications and Submissions. In any case, none of EPA's actions—the waivers, the Reclassifications, or the Submissions—are solely "in the hands of Congress." *Id.* at 9. Congress itself said so, when it authorized judicial review of final agency action without reference to whether Congress was contemplating related legislative action. *See* 5 U.S.C. § 704. If an agency's report of agency action to Congress immunized that action against judicial review,

---

[8] AFPM's reliance on *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) is misplaced. That case addressed when courts may "compel agency action unlawfully withheld or unreasonably delayed" under section 706(1) of the APA. California does not seek to compel EPA action unlawfully withheld under section 706(1), but rather to "hold unlawful and set aside agency action" found to be arbitrary and capricious, in excess of jurisdiction, or without observance of procedure required by law, under section 706(2). Compl. ¶¶ 103–111.

the CRA's reporting requirement would have swallowed the APA whole. Mere "invocation of the CRA" in a report, AFPM Mem. 11, does not trigger the political-question doctrine.

## II. CALIFORNIA HAS STATED CLAIMS AGAINST THE RECLASSIFICATIONS

AFPM's arguments that California has failed to state a claim against the Reclassifications are equally unavailing. As to California's *ultra vires* claim, AFPM (like EPA) does not contest— and has thus conceded—that California has alleged the required elements to state this claim. Because this Court has jurisdiction over this claim, *supra* Sec. I, AFPM's motion to dismiss it must be denied. *See also* CA Reply 15–16.

California's APA claims against the Reclassifications also easily survive AFPM's motion. AFPM focuses its overarching finality arguments on EPA's Submissions, rather than its Reclassifications. *E.g.*, AFPM Mem. 11 (referring only to "transmittal"), 12 (referring only to "transmittal" or "submission"). Those arguments fail. *Infra* Sec. III. So do the more limited arguments AFPM advances that the Reclassifications lack finality.

### A. EPA's Reclassifications Are Final Agency Action

AFPM (like EPA) does not dispute that the Reclassifications satisfy the first of the two finality prongs—i.e., that they mark the consummation of EPA's decision-making process. AFPM Mem. 11. As to the second finality prong, AFPM's primary argument boils down to a claim that nothing has actually happened yet as a result of EPA's actions (including its Reclassification). *E.g.*, AFPM Mem. 11 ("Nothing happens unless or until someone else acts."). Specifically, AFPM contends that because, in its view, "the waivers remain exactly as they were before June 12," *id.*, the agency's actions are of no consequence, *see also id.* at 12 (identifying a series of actions EPA did *not* take); *id.* (arguing "only" congressional and presidential action would have legal consequences); *id.* at 14 (similar); *id.* at 15 (similar). The notion that EPA took press-release-worthy action concerning waivers that are up to seventeen years old in order to *change nothing* is not credible. It is also wrong.

First, the waivers do not remain exactly as they were before EPA's June 12 Reclassifications. It is undisputed—by both EPA and AFPM—that when EPA finalized these

13

waiver decisions (in 2009, 2013, 2022, and 2024), the agency expressly decided that each one of these waivers was an order, not a rule. Compl. ¶ 73. EPA now claims to have "determined" the opposite and has acted on those determinations. AFPM's statements imply that this change from "orders" to "rules" is no change at all, but AFPM never expressly makes this argument, much less supports it with authority. And for good reasons. "[T]he proper classification of agency proceedings as rule making or adjudication is of fundamental importance." U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* 12 (1947)). Further, AFPM asserts "EPA had a statutory obligation to transmit" the waiver decisions to Congress if they are rules—i.e., as a consequence of the Reclassifications. AFPM Mem. 3. Tellingly, AFPM concedes that finality's second prong is met when "[t]he agency's legal obligation . . . followed automatically" from the challenged action. *Id.* at 14. The Reclassifications thus satisfy the second prong because AFPM itself contends that the obligation to submit these waivers to Congress "followed automatically" and exclusively from EPA's Reclassifications. This is precisely the kind of "immediate and self-executing" consequence, and the absence of "remaining discretion," that AFPM acknowledges suffices for finality. *Id.*; *see also id.* at 15 (arguing that "self-executing" consequences suffice).[9]

Second, California's rights under the APA have been altered by the Reclassifications. AFPM acknowledges that 5 U.S.C. § 558(c) establishes procedures EPA must follow before it "withdraws, suspends, revokes, or annuls a license." AFPM Mem. 16. It necessarily follows that changing an action from a licensing order into a rule immediately alters the legal rights of the licensee (here, California). AFPM does not credibly dispute this point, arguing instead that this alteration of California's rights is insufficient to establish finality because EPA has not yet initiated a revocation or withdrawal proceeding. AFPM Mem. 16. That argument, for which AFPM cites no authority, is belied by *United States Army Corp of Engineers v. Hawkes*, 578

---

[9] AFPM's attempts to distinguish *American Wild Horse Campaign v. Bernhardt*, 442 F. Supp. 3d 127 (D.D.C. 2020), and *Nuclear Regulatory Commission v. EPA*, 643 F.3d 311 (D.C. Cir. 2011) fail for this reason. *See* AFPM Mem. 14. Notably, AFPM does not even attempt to distinguish *Bennett v. Spear*, 520 U.S. 154 (1997), or *Natural Resources Defense Council v. EPA*, 643 F.3d 311 (D.C. Cir. 2011), both of which support finality here. CA Mem. 17–18.

U.S. 590 (2016), as AFPM's own discussion indicates. In that case, the agency's action satisfied the second finality prong because it denied the landowner "safe harbor" from certain civil enforcement actions by the United States. *Id.* at 599. In AFPM's words, "the landowner's legal position changed." AFPM Mem. 15. It did not matter that the United States had not yet instituted a civil enforcement proceeding, only that the United States could now do so because the landowner's rights had been altered by the challenged agency action. *See Hawkes*, 578 U.S. at 599. The same is true here. As a result of EPA's Reclassifications, California's "legal position changed," AFPM Mem. 15, and its "risk" increased, *id.* (quoting *Hawkes*, 578 U.S. at 600). EPA may now commence waiver withdrawal proceedings in accordance with the legal regime change it effectuated, just as the agencies in *Hawkes* could initiate proceedings in accordance with the agency action challenged there. That suffices for finality's second prong.

### B.  EPA's Reclassifications Are Unlawful

While AFPM attempts to defend EPA's actions on their merits (although EPA did not), AFPM advances no arguments that an agency may lawfully (1) reclassify an action finalized as an order into a rule without process or justification; or (2) change a finalized position (e.g., that these waiver actions are not rules) without at least acknowledging and explaining the change. AFPM's argument that EPA could *submit* the waivers without notice and comment, AFPM Mem. 24–26, does nothing to establish that EPA could *reclassify* these already-final waivers or change its final position on classification without process or explanation. At a minimum, then, California has stated *those* claims against EPA's Reclassifications. Compl. ¶¶ 104–10.

California has also stated a claim against EPA's Reclassifications because these waivers are simply not rules within the APA's definition (which is incorporated into the CRA's definition). AFPM's arguments to the contrary are without merit. *Supra* Sec. I.A.

### III.  CALIFORNIA HAS ALSO STATED CLAIMS AGAINST EPA'S SUBMISSIONS

As with the Reclassifications, AFPM advances no arguments that California failed to state an *ultra vires* claim against the Submissions. And the arguments AFPM advances concerning the APA challenge to these actions are unavailing.

15

Here, too, AFPM simply argues repeatedly that nothing was changed by the Submissions. AFPM Mem. 11–14. Again, AFPM is wrong. To begin, AFPM conflates California's irreparable injury and finality arguments. *See* AFPM Mem. 11 (citing CA Mem. 28); *see also id.* at 13–14 (arguing traceability as finality factor). Specifically, California has shown that it is injured by EPA's Reclassifications and Submissions because they exacerbate threats that the waivers will be invalidated—and California's enforcement authority eliminated—by making that invalidation easier and more likely. CA Mem. 28–30. But, while that threat is injuring California now, *id.*, the State did not rely on that threat to establish finality of the Submissions, *see id.* at 23–24; CA Reply at 14–15.

Indeed, California advanced no finality (or injury) argument that turns on "independent action that has not occurred." AFPM Mem. 11. To the contrary, the fact that future action might be taken, by Congress or EPA, that has *additional* legal consequences for California—or *further* injures the State—has no bearing on the finality of the actions EPA has already taken. *Contra id.*, *id.* at 12–14. Just as finality in *Hawkes* did not turn on whether the agencies or citizens would actually impose liability on the landowner, finality here does not turn on whether any waiver is actually invalidated. As California has shown, EPA's Submissions subjected these waivers to a different legal regime than applied before those actions. CA Reply 14–15. There is no "gap" between EPA's actions and that consequence, AFPM Mem. 11, and EPA's Submissions are final actions.

AFPM's string citation to cases involving "informal communications," AFPM Mem. 12, does not aid its finality arguments. The Submissions do not "merely restate[] in an abstract setting—for the um[p]teenth times—EPA's longstanding interpretation of" certain regulations. *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004). They are not "*guidelines*" phrased in general terms that maintain the agency's discretion to depart from them, *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 809 (D.C. Cir. 2006); or mere "recommend[ations] that States impose more stringent conditions for issuing permits," *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 246 (D.C. Cir. 2014); or "a statement of the

16

agency's intention to make a preliminary determination" combined with "a request for voluntary corrective action," *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003). All of AFPM's cases involved "informal communications" to regulated parties that changed nothing about the legal regime applicable to those parties or anyone else.

Here, by contrast, California has alleged facts that are more than sufficient to support the conclusion that both the purpose and the effect of EPA's Submissions was to change the legal regime applicable to these waivers—purportedly rendering the CRA applicable where before it was not. Compl. ¶¶ 42–43, 56–69, 83–84. Indeed, as EPA was aware, the Senate adopted an internal procedural rule (a point of order) last year that has served no purpose other than to allow EPA's labeling and submission of an agency action as a "rule" to suffice, unto itself, to trigger the "right" of Senators to employ expedited procedures for legislation to disapprove the action. *Id.* ¶ 67.

Finally, AFPM's argument that notice and comment are not required before an agency submits a rule to Congress pursuant to the CRA misses the mark because it misunderstands California's claim. AFPM Mem. 24–26. The APA challenge to EPA's Submissions is not predicated on the absence of notice and comment, but rather on (1) EPA's reliance on the unlawful predicate Reclassifications as a basis for the Submissions; and (2) the absence of a "rule" as the APA, and thus the CRA, define that term. Compl. ¶¶ 108, 110–11. California has stated those claims, *id.*, as evinced by AFPM's failure to offer any argument to the contrary.

## CONCLUSION

Plaintiff California respectfully requests the Court deny AFPM's motion to dismiss.

17

Dated: August 7, 2026                    Respectfully Submitted,

                                         ROB BONTA
                                         Attorney General of California
                                         MYUNG PARK
                                         DAVID ZAFT
                                         Supervising Deputy Attorneys General

                                         */s/ M. Elaine Meckenstock*
                                         M. ELAINE MECKENSTOCK
                                         NATALIE COLLINS
                                         KATHERINE GAUMOND
                                         Deputy Attorneys General
                                         Office of the Attorney General
                                         1515 Clay Street, 20th Floor
                                         P.O. Box 70550
                                         Oakland, CA  94612-0550
                                         Telephone: (510) 879-0299
                                         Email: Elaine.Meckenstock@doj.ca.gov

                                         *Counsel for Plaintiff State of California*

18