**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

STATE OF CALIFORNIA,

*Plaintiff,*

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency,

*Defendants*,

and

AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, and AMERICAN PETROLEUM INSTITUTE,

*Defendant-Intervenors*.

Case No.: 1:26-cv-02185-BAH

**PLAINTIFF & DEFENDANTS' RESPONSE TO THE COURT'S ORDER REQUESTING A JOINT EXPLANATION CONCERNING 42 U.S.C. §§ 7604, 7607**

On August 20, 2026, the Court issued a minute order directing that "plaintiff and defendants jointly submit a fulsome explanation as to why either 42 U.S.C. § 7604 or 42 U.S.C. § 7607 does not deprive this Court of jurisdiction." Plaintiff and Defendants provide the following response.

**42 U.S.C. § 7604**

The Clean Air Act's citizen-suit provision, 42 U.S.C. § 7604, does not deprive this Court of jurisdiction over Plaintiff's claims. That provision neither confers jurisdiction in this case nor strips jurisdiction elsewhere granted. Instead, Section 7604 establishes four categories of citizen suits over which district courts have jurisdiction, after plaintiffs give the defendant(s) appropriate notice pursuant to 42 U.S.C. § 7604(a) or (b). *See Humane Soc'y of the United States v. McCarthy*, 209 F. Supp. 3d 280, 288 (D.D.C. 2016). None of the four categories covers this case.

The first category is comprised of suits "against any person (including the United States and governmental agencies to the extent permitted by the Eleventh Amendment) who is alleged to have violated … or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." *Id.* at § 7604(a)(1). Hence, this category encompasses citizen suits "to *enforce*" Clean Air Act requirements (including standards, limitations, and orders). 42 U.S.C. § 7604(a) (emphasis added). Plaintiff does not allege a Clean Air Act violation of or seek to enforce any Clean Air Act requirement.[1]

The second, third, and fourth categories are likewise inapplicable. They are comprised of suits where a plaintiff alleges "a failure of the Administrator to perform any act or duty under

[1] Plaintiff, but not Defendants, provide the following additional explanation: Plaintiff does not claim EPA is emitting too much pollution or otherwise violating a Clean Air Act requirement imposed by a standard, limitation, or order. *See, e.g., Nat. Res. Def. Council v. Illinois Power Res., LLC*, 202 F. Supp. 3d 859, 863 (C.D. Ill. 2016) ("Plaintiffs have alleged that [power plant] was out of compliance with certain Clean Air Act emissions standards on thousands of occasions between 2008 and 2014."). The only emission standards even arguably at issue here are California's, and those generally apply to, and would be enforced against, manufacturers. Plaintiff California does not claim EPA is violating state emission standards. And the only Clean Air Act orders arguably at issue here are four preemption waivers applicable to California. Plaintiff does not claim EPA is violating those orders either.

this chapter which is not discretionary," 42 U.S.C. § 7604(a)(2); suits "against any person who proposes to construct or constructs any new or modified major emitting facility" without certain permits, *id.* at § 7604(a)(3); and suits "to compel … agency action unreasonably delayed," *id.* § 7604(a). This case involves no act or duty under the Clean Air Act that EPA allegedly failed to perform, no proposed construction of any facility, and no claim of unreasonable delay.

Finally, "[n]othing in [Section 7604] shall restrict any right which any person … may have under any statute or common law … to seek any other relief (including relief against [EPA] …)." *Id.* § 7604(e).

For these reasons, 42 U.S.C. § 7604 has no effect on this Court's jurisdiction to decide Plaintiff's claims.

**42 U.S.C. § 7607**

42 U.S.C. § 7607(b)(1) likewise does not deprive this Court of jurisdiction over Plaintiff's claims. Plaintiff and Defendants agree on that bottom-line conclusion but provide separate explanations as to why below.

**Plaintiff's position:** 42 U.S.C. § 7607(b)(1) provides that judicial review of "final action taken, by the Administrator under this chapter"—i.e. under the Clean Air Act—can be had only in the appropriate court of appeals. Where, as here, "under" is used in a jurisdiction-directing provision and is followed by a reference to a set of statutory provisions, the word "is most naturally read to mean" that the action "must be approved or promulgated 'pursuant to' or 'by reason of the authority of'" the referenced statutory provisions. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 124 (2018); *see also In re Nat. Res. Def. Council*, 645 F.3d 400, 404–05 (D.C. Cir. 2011) ("where a regulation is not based on a statutory provision vesting exclusive jurisdiction in the courts of appeals, jurisdiction lies in the district courts"). Plaintiff does not challenge any action taken pursuant to, or authorized by, the Clean Air Act, and thus this case was not required to be filed in a court of appeals in the first instance. 42 U.S.C. § 7607(b)(1); *see also Sierra Club v. Jackson*, 813 F. Supp. 2d 149, 158 (D.D.C. 2011) ("By its terms, the Clean

Air Act provides the court of appeals with exclusive jurisdiction only to review actions taken under the Clean Air Act.").[2]

The only provisions of the Clean Air Act that are implicated at all here are Sections 209(b)(1) and (e)(2)(A), 42 U.S.C. § 7543(b)(1), (e)(2)(A)—the provisions under which EPA grants (or denies) preemption waivers requested by California. As their text indicates, these provisions of Section 209(b) authorize only those two actions by EPA: granting or denying California's waiver requests. The agency "shall … waive application" of Section 209, in response to a request from California, unless the record supports one or more of the three findings that can support denying such a request. 42 U.S.C. § 7543(b)(1); *see also id.* § 7543(e)(2)(A). Put another way, EPA is authorized to make only the three factual findings identified in subsections 209(b)(1)(A) through (C) or subsections 209(e)(2)(A)(i) through (iii) and then to grant or deny based on those findings. The actions challenged here are well outside the scope of Section 209, as they are neither a finding under the three waiver criteria nor a grant or denial of a waiver. These actions were not taken "pursuant to" or "by reason of the authority of" the Clean Air Act. EPA has not claimed otherwise: not in its press release announcing these

[2] Resolving this case also does not "involve any substantive overlap with [any] petitions for review" of the four preemption waivers. *See Sierra Club*, 813 F. Supp. 2d at 160. Petitions for review of EPA waivers challenge EPA's authority to grant (or deny) the waivers, *e.g.*, *Ohio v. EPA*, 98 F.4th 288, 306-314 (D.C. Cir. 2024), *rev'd and remanded on other grounds*, *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100 (2025); or challenge the bases for the grants (or denials), *e.g.*, *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA (MEMA I)*, 627 F.2d 1095, 1124-27 (D.C. Cir. 1979) (reviewing EPA's findings under Section 209(b)(1)'s criteria). By contrast, this case raises no issues about the validity of any EPA waiver decision. Put another way, the claims here do not challenge EPA's waiver decisions either "facially" or "*effectively*." *Cal. Dump Truck Owners Ass'n v. Nichols*, 784 F.3d 500, 506 (9th Cir. 2015) (summarizing cross-circuit case law concerning application of 42 U.S.C. § 7607(b) (emphasis original)). Indeed, the "*practical objective* of the complaint" here is not "to nullify" any Clean Air Act waivers. *Id.* (emphasis original).

actions,[3] not in the submissions to Congress,[4] and not in its briefing or oral argument to this Court.

And for good reason: the text of Sections 209(b)(1) and (e)(2)(A) intentionally establishes a role for the agency that "is modest in scope," as EPA "has consistently held since first vested with the waiver authority." *MEMA I*, 627 F.2d at 1119. "Congress expressed general approval of the Administrator's waiver decisions" ten years into this consistent practice, when Congress "amend[ed] section 209 in 1977." *Id.* at 1122. The D.C. Circuit has also affirmed EPA's understanding of its limited role, holding that the statutory text "does not mean that [EPA] must independently proceed to make" the findings that can support denial of a waiver request but, rather, that the burden of bringing forth the evidence to support those findings rests squarely on "the parties opposing the waiver request." *Id.* at 1120-21. And Congress ratified EPA's understanding of its limited role in 1990 when it enacted Section 209(e)(2)(A), mirroring the text of Section 209(b)(1). Under both provisions, EPA's role is limited to adjudicating, "against a standard of proof," "whether the parties favoring a denial of the waiver have shown that the factual circumstances exist in which Congress intended denial of the waiver. the opposite of those findings." *Id.* at 1122. Nothing in the text envisions EPA promulgating a rule, much less reclassifying long-settled waiver orders into rules or declaring the Congressional Review Act applicable. No action before this Court was taken pursuant to or by reason of the authority provided in Section 209 of the Clean Air Act.

[3] This Court should not endorse a construction of judicial review provisions that would require a plaintiff to identify every unmentioned but conceivable source of statutory authority and then file timely protective petitions for review corresponding to all those statutes—or else risk losing the right to judicial review altogether. Such a construction "would permit [defendants] to achieve unfair tactical advantages, if not in this case, then in others." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 614 (2002). *Cf. Sierra Club v. Jackson*, 813 F.Supp.2d 149, 158-59 (D.D.C. 2011) ("While EPA may have the discretion to decide whether to stay a rule under either the Clean Air Act or the APA, it must suffer the jurisdictional consequences of that decision…. EPA cannot now claim that the Delay Notice—an action under the APA for the purpose of overcoming an express limitation under the Clean Air Act—ultimately is an action under the Clean Air Act.").

[4] In these submissions, attached hereto as Exhibits A-D, EPA (incorrectly) asserts that its submissions are "under 5 U.S.C. § 801(a)." *E.g.*, Exh. A at 1. The only Clean Air Act actions identified in the submissions are the waivers themselves. *E.g.*, Exh. A at. 3. The waiver actions are not challenged here.

It is true that EPA has asserted that Section 209(b) authorizes the withdrawal of previously granted waivers, under limited circumstances, in addition to authorizing the initial grant or denial of California's waiver requests. 87 Fed. Reg. 14,332, 14,334 (Mar. 14, 2022) ("Section 209 does not provide EPA with express authority to reconsider and withdraw a waiver previously granted to California. EPA's authority thus stems from its inherent reconsideration authority."); *id.* ("EPA believes its inherent authority to reconsider a waiver decision is constrained by the three waiver criteria that must be considered before granting or denying a waiver request under section 209(b).). California agrees with EPA that any withdrawal authority afforded the agency by Section 209(b)(1) or (e)(2)(A) is quite limited. ECF 1990949 at 25-33 (Mar. 20, 2023), *Ohio v. EPA*, D.C. Cir. Case No. 22-1081. EPA's position that it can withdraw a waiver, under certain circumstances, does not render 42 U.S.C. § 7607(b) applicable here because, even if a withdrawal action could be "pursuant to" Section 209(b)(1), there is no such action here. Unlike in 2019, EPA has not yet purported to withdraw any waiver; instead, EPA has purported to reclassify waivers from "orders" to "rules" under the definitions applicable to Title 5 of the U.S. Code and then submitted them to Congress in the hope that it would disapprove the waivers.

Questions concerning the scope of EPA's withdrawal authority are also not before this Court for the same reason: because California does not challenge any withdrawal action here. However, EPA's position that it possesses some withdrawal authority underscores that California has lost its licensee rights under 5 U.S.C. § 558(c) as a consequence of EPA's choice to employ a different tactic than in 2019—by reclassifying these waiver licenses into rules rather than withdrawing them. If these waivers are now rules, rather than licenses, under the APA—the statute from which the Congressional Review Act borrows the definition of a rule, 5 U.S.C. § 804(3)—California's rights have been altered, and the State has been injured.[5]

[5] EPA's attempt to argue that waivers can be "rules" for purposes of the Congressional Review Act without changing rights under the APA is belied by Congress's express linkage of the two statutory definitions. EPA has failed to explain how a waiver could be treated as a rule under the former while it remains a license under the latter. Moreover, EPA's argument that 42 U.S.C. § 7543(b)(1) provides the only procedures EPA would need to follow when rescinding a license granted under that section is simply wrong. When Congress intended the Clean Air Act to

(continued…)

Finally, even when EPA argued, in another case, that 42 U.S.C. § 7607(b) applied to APA and ultra vires challenges to the agency's 2025 reclassifications and submissions of three other waivers, EPA did not argue that its actions were "under" the Clean Air Act. ECF 172 at 19-20, *California v. United States*, N.D. Cal. Case No. 4:25-cv-04966-HSG. Instead, EPA argued its reclassifications and submissions were "closely related to" Clean Air Act actions—i.e., the underlying waivers. *Id.* at 20. As California explained in that case, EPA's "closely related to" test is untethered from precedent. ECF 194 at 24, *California v. United States*, N.D. Cal. Case No. 4:25-cv-04966-HSG. *See also Cal. Dump Truck Owners*, 784 F.3d at 506 (9th Cir. 2015) (summarizing case law across circuits applying 42 U.S.C. § 7607(b)(1) not to claims closely related to a Clean Air Act action but to "claims that *effectively,* if not facially, challenged an EPA final action" under that Act); *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 621 (2002) ("jurisdictional rules should be clear"). Notably, EPA did not repeat that argument in its motion to dismiss here.

Although Plaintiff California believes this Court's jurisdiction is indisputable, California nonetheless filed protective petitions for review of the actions at issue here in order to protect its rights, in the face of the 60-day statute of limitations under 42 U.S.C. § 7607(b), in the unlikely event that belief proves to be incorrect. Particularly since EPA had made an (erroneous) 42 U.S.C. § 7607(b) argument concerning earlier, similar actions, this appeared to be "the only sensible approach." *Am. Soybean Ass'n v. Regan*, 77 F.4th 873, 882 (D.C. Cir. 2023) (Rao, J., concurring).

**Defendants' position:** It is EPA's position that the actions California seeks to challenge in this case, which California calls "reclassifications" and "submissions," are actions under the Congressional Review Act (CRA). The CRA requires each agency to submit every rule (as

override otherwise required APA procedures, Congress made that clear. *E.g.*, 42 U.S.C. § 7607(d)(1) ("The provisions of section 553 through 557 and section 706 of title 5 shall not, except as expressly provided in this subsection, apply to actions to which this subsection applies."). Congress tellingly did *not* include language that limits application of Section 558 of the APA in Section 209(b)(1). 42 U.S.C. § 7543(b)(1). California thus has licensee rights under the APA *in addition to* any procedural protections afforded by Section 209 of the Clean Air Act.

defined in 5 U.S.C. § 804(3)) to Congress for review. 5 U.S.C. § 801(a)(1)(A). To comply with that provision, each agency is necessarily required to determine whether each agency action is a rule for purposes of the CRA that must be reported to Congress. When an agency determines that an agency action is a rule for purposes of the CRA, and when it sends a report to Congress for congressional review pursuant to the CRA, those are agency actions under the CRA.

Here, EPA determined that the four preemption waivers at issue in this case are rules for purposes of the CRA and it reported those waivers to Congress. The reports on their faces were made under the CRA. *See* Exs. A-D. And the determinations are embodied in the reports. Those are actions under the CRA. Neither the report to Congress, nor the determination embodied in the report that preemption waivers are rules for purpose of the CRA, are a final action of the EPA under the Clean Air Act. The requirement to submit rules to Congress is found in the CRA, not the Clean Air Act. And no relevant provision of the Clean Air Act requires EPA to send rules to Congress. To EPA's knowledge, no court has ever suggested that reports sent to Congress, or determinations about what to report to Congress, are final actions of the EPA for purposes of the Clean Air Act, the Clean Water Act, the Toxic Substances Control Act, or any other environmental statute administered by EPA.

In separate litigation challenging, among other things, EPA's decision to transmit other preemption waivers to Congress, EPA argued that *if* the court concluded that plaintiffs in that case had identified final agency actions not subject to section 805 of the CRA—and EPA disputed both propositions—*then* only the courts of appeals could exercise jurisdiction over any challenges to those actions, as they would be "closely related to" final actions taken under the Clean Air Act, i.e., the waivers. *See* Dkt. 172 at 19-20 (quoting *Cal. Dump Truck Owners Ass'n v. Nichols*, 924 F. Supp. 2d 1126, 1139 (E.D. Cal. 2012), *aff'd* 784 F.3d 500 (9th Cir. 2015)), *California v. EPA*, No. 4:25-cv-04966-HSG (N.D. Cal.).[6] However, EPA took its alleged actions, however framed, under the CRA.

[6] The plaintiffs in that case, including California, disagreed, and argued that EPA neither took action under the Clean Air Act nor took action closely related to actions under the Clean Air Act. *See* Dkt. 194 at 24, *California v. EPA*, No. 4:25-cv-04966-HSG (N.D. Cal.).

The Clean Air Act's judicial review provision does not apply to this case.

Dated: August 21, 2026

Respectfully Submitted,

ROB BONTA
Attorney General of California
MYUNG PARK
DAVID ZAFT
Supervising Deputy Attorneys General

*/s/ M. Elaine Meckenstock*
M. ELAINE MECKENSTOCK
NATALIE COLLINS
KATHERINE GAUMOND
Deputy Attorneys General
Office of the Attorney General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-0299
Email: Elaine.Meckenstock@doj.ca.gov
*Counsel for Plaintiff State of California*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

STEPHEN M. PEZZI
(DC Bar #995500)
Chief Litigation Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
(202) 305-8576
stephen.pezzi@usdoj.gov

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

ROBERT N. STANDER
(DC Bar #1028454)
Deputy Assistant Attorney General

*/s/ Jeffrey Hughes*
MARTHA C. MANN
(FL Bar #155950)
JEFFREY HUGHES
(NY Bar #5367214)
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
(202) 717-7067 (Stander)
(202) 353-5900 (Mann)
(202) 532-3080 (Hughes)
robert.stander@usdoj.gov
martha.mann@usdoj.gov
jeffrey.hughes@usdoj.gov
*Counsel for Defendants*