**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

STATE OF CALIFORNIA,

*Plaintiff*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency,

*Defendants*.

Case No. 1:26-cv-02185-BAH

**EPA'S RESPONSE TO THE COURT'S AUGUST 20, 2026 ORDER**

Defendants United States Environmental Protection Agency and Lee Zeldin (together, "EPA") respectfully submit this response to the Court's August 20, 2026 order directing EPA to "submit a fulsome explanation as to why 42 U.S.C. § 7543(b) controls the process for withdrawal of a Clean Air Act Section 209(b) waiver, as EPA's counsel represented at the hearing, rather than an Administrative Procedure Act procedure, e.g., 5 U.S.C. §§ 553, 558(c)."

To explain where this issue fits in the parties' jurisdictional dispute, we first summarize California's theory of Article III standing. Then we turn to EPA's position on the procedures it uses to issue or withdraw waivers under section 209(b), 42 U.S.C. § 7543(b).

But this Court need not and should not address whether or why section 209(b) governs the procedures for issuing and withdrawing a waiver. That is because those procedures have nothing to do with EPA's determination to send the waivers to Congress for purposes of review under the Congressional Review Act—which is what California seeks to challenge here. Indeed, EPA's position on the required procedures for withdrawal is the same today as it was in 2019. Because there is no causal connection, California's alleged procedural injury from a hypothetical future withdrawal fails for lack of traceability. On top of that, the Court need not even decide traceability because California's alleged procedural injury plainly fails for lack of imminence.

**1.** ***The challenged agency actions.*** California seeks to challenge four reports EPA sent to Congress, each containing a copy of a preemption waiver EPA issued to California under section 209(b) of the Clean Air Act. Embodied in those reports are EPA's determinations that the waivers must be reported to Congress because they are rules within the meaning of the Congressional Review Act (CRA). 5 U.S.C. § 801(a)(1)(A). In its complaint, California decided to call EPA's determinations a "reclassification," and to call the acts of sending the reports to Congress a "submission." But in reality, there is just a report that EPA sent to Congress. *See* Ex. A.

**2. *California's primary theories of standing*.** California contends that the reports EPA sent to Congress cause California to suffer Article III injuries that are imminent and redressable by this Court. Its theories of injury are all ultimately based on the alleged increased risk that the preemption waivers might be invalidated in the future if either (1) Congress enacts a statute invalidating the waivers, or (2) EPA withdraws the waivers administratively. *See, e.g.*, Dkt. No. 1 ¶ 16.

To begin, any injury from Congress enacting a statute or from the risk that it might do so is traceable solely to the unfettered choice of Congress, a third party not before this Court. Nor is that injury redressable by any order against EPA. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413-14 (2013); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992); *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976). California cites no case ever holding that the risk of Congress passing a statute is an Article III injury, much less an injury traceable to someone other than Congress.

Traceability is also missing in California's speculation that EPA might someday withdraw the waivers: The reports that EPA sent to Congress say nothing, do nothing, and decide nothing about the process that would govern in any possible future administrative withdrawal. The reports have, in short, no causal connection with anything EPA might itself do to the waivers.

Thus, neither EPA's determination that the waivers are rules for purposes of the CRA, nor its submission of the rules to Congress, makes it any more likely that EPA will someday withdraw the waivers. Nor do they alter the process that California would (or would not) be entitled to in connection with that hypothetical future withdrawal action. Not only is there no traceability, but there is no imminent injury because EPA has not proposed withdrawing the waivers, much less finalized any withdrawal.

**3. *California's alleged procedural injury.*** This is where California's license-procedures argument comes in. California speculates that if EPA does someday withdraw the waivers, it might do so without giving California notice and an opportunity to show compliance with the Clean Air Act. Dkt. No. 1 ¶¶ 14, 86. And California insists it is entitled to those procedures as a licensee under section 558 of the APA, 5 U.S.C. § 558(c). *Id.* As California alleges it, EPA injured California by taking away its procedural rights as a licensee under the APA when it "reclassified" the waivers as rules under the CRA. *Id.* The Court should reject this argument for multiple reasons.

What California is trying to do here is raise a procedural challenge to an administrative withdrawal that hasn't happened, hasn't been proposed, and might very well never happen. Such speculative procedural injury is not imminent under bedrock Supreme Court precedent. *Clapper*, 568 U.S. at 409, 411-14; *Murthy v. Missouri*, 603 U.S. 43, 69 (2024). If California wants to dispute the procedures EPA uses for a withdrawal, it needs to challenge the withdrawal itself—if and when EPA withdraws a waiver. What California cannot do is challenge a report sent to Congress based on a speculative fear about the procedures EPA might use in a hypothetical future agency action. *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013); *In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015) (Kavanaugh, J.).

Nor is this supposed procedural injury traceable to the challenged action. To the contrary, there is no causal connection between EPA's determination that the waivers are rules for purposes of the CRA and the procedures EPA uses to withdraw waivers under section 209(b) of the Clean Air Act. EPA's reports to Congress said nothing about plans or procedures for administrative withdrawal. *See* Exs. A-D. EPA's determination that the waivers are rules for purposes of the CRA is not a determination about what procedures to use for a hypothetical future withdrawal. California is instead asking this Court to speculate and infer, based on EPA's determination *under the CRA*,

that EPA might decide in the future to withdraw the waivers without notice to California. That speculation requires multiple dubious links in a chain from the CRA to the APA to procedures used for licenses to decision to withdraw a waiver and then a decision about procedures to use during that proceeding. *See, e.g.*, Pl. & Defs.' Resp. to the Court's Order Requesting a Joint Explanation Concerning 42 U.S.C. §§ 7604, 7607 at 4 n.4. Daisy-chain speculation cannot support standing.

**4.** ***Procedures for waiver withdrawal under section 209(b).*** Not only is speculation about the procedures EPA might use for a hypothetical withdrawal insufficient to support standing, but there is no need to speculate about those procedures. EPA's consistent position, both before and after it sent the waivers to Congress under the CRA, is that section 209(b) of the Clean Air Act requires prior notice and an opportunity for public comment and hearing when making waiver decisions, including withdrawal of a waiver. Importantly, this is EPA's position regardless of whether a waiver is a rule or an order under the CRA. Thus, the actions California challenges in this case—EPA's determination that its waivers are rules under the CRA and its submission of those waivers to Congress—have no effect on EPA's longstanding position that prior notice, comment, and hearing would be required if it someday decides to withdraw a waiver. California's asserted procedural injury therefore fails for lack of traceability and, of course, imminence.

Section 209(b) authorizes EPA to waive preemption only "after notice and opportunity for public hearing." 42 U.S.C. § 7543(b). Various provisions of the Clean Air Act contain procedural requirements that supersede the APA under the principle that specific statutory provisions displace more general requirements. *See, e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general."). This includes displacement of section 553 of the APA, which does not apply to many Clean Air

Act rulemakings. *See* 42 U.S.C. § 7607(d)(1); *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 518 (D.C. Cir. 1983) (noting that Congress created the Clean Air Act's rulemaking procedures because those in the Administrative Procedure Act were inadequate). Other statutes, too, contain "procedural provisions" that "displace[] the APA." *Tri-Cnty. Contractors, Inc. v. Perez*, 155 F. Supp. 3d 81, 88-89 (D.D.C. 2016) ("every court to have considered the question has concluded that" the "procedural provisions" in an employment law "displace[] the APA"); *see, e.g.*, *Ardestani v. INS*, 502 U.S. 129, 133 (1991) ("Congress intended the provisions of the Immigration and Nationality Act … to supplant the APA in immigration proceedings").

Likewise, EPA's view is that section 209(b)'s notice and public-hearing provision applies to waiver proceedings. And that includes both the issuance and the withdrawal of a waiver. As usual, the statutory grant of power to an agency to take an action comes with an implied grant of authority to rescind, withdraw, or reconsider that action. *See Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) ("the power to reconsider is inherent in the power to decide" (cleaned up)); *see id.* at 93 (Pillard, J., dissenting) ("agencies are typically understood to have statutorily implicit corrective powers"). Because section 209's notice and hearing procedures apply to the grant of a waiver, those procedures apply to the withdrawal of a waiver as well. As the Senate Report explained when Congress enacted section 209(b): "Implicit in this provision is the right of the [Administrator] to withdraw the waiver at any time [if] after notice and an opportunity for public hearing he finds that the State of California no longer complies with the conditions of the waiver." S. Rep. No. 90-403, at 34 (1967).

Adhering to statutory text, precedent, and Congressional intent, EPA has always used the procedures set forth in section 209(b) both for granting waivers and for withdrawing them. When EPA issues or withdraws a waiver, it provides notice, a written-comment period, and holds a live

public hearing. *E.g.*, 90 Fed. Reg. 642, 642/3 (Jan. 6, 2025) ("EPA invited public comment on California's waiver request and an opportunity to present testimony at a public hearing."). And until this lawsuit, California has not objected to those procedures—even for withdrawals: In 2019 EPA withdrew a California waiver after notice and public hearings. 84 Fed. Reg. 51310, 51311/3 (Sep. 27, 2019). EPA also received and responded to extensive comments on the proposed withdrawal. *See, e.g.*, *id.* at 51310/3, 51332/2-34/3. In the lawsuit that followed, California vigorously disputed EPA's withdrawal authority. *See* Final Brief of State and Local Gov't Petitioners and Public Interest Petitioners (Oct. 27, 2020), Dkt. 1868405, and Final Reply Brief of State and Local Gov't Petitioners and Public Interest Petitioners (Oct. 27, 2020), Dkt. 1868408, *Union of Concerned Scientists v. NHTSA*, Case No. 19-1230 (D.C. Cir.). But it never complained about the adequacy of the notice and public hearings that EPA used. *See id.* Nor, in that lawsuit, did California ever contend that it was entitled to procedures under the Administrative Procedure Act, let alone procedures under 5 U.S.C. § 558(c). *See id.*; Plaintiff's Reply 13 n.9 (admitting as much), Dkt. 26.

And it makes sense that Congress wanted EPA to use the procedures of section 209(b) because, as a practical matter, those procedures fully protect California by giving it notice and a full public hearing. Indeed, the procedures of section 209(b) would satisfy or go beyond the notice procedures under section 558(c) of the APA, even if 558(c) applied. That provision is satisfied by "notice and an opportunity to be heard … prior to the agency's *final determination*." *Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 638 F.3d 794, 801 (D.C. Cir. 2011) (Kavanaugh, J.) (emphasis added). That requirement is not onerous, and can be satisfied by an opportunity to submit a letter to the decisionmaker. *See id.* at 801-02. Here, notice and a public hearing would provide *more* process than that. Thus, regardless of any daylight

between sections 558(c) and 209(b), California cannot seriously complain about lack of notice and opportunity to show compliance with the law if it receives notice and opportunity for a public hearing. California's purported procedural injury thus fails not only for lack of traceability and imminence, but because it is not actual.

Crucially, this Court need not and should not wade into the merits of the procedures for withdrawing a waiver under section 209(b). The merits of that issue make no difference to this case. What matters is that the actions California challenges here—which California calls EPA's "reclassification" and "submission"—have absolutely no causal connection to the procedures EPA would use if it decided to withdraw any preemption waivers someday. EPA's position, both before and after it sent the waivers to Congress, is that it will use the notice and hearing procedures of section 209(b).

Rejecting California's standing in this case would not prevent California from seeking judicial review of the procedures used for waiver withdrawal if EPA ever undertakes a withdrawal in the future. If California now thinks (unlike in 2019) it is entitled to something *more* than notice, opportunity for comment, and a public hearing, it can raise that argument if and when EPA someday withdraws a waiver, and if EPA does so with what California considers to be insufficient process. In that scenario, California can raise that newly discovered argument in written comments during the comment period, or orally during the public hearing under section 209(b). And it can then raise that argument in litigation by challenging the final withdrawal in the appropriate court of appeals under the Clean Air Act's exclusive judicial-review provision, which covers final EPA actions under the Clean Air Act, including waiver withdrawals. 42 U.S.C. § 7607(b)(1).

But for purposes of this case, California cannot manufacture a procedural injury caused by a supposed "reclassification" as a means to challenge what California actually wants to challenge,

which are reports sent to Congress under the Congressional Review Act. California has made abundantly clear, both in its briefing and at the August 19 hearing, that its real goal is to enlist this Court to interfere with congressional oversight and reduce the possibility that Congress might pass a statute invalidating California's waivers. *Hodel* forbids what California wants this Court to do. *NRDC v. Hodel*, 865 F.2d 288, 318-19 (D.C. Cir. 1988). Whether an Executive agency over-complies or under-complies with the congressional reporting requirement in the CRA is "a judgment peculiarly for Congress to make in carrying on its own functions in our constitutional system, not for non-congressional parties"—including this Court—"to carry on as an ersatz proxy for Congress itself." *Id.* This Court cannot interfere with pending legislation in Congress, which is what California is nakedly asking the Court to do. The Court should instead dismiss the complaint.

Dated: August 21, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

STEPHEN M. PEZZI
(DC Bar #995500)
Chief Litigation Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
(202) 305-8576
stephen.pezzi@usdoj.gov

ROBERT N. STANDER
(DC Bar #1028454)
Deputy Assistant Attorney General

*<u>/s/ Martha C. Mann</u>*
MARTHA C. MANN
(FL Bar #155950)
JEFFREY HUGHES
(NY Bar #5367214)
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
(202) 717-7067 (Stander)
(202) 353-5900 (Mann)
(202) 532-3080 (Hughes)
robert.stander@usdoj.gov
martha.mann@usdoj.gov
jeffrey.hughes@usdoj.gov