# Exhibit D

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

EC03927

**OFFICE OF POLICY AND REGULATORY MANAGEMENT**
WASHINGTON, D.C. 20460

**June 12, 2026**

**TO:** The Honorable Mike Johnson
Speaker of the House of Representatives
The Capitol, H-209
Washington, D.C. 20515

**FROM:** U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW 1803A
Washington, DC 20460

Dear Speaker,

EPA is submitting the following final rules "to each House of the Congress and to the Comptroller General," for their review under 5 U.S.C. 801(a).

We have also enclosed the required report that incorporates a concise general statement relating to the document. The report also indicates EPA's compliance with relevant statutes and executive orders, as applicable.

If you have any questions regarding this submission, please feel free to contact me at 202-564-8497.

Sincerely yours,

Melissa Kramer
Acting Branch Chief
Regulatory Management Branch

Enclosures

OFFICIAL COMMUNICATION
Received On
JUN 16 2026
in the Office of the
President of the Senate

**TITLE(S) OF DOCUMENTS:**

1. (8927-2) - California State Motor Vehicle Pollution Control Standards; Notice of Decision Granting a Waiver of Clean Air Act Preemption for California's 2009 and Subsequent Model Year Greenhouse Gas Emission Standards for New Motor Vehicles
2. (9325-01-OAR) - California State Motor Vehicle Pollution Control Standards; Advanced Clean Car Program; Reconsideration of a Previous Withdrawal of a Waiver of Preemption; Notice of Decision
3. (9768-1) - California State Motor Vehicle Pollution Control Standards; Notice of Decision Granting a Waiver of Clean Air Act Preemption for California's Advanced Clean Car Program and a Within the Scope Confirmation for California's Zero Emission Vehicle Amendments for 2017 and Earlier Model Years
4. (10890-02-OAR) - California State Nonroad Engine Pollution Control Standards; Small Off-Road Engines Regulations; Notice of Decision

# DOCUMENT FOR CONGRESSIONAL REVIEW UNDER THE SMALL BUSINESS REGULATORY ENFORCEMENT FAIRNESS ACT OF 1996

**Date of Document**: June 12, 2026

1. **Name of Agency:** U.S. Environmental Protection Agency
2. **Office:** Office of Policy
3. **Action Title:** California State Nonroad Engine Pollution Control Standards; Small Off-Road Engines Regulations; Notice of Decision
4. **Concise, General Statement of the Document:** In the rule
5. **Other Unique Identifier:** 10890-02-OAR
6. **This rule is a:** Final Rule
7. **Statutory Authorization**: Section 209 of the Clean Air Act
8. **Major Rule under CRA**: N/A
9. **Proposed Effective Date**: N/A

   **Compliant with 5 U.S.C. §801(a)(3)(A)**: N/A

   **A. Cost/Benefit Analysis Prepared**: N/A

   **B. Certification under 5 U.S.C. §605(b):** N/A

   **Preparation of FRFA under 5 U.S.C. §604(a):** N/A

   **C. Written Statement under §202 of the Unfunded Mandates Reform Act:** N/A

   **D. Public Comments Solicited:** Yes; 88 FR 33143 (May 23, 2023).

   **E. Information Collection under the Paperwork Reduction Act:** No

   **F. Discussion of Executive Order 12866**: Yes

   **Discussion of Executive Order 13132:** No

   **Other Executive Order or Administrative Statute requirements:** No

10. **GAO Database Modernization Act of 2023:** N/A

under TSCA finalized in May 2024 (89 FR 37028; May 3, 2024).

Between release of the draft risk evaluation and finalization of the DIDP risk evaluation, EPA updated the risk determination to find that six COUs contribute to unreasonable risk of DIDP based on new information identified by EPA, information provided by public commenters, and recommendations of the SACC. These changes stem from consideration of 1) multiple factors impacting occupational exposure during spray application, 2) applicability of developmental effects to average adult workers, and 3) identification of DIDP-containing products that could be spray applied. The COUs that EPA identified as presenting unreasonable risk were for acute exposure scenarios in which unprotected female workers of reproductive age were to spray adhesives and sealants; paints and coatings; lacquers, stains, varnishes, and floor finishes; or penetrants and inspection fluids that contain DIDP, because doing so could create high concentrations of DIDP in mist that an unprotected worker could inhale. The human health hazard that EPA identified as having the strongest evidence to support this risk evaluation is developmental toxicity, which means that laboratory animals dosed with DIDP had litters where more rodent offspring died than was the case with the litters of rodents that were not dosed with DIDP. As the most sensitive health effects of concern relate to exposure of the developing fetus during gestation, the population to which this risk determination is most relevant is female workers of reproductive age.

Consistent with the statutory requirements of TSCA section 6(a), EPA will propose a risk management regulatory action to the extent necessary so that DIDP no longer presents an unreasonable risk. EPA expects to focus its risk management action on the conditions of use that significantly contribute to the unreasonable risk. However, it should be noted that, under TSCA section 6(a), EPA is not limited to regulating the specific activities found to drive unreasonable risk and may select from among a suite of risk management requirements in section 6(a) related to manufacture (including import), processing, distribution in commerce, commercial use, and disposal as part of its regulatory options to address the unreasonable risk. As a general example, EPA may regulate upstream activities (*e.g.*, processing, distribution in commerce) to address downstream activities (*e.g.*, industrial and commercial uses) driving unreasonable risk, even if the upstream activities do not drive the unreasonable risk. Like the prioritization and risk evaluation processes, there is an opportunity for public comment on any proposed risk management actions.

For more information about the TSCA risk evaluation process for existing chemicals, go to *https://www.epa.gov/assessing-and-managing-chemicals-under-tsca*.

## IV. References

The following is a listing of the documents that are specifically referenced in this document. The docket includes these documents and other information considered by EPA, including documents that are referenced within the documents that are included in the docket, even if the referenced document is not physically located in the docket. For assistance in locating these other documents, please consult the person listed under **FOR FURTHER INFORMATION CONTACT**.

1. EPA. Di-isodecyl Phthalate (DIDP); Manufacturer Request for Risk Evaluation Under the Toxic Substances Control Act (TSCA); Notice of Availability and Request for Comments. **Federal Register**. 84 FR 42914, August 19, 2019 (FRL–9998–26).
2. EPA. Di-isodecyl Phthalate (DIDP); Draft Scope of the Risk Evaluation to be Conducted Under the Toxic Substances Control Act (TSCA); Notice of Availability and Request for Comments. **Federal Register**. 85 FR 76077, November 27, 2020 (FRL–10017–14).
3. EPA. Di-isodecyl Phthalate (DIDP); Final Scope of the Risk Evaluation To Be Conducted Under the Toxic Substances Control Act (TSCA); Notice of Availability. **Federal Register**. 86 FR 48695, August 31, 2021 (FRL–8807–01–OCSPP).
4. EPA. Di-isodecyl Phthalate (DIDP) and Di-isononyl Phthalate (DINP); Science Advisory Committee on Chemicals (SACC) Peer Review of Draft Documents; Notice of SACC Meeting; Availability; and Request for Comment. **Federal Register**. 89 FR 43847, May 20, 2024 (FRL–11760–02–OCSPP).
5. EPA. Nontechnical Summary of the TSCA Risk Evaluation for Diisodecyl Phthalate (DIDP). December 2024. (EPA Document ID No. EPA–740–S–24–008).
6. EPA. Comment Summary and Responses for Diisodecyl Phthalate (DIDP) and Diisononyl Phthalate (DINP). December 2024.

*Authority:* 15 U.S.C. 2601 *et seq.*

Dated: December 20, 2024.

**Michal Freedhoff,**

*Assistant Administrator, Office of Chemical Safety and Pollution Prevention.*

[FR Doc. 2024–31280 Filed 1–3–25; 8:45 am]

BILLING CODE 6560–50–P

## ENVIRONMENTAL PROTECTION AGENCY

**[EPA–HQ–OAR–2023–0151; FRL–10890–02–OAR]**

## California State Nonroad Engine Pollution Control Standards; Small Off-Road Engines Regulations; Notice of Decision

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of decision.

**SUMMARY:** The Environmental Protection Agency ("EPA") is providing notice of its decision granting the California Air Resources Board's ("CARB's") request for an authorization of amendments to its small off-road engine ("SORE") regulations. CARB's amendments covered by this authorization include those adopted by CARB in 2016 and 2021. EPA's decision was issued under the authority of section 209 of the Clean Air Act ("CAA" or "Act").

**DATES:** Petitions for review must be filed by March 7, 2025.

**ADDRESSES:** EPA has established a docket for this action under Docket ID EPA–HQ–OAR–2023–0151. All documents relied upon in making this decision, including those submitted to EPA by CARB, are contained in the public docket. Publicly available docket materials are available either electronically through *www.regulations.gov* or in hard copy at the EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operation are 8:30 a.m. to 4:30 p.m.; generally, it is open Monday through Friday, except Federal holidays. The electronic mail (email) address for the EPA Docket is: *a-and-r-Docket@epa.gov.* An electronic version of the public docket is available through the Federal government's electronic public docket and comment system. You may access EPA dockets at *http://www.regulations.gov.* After opening the *www.regulations.gov* website, enter EPA–HQ–OAR–2023–0151 in the "Enter Keyword or ID" fill-in box to view documents in the record. Although a part of the official docket, the public docket does not include Confidential Business Information ("CBI") or other information whose disclosure is restricted by statute.

EPA's Office of Transportation and Air Quality ("OTAQ") maintains a web page that contains general information on its review of California waiver and authorization requests. Included on that page are links to prior waiver **Federal Register** notices, some of which are

cited in this notice; the page can be accessed at: *https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations.*

**FOR FURTHER INFORMATION CONTACT:** Michael Olechiw, Office of Transportation and Air Quality, U.S. Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, Michigan 48105. Telephone: 734–214–4297. Email: *California-Waivers-and-Authorizations@epa.gov.*

**SUPPLEMENTARY INFORMATION:** On May 23, 2023, EPA published a **Federal Register** notice announcing its receipt of CARB's authorization request. In that notice, EPA invited public comment on California's authorization request and an opportunity to present testimony at a public hearing.[1] EPA held a public hearing on June 27, 2023, and the written comment period closed on July 28, 2023.[2] EPA has considered all comments submitted to the public docket on this matter.

On December 19, 2024, I signed a Decision Document granting California an authorization pursuant to section 209(e)(2)(A) of the CAA, as amended, 42 U.S.C. 7543(e)(2)(A), for CARB's 2016 and 2021 amendments to CARB's SORE regulations (the "2016 SORE Amendments" and "2021 SORE Amendments" respectively).[3] The 2016 SORE Amendments incorporate improvements to evaporative emissions certification procedures, revise the compliance testing procedure, update the evaporative emissions certification test fuel to represent commercially available gasoline, and align aspects of the SORE requirements with the corresponding federal requirements, while retaining elements of the evaporative emission standards previously adopted by CARB. The 2021 SORE Amendments primarily establish exhaust and evaporative emission standards and associated test procedures for 2024 and subsequent model year engines and equipment. The 2021 SORE Amendments establish SORE emission standards in two phases. First, the exhaust emission standards for most 2024 and subsequent model year ("MY") SORE are zero (0.00 grams per kilowatt-hour) for hydrocarbons and oxides of nitrogen. The evaporative emission standards for most 2024 and subsequent MY SORE are zero (0.00 grams per test). The above-mentioned emission standards apply for all categories of SORE except pressure washer engines with displacements greater than or equal to 225 cubic centimeters (cc) and portable generator engines. The emission standards for these latter categories of engines are amended and start in MY 2024; they are not zero but are numerically lower (more stringent) than the pre-MY 2024 CARB emission standards. The second phase of the emissions standards will be implemented beginning in MY 2028, when the exhaust and evaporative emission standards for engines used in pressure washers with displacements greater than or equal to 225 cc and portable generators will be aligned with the zero emission standards for other categories of SORE. A comprehensive description of California's SORE amendments can be found in the Decision Document for this authorization and in materials submitted to the Docket by CARB.[4]

CAA section 209(e)(1) permanently preempts any state, or political subdivision thereof, from adopting or attempting to enforce any standard or other requirement relating to the control of emissions for certain new nonroad engines or vehicles.[5] For all other nonroad engines (including "non-new" engines), states generally are preempted from adopting and enforcing standards and other requirements relating to the control of emissions, except that CAA section 209(e)(2)(A) requires EPA, after notice and opportunity for public hearing, to authorize California to adopt and enforce such regulations unless EPA makes one of three enumerated findings. Specifically, EPA must deny the authorization if the Administrator finds that (1) California's protectiveness determination (*i.e.,* that California standards will be, in the aggregate, as protective of public health and welfare as applicable federal standards) is arbitrary and capricious, (2) California does not need such standards to meet compelling and extraordinary conditions, or (3) the California standards and accompanying enforcement procedures are not consistent with section 209 of the Act.

On July 20, 1994, EPA promulgated a rule (the 1994 rule) interpreting the three criteria set forth in CAA section 209(e)(2)(A) that EPA must consider before granting any California authorization request for nonroad engine or vehicle emission standards.[6] EPA revised these regulations in 1997.[7] As stated in the preamble to the 1994 rule, EPA has interpreted the consistency inquiry under the third criterion, outlined above and set forth in section 209(e)(2)(A)(iii), to require, at minimum, that California standards and enforcement procedures be consistent with section 209(a), section 209(e)(1), and section 209(b)(1)(C) of the Act.[8] In order to be consistent with section 209(a), California's nonroad standards and enforcement procedures must not apply to new motor vehicles or new motor vehicle engines. To be consistent with section 209(e)(1), California's nonroad standards and enforcement procedures must not attempt to regulate engine categories that are permanently preempted from state regulation. To determine consistency with section 209(b)(1)(C), EPA typically reviews nonroad authorization requests under the same "consistency" criteria that are applied to motor vehicle waiver requests under CAA section 209(b)(1)(C). That section provides that the Administrator shall not grant California a motor vehicle waiver if the Administrator finds that California "standards and accompanying enforcement procedures are not consistent with section 202(a)" of the Act.

CARB determined that these standards and accompanying enforcement procedures do not cause California's standards, in the aggregate, to be less protective to public health and welfare than the applicable Federal standards. The administrative record, including information presented to me by parties opposing California's

[1] 88 FR 33143 (May 23, 2023).

[2] A transcript of the public hearing is located at EPA–HQ–OAR–2023–0151–0007 and all written comments are also located at *regulations.gov* at EPA–HQ–OAR–2023–0151.

[3] EPA's Decision Document can be found at EPA–HQ–OAR–2023–0151. EPA's authorization decision includes the entire 2016 amendment and 2021 amendment regulatory text that can be found in CARB's December 20, 2022, authorization request (the SORE Authorization Support Document) found at EPA–HQ–OAR–2023–0151–0003. (CARB's entire authorization submission to EPA is found at EPA–HQ–OAR–2023–0151). The specific regulatory provisions under EPA's authorization consideration and included in this decision can be found at footnotes 1 and 2 to the SORE Authorization Support Document.

[4] The Decision Document can be found at EPA–HQ–OAR–2023–0151.

[5] States are expressly preempted from adopting or attempting to enforce any standard or other requirement relating to the control of emissions from new nonroad engines which are used in construction equipment or vehicles or used in farm equipment or vehicles and which are smaller than 175 horsepower. Such express preemption under CAA section 209(e)(1) also applies to new locomotives or new engines used in locomotives.

[6] See "Air Pollution Control; Preemption of State Regulation for Nonroad Engine and Vehicle Standards," 59 FR 36969 (July 20, 1994).

[7] See "Control of Air Pollution: Emission Standards for New Nonroad Compression-Ignition Engines at or Above 37 Kilowatts; Preemption of State Regulation for Nonroad Engine and Vehicle Standards; Amendments to Rules," 62 FR 67733 (December 30, 1997). The applicable regulations are now found in 40 CFR part 1074, subpart B, Part 1074.

[8] EPA has interpreted section 209(b)(1)(C) in the context of section 209(b) motor vehicle waivers.

authorization request, did not demonstrate that California arbitrarily or capriciously reached this protectiveness determination. Therefore, based on the record, I cannot find California's determination to be arbitrary and capricious under section 209(e)(2)(A)(i).

CARB has demonstrated the existence of compelling and extraordinary conditions justifying the need for such State standards. The administrative record, including information presented to me by parties opposing California's authorization request, did not demonstrate that California does not need such State standards to meet compelling and extraordinary conditions. Thus, based on the record, I cannot deny the authorization based on section 209(e)(2)(A)(ii).

CARB has submitted information that its emission standards and test procedures are consistent with section 209(a), section 209(e)(1), and section 209(b)(1)(C) of the Act. The administrative record, including information presented to me by parties opposing California's authorization request, did not satisfy the burden of persuading EPA that the standards are not consistent with section 209. Thus, based on the record, I cannot deny the authorization based on section 209(e)(2)(A)(iii).

Accordingly, I hereby granted the authorization requested by California.

Section 307(b)(1) of the CAA governs judicial review of final actions by the EPA. Petitions for review must be filed by March 7, 2025.

As with past authorization decisions, this action is not a rule as defined by Executive Order 12866. Therefore, it is exempt from review by the Office of Management and Budget as required for rules and regulations by Executive Order 12866.

In addition, this action is not a rule as defined in the Regulatory Flexibility Act, 5 U.S.C. 601(2). Therefore, EPA has not prepared a supporting regulatory flexibility analysis addressing the impact of this action on small business entities.

The Congressional Review Act, 5 U.S.C. 801 *et seq.*, as added by the Small Business Regulatory Enforcement Fairness Act of 1996, does not apply because this action is not a rule, for purposes of 5 U.S.C. 804(3).

**Michael S. Regan,**

*Administrator.*

[FR Doc. 2024–31123 Filed 1–3–25; 8:45 am]

**BILLING CODE 6560–50–P**

**ENVIRONMENTAL PROTECTION AGENCY**

**[EPA–HQ–OAR–2023–0292; FRL–11010–02–OAR]**

## California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of decision.

**SUMMARY:** The Environmental Protection Agency ("EPA") is providing notice of its decision granting the California Air Resources Board's ("CARB's") request for a waiver of Clean Air Act preemption for its Advanced Clean Cars II ("ACC II") regulations. EPA's decision was issued under the authority of the Clean Air Act ("CAA" or "Act") section 209.

**DATES:** Petitions for review must be filed by March 7, 2025.

**ADDRESSES:** EPA has established a docket for this action under Docket ID EPA–HQ–OAR–2023–0292. All documents relied upon in making this decision, including those submitted to EPA by CARB, are contained in the public docket. Publicly available docket materials are available either electronically through *www.regulations.gov* or in hard copy at the EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operation are 8:30 a.m. to 4:30 p.m.; generally, it is open Monday through Friday, except Federal holidays. The electronic mail (email) address for the EPA Docket Center is: *a-and-r-Docket@epa.gov.* An electronic version of the public docket is available through the Federal government's electronic public docket and comment system. You may access EPA dockets at *http://www.regulations.gov.* After opening the *www.regulations.gov* website, enter EPA–HQ–OAR–2023–0292 in the "Enter Keyword or ID" fill-in box to view documents in the record. Although a part of the official docket, the public docket does not include Confidential Business Information ("CBI") or other information whose disclosure is restricted by statute.

EPA's Office of Transportation and Air Quality ("OTAQ") maintains a web page that contains general information on its review of California waiver and authorization requests. Included on that page are links to prior waiver **Federal Register** notices, some of which are cited in this notice; the page can be accessed at: *https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations.*

**FOR FURTHER INFORMATION CONTACT:** Michael Olechiw, Office of Transportation and Air Quality, U.S. Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, MI 48105. Telephone: 734–214–4297. Email: *California-Waivers-and-Authorizations@epa.gov.*

**SUPPLEMENTARY INFORMATION:** On December 26, 2023, EPA published a **Federal Register** notice announcing its receipt of CARB's waiver request. In that notice, EPA invited public comment on California's waiver request and an opportunity to present testimony at a public hearing.[1] EPA held a public hearing on January 10, 2024, and the written comment period closed on February 27, 2024.[2] EPA has considered all comments submitted to the public docket on this matter.

On December 17, 2024, I signed a Decision Document granting California a waiver of preemption pursuant to section 209(b) of the CAA, as amended, 42 U.S.C. 7543(b), for regulations applicable to new 2026 and subsequent model year (MY) California on-road light- and medium-duty vehicles, hereafter the Advanced Clean Cars II ("ACC II") regulations.[3] The ACC II program includes a series of requirements regarding California's low emission vehicle ("LEV") IV regulation and a series of requirements regarding its zero-emission vehicle ("ZEV") program.[4] The LEV IV requirements include, for example, applying exhaust and evaporative emission fleet-average standards solely to vehicles powered by internal combustion engines and excluding ZEVs from the fleet calculation. The LEV IV requirements reduce the maximum allowed exhaust and evaporative emission rates from

[1] 88 FR 88908 (December 26, 2023).

[2] A transcript of the public hearing is located at EPA–HQ–OAR–2023–0292–0056 and all written comments are also located at *regulations.gov* at EPA–HQ–OAR–2023–0292.

[3] EPA's Decision Document can be found at EPA–HQ–OAR–2023–0292. In addition to the Decision Document, EPA prepared a Supplemental Response to Comments document that is also part of the Administrator's waiver decision. The Supplemental Response to Comments document can also be found at EPA–HQ–OAR–2023–0292.

[4] EPA's waiver decision includes the entire ACC II regulatory text that can be found in Attachment 7 to CARB's May 22, 2023, ACC II waiver request (the ACC II Waiver Support Document) found at EPA–HQ–OAR–2023–0292–0034. (CARB's entire waiver submission to EPA is found at EPA–HQ–OAR–2023–0292). The specific regulatory provisions under EPA's waiver consideration can be found at footnote 36 to the ACC II Waiver Support Document.