**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF CALIFORNIA,<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, and LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency,<br><br>*Defendants*,<br><br>and<br><br>AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, and AMERICAN PETROLEUM INSTITUTE,<br><br>*Defendant-Intervenors*. | Case No.: 1:26-cv-02185-BAH |

**OPPOSITION TO MOTIONS TO
STAY CASE PENDING APPEAL**

The State of California opposes the motions by Defendants Lee Zeldin and the U.S. Environmental Protection Agency ("EPA") and by Defendant-Intervenors American Fuel & Petrochemical Manufacturers and the American Petroleum Institute (collectively, "Defendants") to stay all proceedings in this case pending resolution of the appeal to the D.C. Circuit of this Court's Orders of September 2 and September 12, 2026. *See* ECF 65, 66.

## BACKGROUND

California filed this action on June 22, 2026, challenging as *ultra vires* and contrary to the Administrative Procedure Act EPA's purported reclassifications of four Clean Air Act waivers as "rules" and submissions of those waivers to Congress. Compl., ECF 1. California moved for a preliminary injunction. ECF 13. Defendants moved to dismiss. ECF 20, 22-5. This Court denied the motions to dismiss and granted California a preliminary injunction, finding, among other things, that this Court has jurisdiction at least over EPA's reclassification actions; that California had established a likelihood of success on the merits; and that California had shown irreparable harm. ECF 45, 46. Subsequently, California filed a supplemental complaint expressly including facts and claims about two additional Clean Air Act waivers that EPA purported to reclassify and submitted to Congress after California filed its initial complaint. ECF 48. California then moved for a second preliminary injunction expressly incorporating the two additional reclassifications, and this Court granted that motion. ECF 55.

Defendants have now appealed this Court's orders to the D.C. Circuit and have sought a stay of the proceedings in this Court pending the outcome of their appeals.

## LEGAL STANDARD

The party moving to stay bears the burden to show that a stay is appropriate. *See Wrenn v. District of Columbia*, 179 F. Supp. 3d 135, 140 (D.D.C. 2016) ("It is [the movant] who must show that it is proper to deviate from the normal course of the litigation process at this moment."). That party must "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

In evaluating motions to stay proceedings, district courts have often applied a three-factor test that looks at "(1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay—that is, the harm to the moving party if a stay does not issue; and (3) whether a stay would promote efficient use of the court's resources." *Ctr. for Biological Diversity v. Ross*,

419 F. Supp. 3d 16, 20 (D.D.C. 2019).[1]

## ARGUMENT

### I. DEFENDANTS FAIL TO MEET THEIR BURDEN TO SHOW THAT A STAY IS APPROPRIATE.

An application for an interlocutory appeal pursuant to 28 U.S.C. § 1292 "shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). "By requiring that a stay be specifically ordered, Congress intended to avoid unnecessary delays." David G. Knibb, Fed. Ct. App. Manual § 5:6 (7th ed. 2026) (citing S. Rep. No. 2434 (1958), reprinted in 1958 U.S. Code Cong. & Admin. News 5255, 5257); *see also* 16 Fed. Prac. & Proc. Juris. § 3921.2 (3d. ed. 2026) ("Interlocutory injunction appeals would come at a high cost if the trial court were required to suspend proceedings pending disposition of the appeal. The delay and disruption alone would be costly."). In other words, the continuation of district court proceedings during an interlocutory appeal is the norm. EPA has not met its burden to demonstrate that departure from that norm is warranted in this case.

#### A. The Orderly Course of Justice Does Not Favor a Stay.

EPA argues that a stay of proceedings would promote judicial economy because an order from either this Court or the Court of Appeals could undermine efforts expended in the other proceeding, ECF 65 (Mot. to Stay) at 6—but if that were sufficient, a stay of proceedings pending

[1] Other courts have applied a four-factor test that requires the movant to show "(1) a likelihood of prevailing on the merits of its appeal; (2) that it will suffer irreparable injury absent the stay; (3) that the non-moving party will not be harmed by the issuance of a stay; and (4) that the public interest will be served by a stay." *Educ. Assistance Found. for Descendants of Immigrants in the Performing Arts v. United States*, 111 F. Supp. 3d 34 (D.D.C. 2015) (quoting *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 56 (D.D.C. 2009)). EPA argues this test is inapplicable here, Mot. to Stay at 5 n.1, but multiple district courts in this circuit have applied it in resolving motions to stay proceedings. *See Educ. Assistance Found.*, 111 F. Supp. 3d at 45; *Al Maqaleh*, 620 F. Supp. 2d at 56; *United States v. González-Valencia*, No. 16-65-1, 2022 WL 3978185 (D.D.C. Sept. 1, 2022); *see also de Csepel v. Hungary*, No. 10-1261, 2022 WL 3026998 (D.D.C. Aug. 1, 2022). California responds herein to Defendants' arguments under the three-factor test but observes that Defendants do not even attempt to satisfy the four-factor test. Nor could they do so, for the same reasons that this Court granted California's motions for preliminary injunctive relief. Under either test, then, the request for a stay should be denied.

an interlocutory appeal would be proper in most cases, contrary to the statutory rule.

First, EPA claims that "given the possibility of a reversal on the case-dispositive issue of jurisdiction, it makes little sense to proceed in this Court while the D.C. Circuit makes its decision." Mot. to Stay at 6. EPA's primary argument therefore hinges on the fundamentally "speculative" possibility that the D.C. Circuit will reverse on jurisdictional grounds. *Wrenn*, 179 F. Supp. 3d at 139l; *see also Ross*, 419 F. Supp. 3d at 23 (court declined to stay proceeding while agency issued Biological Opinion where it was not clear when agency decision would be rendered or whether it would moot all of plaintiff's claims). If an appellant's confidence that it will prevail on appeal sufficed for a stay pending an appeal, such stays would be the norm, which they are not. Nor is it sufficient that jurisdiction is a "case-dispositive issue." Mot. to Stay at 6. Many, if not most, appeals of preliminary injunctions involve the possibility of reversal on a "case-dispositive issue," whether that issue is standing, mootness, jurisdiction, statute of limitations, or something else; yet stays of district court proceedings during such appeals are the exception, not the rule. Although EPA is eager to consider an outcome in which the D.C. Circuit's ruling effectively terminates this case, if that *doesn't* happen, a stay will simply have delayed final resolution of this case—undermining, rather than advancing, efficiency.[2]

The two (and only two) in-district cases EPA cites provide no support for the notion that a *defendant's* confidence in its appeal supports delaying a plaintiff's pursuit of its case. They are also inapposite here. Mot. to Stay at 5. In *Philipp v. Federal Republic of Germany*, 253 F. Supp. 3d 84, 88 (D.D.C. 2017), *the Court* recognized "conflicts with decision of several other courts" and accordingly certified issues for appeal. EPA's disagreement with this Court's opinion creates no such conflict. And EPA cannot manufacture a conflict by pointing to the number of pages addressing jurisdiction—which suggests nothing other than careful and thorough attention to precedent, statutory text, and the many pages of argument presented by the parties. *See* Mot. to

[2] EPA also argues that "if the D.C. Circuit were to reach an opinion that either affirms or reverses this Court, additional briefing on and argument about these issues may shift dramatically." Mot. to Stay at 6. But an argument that a stay is appropriate because of the possibility that the Court of Appeals could reach *any* decision on *any* issue is even more obviously contrary to the statutory rule.

Stay at 6. Moreover, *Philipp* did not involve a preliminary injunction appeal, but rather an appeal-as-of-right from a sovereign immunity decision and other issues the court chose to certify for inclusion in that interlocutory appeal. *See id.* at 86. This case presents no "similar circumstances," *contra* Mot. to Stay at 6, because no defendant faces the potential harm "of being forced to litigate despite being entitled to sovereign immunity," *see de Csepel*, 2022 WL 3026998, at *3.[3]

*Ready to Win v. FEC*, No. 22-3282, 2023 WL 10512144 (D.D.C. July 28, 2023) is equally, if not more, off point. There, the *plaintiff* sought a stay of discovery pending appeal, and the court observed that "the type of discovery … arguably implicates First Amendment concerns." *Id.* at *2. Here, however, the plaintiff (California) wishes to litigate its case expeditiously, and no stay is warranted to avoid constitutionally questionable discovery because no such discovery has been proposed. EPA's cases do nothing more than establish that stays of proceedings have issued in cases very different from this one. That is no reason to grant one here.

[3] EPA's cases from other districts likewise fail to support this motion, and not just because they apply out-of-circuit precedent. Both involved legal questions the district courts recognized as unsettled in their respective circuits. *Flores v. Bennett*, 675 F. Supp. 3d 1052, 1058–59 (E.D. Cal. 2023) ("As detailed at length in the preliminary injunction order, the applicability of the school-sponsored speech doctrine in the college setting involves a complex constitutional framework for which controlling authority does not exist."); *Beltronics USA, Inc. v. Midwest Inventory Distrib. LLC*, 545 F. Supp. 2d 1188, 1190 (D. Kan. 2008) (recognizing Tenth Circuit had not yet weighed in on controlling legal issue); *see also* Minute Order, *Scottsdale Cap. Advisors Corp. v. FINRA, Inc.*, No. 23-cv-1506-BAH (D.D.C. July 26, 2023) (staying proceedings where at least one D.C. Circuit judge had described the core issue as a "serious argument" that "may be a constitutional problem"). This Court's opinion in this case identifies no such unsettled questions. *See*, *e.g.*, ECF 46 at 39 ("This conclusion that the CRA's Section 805 has more limited preclusive scope than EPA would wish is informed by the D.C. Circuit's recent analysis in *Ardelyx*, as the parties have recognized.").

Second, EPA claims that "the parties would have to expend resources simultaneously briefing a motion for summary judgment before this Court and an appeal to the D.C. Circuit." Mot. to Stay at 6. Again, however, the general rule is that both district court and appellate proceedings continue simultaneously during a preliminary injunction appeal, not that such simultaneous briefing constitutes a hardship warranting a stay. Similarly, EPA argues that it would be a "waste[]" of "party and court resources" if this Court were to "speed ahead to entry of judgment" before the resolution of the appeal, but every case from which an interlocutory appeal has been taken could potentially reach final judgment before resolution of the appeal. *Id.* If the possibility of a judgment in the district court were a reason to stay district court proceedings, the statutory rule would not be what it is. Moreover, EPA was aware that California intended to move for summary judgment before EPA moved to expedite its appeal and requested an appellate briefing schedule that would overlap. In fact, California sought to mitigate overlap and scheduling/stay motion practice by proposing a schedule that would allow both the appeal and California's summary judgment motion to move forward in an orderly, less burdensome way, but Defendants declined to negotiate such a schedule. Particularly against that backdrop, if the D.C. Circuit grants EPA's request and issues a schedule that overlaps significantly with briefing in this Court, that should not be deemed a hardship *to EPA*.[4]

Further, it is unclear why summary judgment briefing is likely to be particularly burdensome given EPA's own description of the legal issues in this case as "fully developed and briefed" and "not likely to change." Mot. to Stay at 8. This is not a case in which a stay will protect the parties from burdensome discovery; rather, it will prevent this Court from reaching final judgment as quickly as possible—the ultimate efficiency goal.

[4] The motion practice California sought to avoid with its proposal—including this motion and EPA's motion to expedite—has already caused hardship to California, by preventing California from moving for summary judgment as quickly as it intended.

Finally, EPA claims that it "does not seek a lengthy stay," noting that it has "filed a motion to further expedite the appeal." Mot. to Stay at 6. But assuming the appeal will move quickly is, again, speculative. *See Al Maqaleh*, 620 F. Supp. 2d at 57 ("[I]t is worth noting that the decision to *grant* expedited review lies with the court of appeals, not respondents."). Regardless, as noted, it is far from certain that the Court of Appeals will decide Defendants' current appeals in a way that resolves the entire case more speedily than proceeding to summary judgment now.

What EPA describes as "rac[ing] ahead with summary judgment briefing" is in fact exactly what is prescribed by statute: an interlocutory appeal "shall not stay proceedings in the district court." Mot. to Stay at 6; 28 U.S.C. § 1292. It is not enough for the agency to assert that its desired outcome on appeal—a reversal on jurisdictional grounds—will serve judicial economy. EPA has failed to show that the *possibility* of its desired outcome outweighs the burdens of delaying California's final relief and justifies abrogating the rule against staying district court proceedings during an interlocutory appeal.

**B. A Stay Will Harm California.**

EPA's claim that California "faces little risk of harm from a stay," Mot. to Stay 8, ignores the State's right to proceed in court, which "should not be denied except under the most extreme circumstances." *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003); *see also OCA – Asian Pac. Am. Advocs. v. Rubio*, 2025 WL 1393153, at *1 (D.D.C. May 14, 2025) ("[T]he D.C. Circuit has recognized that plaintiffs have a 'right to maintain their case' (quoting *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971))).

EPA also claims that "the status quo leaves California with little to complain about" because California has already obtained preliminary relief. Mot. 7. But permanent relief is fundamentally different from preliminary relief. California intends to seek, *inter alia*, declaratory relief that was not available on a preliminary injunction motion. Moreover, California will be prejudiced if the D.C. Circuit obviates the existing injunction, leaving California unprotected, in a decision that has no adverse effect on California's ability to obtain summary judgment and permanent relief. (For example, while California does not think the record supports it, the D.C.

Circuit might conclude that California has demonstrated standing but not irreparable injury sufficient for preliminary relief.) In that event, California will be prejudiced by having been forced to delay seeking permanent relief. Moreover, EPA's requested stay does not account for other actions California may need to take in this litigation. For instance, disputes may arise about whether EPA is "giving effect" to its reclassifications or otherwise failing to maintain the status quo that existed before those actions. ECF 45 at 1-2. Requiring California to first seek to lift a stay before it can move to enforce the court's orders will prejudice the State.

This is more than "a fair possibility that the stay for which [Defendants pray] will work damage to" California. *See Landis*, 299 U.S. at 254. Defendants thus must "make out a clear case of hardship or inequity in being required to go forward," *id.*, and, as shown below, they cannot do so.

### C. Defendants Face No Harm in the Absence of a Stay.

Defendants do not face harm from the possibility that they will be required to "expend resources drafting simultaneous and potentially unnecessary briefs." Mot. to Stay 8. As discussed above, simultaneous district court and appellate proceedings is the normal rule, not a form of harm warranting a stay. "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequality,'" and this is "particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before [the Court]." *Ross*, 419 F. Supp. 3d at 21.

\ \ \

\ \ \

\ \ \

## CONCLUSION

California respectfully requests the Court deny Defendants' motions to stay all further proceedings in this case pending appeal.

Dated: October 13, 2026

Respectfully Submitted,

ROB BONTA
Attorney General of California
MYUNG PARK
DAVID ZAFT
Supervising Deputy Attorneys General

*/s/ Natalie Collins*
NATALIE COLLINS
KATHERINE GAUMOND
M. ELAINE MECKENSTOCK
Deputy Attorneys General
Office of the Attorney General
600 W. Broadway, Ste. 1800
San Diego, CA 92101
Telephone: (619) 738-9140
Email: Natalie.Collins@doj.ca.gov

*Counsel for Plaintiff State of California*